# EXHIBIT B



# MERS® System Procedures Manual

Release 29.0

Effective Date: August 31, 2015



# Contents

**INTRODUCTION ..... 1**

PURPOSE ..... 1
STRUCTURE ..... 2

**MEMBERSHIP IN THE MERS® SYSTEM ..... 3**

OVERVIEW ..... 3
IMPACT ..... 4
PROCEDURE: MEMBER INTEGRATION ..... 4
PROCEDURE: USING A THIRD PARTY ORIGINATOR ..... 5
PROCEDURE: MEMBER TO MEMBER PETITION ..... 6
PROCEDURE: MEMBER NOD DISPUTE ..... 6
PROCEDURE: BORROWER DISPUTES ..... 7
PROCEDURE: MORTGAGE OR ASSIGNMENT ERRONEOUSLY RECORDED IN THE NAME OF MERS ..... 8
PROCEDURE: MEMBER RESIGNATION ..... 8
PROCEDURE: DISCIPLINARY ACTIONS ..... 10
PROCEDURE: TRANSACTING WITH A MEMBER IN LOCKOUT STATUS ..... 10
REPORTS ..... 11

**SYSTEM SECURITY ..... 12**

OVERVIEW ..... 12
ORG ID OVERVIEW ..... 13
IMPACT ..... 13
PROCEDURE: MERSCORP HOLDINGS - SYSTEM SECURITY ..... 13
PROCEDURE: MEMBER - SYSTEM SECURITY ..... 14
PROCEDURE: THIRD PARTY PROVIDERS - SYSTEM SECURITY ..... 15
PROCEDURE: ASSOCIATED MEMBER- SYSTEM SECURITY ..... 16
PROCEDURE: MY MERS® ..... 17
PROCEDURE: TRANSACTION DEFAULT SETTINGS ..... 18
REPORTS ..... 18

**MEMBER INFORMATION ..... 19**

OVERVIEW ..... 19
IMPACT ..... 20
QA PLAN REQUIREMENTS - MEMBER INFORMATION ..... 20
*Member Information QA Standards ..... 20*
*Member Information Validations ..... 21*
PROCEDURE: MAINTAINING MEMBER INFORMATION ..... 22
PROCEDURE: MERSCORP HOLDINGS ..... 25

**MEMBER CORPORATE NAME CHANGES ..... 27**

OVERVIEW ..... 27
IMPACT ..... 27
PROCEDURE: MEMBER CORPORATE NAME CHANGES ..... 27



**MORTGAGE IDENTIFICATION NUMBER (MIN)......29**

OVERVIEW......29
IMPACT......30
PROCEDURE: CREATING A MIN......30
*MIN Check Digit Calculation......30*

**MERS® SYSTEM QUALITY ASSURANCE......32**

IMPACT......32
MERS® SYSTEM QUALITY ASSURANCE POLICY......32
*Quality Assurance Plan......33*
*Annual Report......34*
Annual Report Requirements......35
*Data Integrity QA Standards - Loan Registration......37*
Data Integrity Requirements......37
*Data Reconciliation QA Standards......39*
MOM and Non-MOM Data Reconciliation......40
iRegistration Data Reconciliation......41
Conditional Field Criteria......42
*Member Reconciliation Extract (MRE)......44*
*Reconciliation of MINs Naming a Resigning Member......45*
MERSCORP HOLDINGS' QUALITY ASSURANCE REVIEWS......45
*Data Review......46*
*Document Reviews......46*
*Compliance Review......46*
*Quarterly Quality Assurance Profile......47*

**MOM AND NON-MOM LOAN REGISTRATION......48**

OVERVIEW......48
IMPACT......49
QA PLAN REQUIREMENTS - MOM LOAN REGISTRATION......49
*MOM Security Instrument QA Standards......50*
*MOM Security Instrument Document Requirements......50*
*MOM Loan Data Validations for MERS® System......51*
QA PLAN REQUIREMENTS - NON-MOM LOAN REGISTRATION......51
*Non-MOM QA Standards - Assignment to MERS......51*
*Non-MOM Document Requirements - Assignment to MERS......52*
*Non-MOM Data Validations for MERS® System......52*
PROCEDURE: INITIAL REGISTRATION......53
PROCEDURE: POST-CLOSING REGISTRATION......55
PROCEDURE: RE-REGISTRATION AFTER REVERSAL......56
PROCEDURE: RE-REGISTRATION AFTER DEACTIVATION......56
POST REGISTRATION EVENTS......57
REPORTS......58

**IREGISTRATION......59**

OVERVIEW......59



Impact ........ 60
QA Plan Requirements - iRegistration Loan Registration ........ 61
*iRegistration QA Standards ........ 61*
*iRegistration Document Requirements ........ 62*
*iRegistration Data Validations for MERS® System ........ 62*
Procedure: iRegistration ........ 62
Procedure: Post-Closing iRegistration ........ 64
Procedure: iRegistration after Reversal ........ 65
Procedure: iRegistration after Deactivation ........ 65
Procedure: iRegistration for REO Property ........ 66
Post iRegistration Events ........ 67
Reports ........ 68

**CONVERSION FROM IREGISTRATION TO NON-MOM ........ 69**

Overview ........ 69
Impact ........ 69
QA Plan Requirements - iRegistration to Non-MOM Conversion ........ 69
Procedure: iRegistration to Non-MOM Conversion ........ 69
Reports ........ 70

**PRE-CLOSING REGISTRATION ........ 71**

Overview ........ 71
Impact ........ 71
QA Plan Requirements - Pre-Closing Registration ........ 72
Procedure: Pre-Closing Registration ........ 72
Procedure: Pre-Closing Registration after Reversal ........ 74
Reports ........ 75

**REGISTRATION REVERSAL ........ 76**

Overview ........ 76
Impact ........ 76
QA Plan Requirements - Registration Reversal ........ 77
Procedure: Registration Reversal ........ 77
Reports ........ 77

**REVERSE MORTGAGE PROCESSING ........ 78**

Overview ........ 78
Impact ........ 78
QA Plan Requirements - Reverse Mortgages ........ 78
Procedure: Reverse Mortgage Processing ........ 78

**CONSTRUCTION LOAN PROCESSING ........ 79**

Overview ........ 79
Impact ........ 79
QA Plan Requirements - Construction Loans ........ 79
Procedure: One-Step Closing ........ 79
*Closed on a MOM Security Instrument ........ 79*



*Closed on a Standard Security Instrument and Assigned to MERS* ....80
*Closed on a Standard Security Instrument and Not Assigned to MERS (iRegistration)* ....81
PROCEDURE: TWO-STEP CLOSING ....81

**TRANSFER OF BENEFICIAL RIGHTS .... 83**

OVERVIEW....83
*TOB Transactions – Option 1 vs. Option 2* ....84
Option 1....84
Option 2....85
IMPACT....87
QA PLAN REQUIREMENTS - TOB TRANSACTIONS....87
PROCEDURE: OPTION 1 TOB ....88
PROCEDURE: OPTION 2 TOB ....89
*Option 2 TOB Processing* ....90
REPORTS ....91
TRANSFER OF BENEFICIAL RIGHTS TO NON-MEMBER INVESTORS ....92
*Overview* ....92
*Impact* ....92
*Procedure: Transfer of Beneficial Rights to Non-Member Investors* ....92
*Reports* ....92

**REMOVING INTERIM FUNDER SECURITY INTERESTS .... 94**

OVERVIEW....94
IMPACT....94
PROCEDURE: TOB OPTION 1 ....95
PROCEDURE: TOB OPTION 2 ....95
REPORTS ....96

**REMOVING WAREHOUSE/GESTATION LENDER SECURITY INTERESTS .... 97**

OVERVIEW....97
IMPACT....97
PROCEDURE: TOB OPTION 1 ....97
PROCEDURE: TOB OPTION 2 ....98
REPORTS ....99

**TRANSFER OF SERVICING RIGHTS.... 100**

OVERVIEW....100
*Transfer of Servicing Process Flow* ....101
IMPACT....103
QA PLAN REQUIREMENTS - TOS TRANSACTIONS ....104
FLOW TRANSFER OF SERVICING RIGHTS....104
*Note Date* ....104
*Sale Date/Transfer Date*....105
*No Investor Confirmation of Flow Transfer of Servicing*....105
SEASONED TRANSFER OF SERVICING RIGHTS....105
*Note Date* ....105



*Sale Date and Transfer Date* ... *105*
*Investor Confirmation* ... *106*
*Milestones Updated* ... *106*
INVOLUNTARY TRANSFER/DEFAULT BY SERVICER – LOANS TRANSFERRED TO A MERS® SYSTEM MEMBER ... 106
INVOLUNTARY TRANSFER/DEFAULT BY SERVICER - LOANS TRANSFERRED TO A NON-MEMBER SERVICER ... 108
PROCEDURE: TRANSFER OF SERVICING RIGHTS ... 109
REPORTS ... 111

**TOS/TOB COMBINATION ... 112**

OVERVIEW ... 112
IMPACT ... 112
QA PLAN REQUIREMENTS - TOS/TOB COMBINATIONS ... 112
TRANSFER DATES ... 113
PROCEDURE: TOS/TOB COMBINATION ... 115
REPORTS ... 116

**REGISTERED LOANS IN RATED SECURITIES ... 117**

OVERVIEW ... 117
IMPACT ... 117
QA PLAN REQUIREMENTS - LOANS IN RATED SECURITIES ... 117
PROCEDURE: REGISTERED LOANS IN RATED SECURITIES ... 117
REPORTS ... 118

**DEACTIVATIONS ... 119**

OVERVIEW ... 119
DEFAULT BY SERVICER ... 119
*Impact* ... *119*
*Procedure: Default by Servicer* ... *120*
*Reports* ... *120*
FORECLOSURE AND BANKRUPTCY ... 120
*Impact* ... *121*
*MOM and Non-MOM Loans* ... *121*
Foreclosure Processing Requirements ... 121
Bankruptcy Processing Requirements ... 122
*iRegistration Loans* ... *123*
*QA Plan Requirements - Foreclosures* ... *123*
Foreclosure QA Standards ... 124
Foreclosure Document Requirements ... 124
Foreclosure Data Validations for MERS® System ... 125
*QA Plan Requirements - Bankruptcy* ... *125*
Bankruptcy QA Standards ... 125
Bankruptcy Document Requirements ... 126
Bankruptcy Data Validations for MERS® System ... 126
*Procedure: Foreclosure and Bankruptcy* ... *127*
*Reports* ... *127*
PAID IN FULL ... 128

*Impact* ....128
*QA Plan Requirements - Paid in Full* ....129
Paid in Full QA Standards ....129
Paid in Full Document Requirements ....129
Paid in Full Data Validations for MERS® System ....130
*Procedure: Paid in Full* ....130
*Reports* ....131
TRANSFER TO NON-MERS STATUS ....131
*Impact* ....132
*QA Plan Requirements - Transfer to Non-MERS Status* ....132
Transfer to Non-MERS Status QA Standards ....132
Transfer to Non-MERS Status Document Requirements ....133
Transfer to Non-MERS Status Data Validations for MERS® System ....133
*Transfer of Servicing and/or Beneficial Rights to a Non-Member* ....134
*Procedure: Transfer to Non-MERS Status* ....134
*Reports* ....135

**DEACTIVATION REVERSALS ....136**

OVERVIEW ....136
IMPACT ....136
QA PLAN REQUIREMENTS - DEACTIVATION REVERSALS ....136
PROCEDURE: DEACTIVATION REVERSALS ....136

**MODIFICATION AGREEMENTS ....138**

OVERVIEW ....138
IMPACT ....138
QA PLAN REQUIREMENTS - MODIFICATION AGREEMENTS ....138
PROCEDURE: MODIFICATION AGREEMENTS ....139
REPORTS ....139

**CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT (CEMA) ....140**

OVERVIEW ....140
IMPACT ....140
QA PLAN REQUIREMENTS - CEMA ....140
PROCEDURE: CEMA - CURRENT SERVICER AND NEW LENDER ARE DIFFERENT ENTITIES ....141
PROCEDURE: CEMA - CURRENT SERVICER AND NEW LENDER ARE THE SAME ENTITY ....141
REPORTS ....142

**ASSUMPTION OF MORTGAGE ....143**

OVERVIEW ....143
IMPACT ....143
QA PLAN REQUIREMENTS - MORTGAGE ASSUMPTION ....143
PROCEDURE: ASSUMPTION ....144
REPORTS ....145

**PROPERTY PRESERVATION ....146**

OVERVIEW ....146



Impact ....................................................................................................................................146
Procedure: Property Preservation ........................................................................................................146
Reports ....................................................................................................................................147

**Reporting ....................................................................................................................................148**

Overview ....................................................................................................................................148
Availability of MERS® System Reports ..................................................................................................149
Impact ....................................................................................................................................149
QA Plan Requirements - MERS® System Reports ........................................................................................150
*MERS® System Reports QA Standards ....................................................................................................150*
*Reconciling MINs on the RH and RI Reports ............................................................................................151*
Procedure: Retrieving Reports ..........................................................................................................152
Procedure: Requesting a Portfolio Analysis Report .....................................................................................152
Reports ....................................................................................................................................154

**MERSCORP Holdings Mail Services ..........................................................................................................155**

Overview ....................................................................................................................................155
Impact ....................................................................................................................................155
QA Plan Requirements - Service of Process Mail ........................................................................................156
Procedure: MERSCORP Holdings Mail Services ............................................................................................156

**MERSCORP Holdings Help Desk ..............................................................................................................158**

Overview ....................................................................................................................................158
Impact ....................................................................................................................................159
Procedure: Contacting the Help Desk ....................................................................................................159
*Initiate Problem Resolution ............................................................................................................159*
Procedure: Receiving Official Communications from MERSCORP Holdings ...................................................160
*Global Address List (GAL) Email Address .................................................................................................160*
*Additional Contacts for Member Messages ..............................................................................................160*
*Email Subject Line Conventions for Messages ..........................................................................................161*
Procedure: MERS® ServicerID .............................................................................................................163
Procedure: Servicer Identification System (SIS) .........................................................................................163
Procedure: MERS® Link ....................................................................................................................164
Procedure: XML Inquiry ....................................................................................................................165
Procedure: Batch Inquiry ...................................................................................................................165

**Corporate Resolution Management System (CRMS) ..........................................................................167**

Overview ....................................................................................................................................167
*CRMS User Roles ............................................................................................................................168*
Impact ....................................................................................................................................168
QA Plan Requirements - CRMS ...........................................................................................................168
*CRMS QA Standards ........................................................................................................................169*
*CRMS QA Validations ......................................................................................................................169*
Procedure: Creating the Initial Request for a Corporate Resolution ....................................................170
Procedure: Creating the Pending SO List for a Request for a Corporate Resolution ..............................171
Procedure: Submitting a Request for a Corporate Resolution ...........................................................172



Procedure: Signing Officer Certification ....174
*Completing the Signing Officer Attestation* ....175
*Taking the Certification Exam* ....175
Procedure: Annual Signing Officer Recertification ....177
Procedure: Quarterly Attestation Requirement ....178
Procedure: Managing User Information in the CRMS ....179
*Password Changes and Resets* ....179
*Requesting the Appointment of Additional Signing Officers* ....179
*Removing a Signing Officer from a Corporate Resolution* ....179
*Updating a Signing Officer's Information* ....180
*Updating the CRMS Manager* ....180
Procedure: Signing Authority Agreement (SAA) ....181
*Submitting a Request for an SAA* ....181
*Terminating an SAA Relationship* ....182
Procedure: Status Changes in the CRMS ....183
*Submitting a Request to Deactivate an Org ID the CRMS* ....183
*Resignation and Termination of Membership in CRMS* ....183
*Reactivation after Resigned Status* ....183
Procedure: MERS Corporate Seals ....184
Reports ....184

**ADDITIONAL DOCUMENT REQUIREMENTS ....185**

Requirements for all Recordable MERS Documents ....185
Signing Officer Requirements ....187
Date Discrepancies ....188
Assignment from MERS ....188
Assignment to MERS ....189
Document Requirements for MERS Loans ....189
*MIN and SIS Phone Number Placement Requirements* ....190
Sample Changes - Naming MERS as Mortgagee on a Security Instrument ....191
*Sample Documents* ....192

**GLOSSARY ....194**



# Introduction

## Purpose

This manual serves as an overview of how business processes in mortgage banking are affected by the *MERS® System* rules, policies and procedures, and details the MERS® System Quality Assurance ("QA") requirements. This information will help you assess the impact of the MERS® System on your own business and business processes. Use this manual in conjunction with other sources of instruction and guidelines, including, but not limited to the following:

- *MERS® System Rules of Membership*

  Defines the set of rules, in addition to the *MERS® System Procedures Manual* ("*Procedures*"), which an entity agrees to follow when becoming a *Member* of the MERS® System.

- *MERS® OnLine User Guide*

  Gives step-by-step instruction for using *MERS® OnLine*

- *MERS® Integration Handbook, Volume I*

  Provides detailed information on becoming MERS® Ready

- *MERS® Integration Handbook Volume II*

  Provides the technical specifications for interacting with the MERS® System. This manual is of most use to Members that use an automated interface to transact with the MERS® System (e.g., *Flat File*, *XML*, or *EDI X12*).

- *MERS® System Reports Handbook*

  Provides descriptions of available MERS® Reports

- *MERS® EDI Implementation Guide*

  For Members that use the EDI X12 interface

These documents are available from the MERSCORP Holdings, Inc. ("*MERSCORP Holdings*") member website *members.mersinc.org*.

As a service to our Members, the current version of the Procedures and the *MERS® System Rules of Membership* ("Rules") are available to users of the third-party tool *AllRegs® Online.* While the MERS® System documents hosted on AllRegs® Online are updated as changes occur, the controlling version of the *Governing Documents* for the MERS® System reside on our *Member website*.



# Structure

Each chapter is generally organized into the following sections:

- *Overview* - gives a brief description of the process or function and how it relates to the MERS® System
- *Impact* - states what types of organizations the process affects
- *QA Plan Requirements* - provides the QA standards, document requirements, and/or data validations for the process or function under the MERS® System QA Plan
- *Procedures* **-** gives a step-by-step view of the process, including business-related steps and general MERS® System instruction. The procedure lists information that *can* be entered onto the MERS® System, as well as what information is required by the MERS® System Quality Assurance Standards. Specific system instruction, including system-required fields, is found in the *MERS® OnLine User Guide*.
- *Reports* - lists reports produced during the business process. For a detailed description of each report, see the *MERS® System Reports Handbook*.



# Membership in the MERS® System

## Overview

MERSCORP Holdings, Inc. ("*MERSCORP Holdings*") owns and operates a national, electronic registry called the MERS® System that tracks changes in *Mortgage* servicing rights and beneficial ownership interests in loans secured by residential real estate.

Mortgage Electronic Registration Systems, Inc. ("*MERS*"), MERSCORP Holdings' wholly-owned subsidiary, acts as the *Mortgagee* in the public land records and as *Nominee* for the *Lender* and its successors and assigns. At closing, the borrower and Lender agree to name MERS as Mortgagee on the Mortgage. The Lender then records the Mortgage in the public land records and registers the loan information on the MERS® System.

MERS serving as the Mortgagee, in conjunction with use of the MERS® System, largely eliminates the need for subsequent mortgage *Assignments*, thereby improving the process and reducing the cost to transfer and track the changes in mortgage rights and increasing the efficiency of the *Lien Release* process.

Note: The MERS® System is neither a legal *System of Record* nor a replacement for the public land records. Mortgage servicing rights and beneficial ownership interests ***are not*** transferred on the system; they are only tracked.

MERSCORP Holdings and MERS are not consumer reporting agencies as defined in the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Borrower information on the MERS® System that may be accessed by MERS® System Members and others either (i) has no bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living or, (ii) in any event, may not be used for any of the purposes that would make the communication of such information by MERSCORP Holdings or MERS to a third party a "consumer report" as that term is defined in the FCRA.

Participants from all sectors of the real estate finance industry have varying levels of access to and use of the MERS® System. These participants include *Lenders*, *Investors*, *Servicers*, *Brokers*, *Custodians*, and *Title Companies*. Some participants are Members; some are not, depending on their needs. For example, local governments may subscribe to the *MERS® Link* service as a non-Member (i.e., at no cost) to identify the parties responsible for maintaining vacant properties and addressing code violations.

Each *Member* goes through an application and approval process, which is outlined in the following pages, to become a Member of the MERS® System.

The Servicer named on the MERS® System is responsible for compliance with the Procedures. If a Servicer names a *Subservicer* on the MERS® System, the Servicer remains responsible for the Subservicer's compliance with the Procedures and any



subsequent amendments for those *MINs* or mortgage loans (or services associated with those MINs or mortgage loans) for which the Servicer has named the Subservicer.

MERSCORP Holdings does not require that a Servicer list the Subservicer of a loan on the MERS® System. The field is available for use at the Servicer's discretion. If, for example, a Servicer wants to receive Service of Process notices for its subserviced loans, the Servicer should not specify the Subservicer on the MERS® System. However, if a Subservicer needs to process transactions on the MERS® System, or receive mail service on behalf of the Servicer, the Subservicer must be listed as the Subservicer for the Servicer's loans on the MERS® System.

## Impact

This process potentially impacts all new MERS® System Members.

## Procedure: Member Integration

1. Submit a completed MERS® System application to the MERSCORP Holdings, Inc. Office. Applications may be mailed, e-mailed, or faxed to:

   MERSCORP Holdings, Inc.
   1818 Library Street, Suite 300
   Reston, VA 20190
   *applications@mersinc.org*
   Fax: (703) 748-0183

   - You will be assigned an Org ID
   - The MERSCORP Holdings Membership Team will work with you on the preliminary steps of your MERS® System *Integration*. Key tasks include:
     - Identify an implementation resource (*MERS® Integration Contact*)
     - Form an integration team
     - Notify technology *Vendors* of your intention to become a MERS® System Member
     - Notify Investors, *Document Custodians*, and Warehouse/Gestation Lenders of your intentions to become a MERS® System Member
       - ✓ Set a target implementation date
       - ✓ Determine if new business partner agreements are needed
   - Once these preliminary steps are done, the Membership Manager will recommend your company for integration.

   Note: For detailed information regarding technical requirements and network connectivity, refer to the following guides on our Member website:

     - *MERS® Integration Handbook Volume I*



- *MERS® Integration Handbook Volume II*
- *MERS® EDI Implementation Guide*

2. During integration, you will:
   - Confirm your implementation date
   - Confirm your document preparation system has appropriate language regarding Mortgage Electronic Registration Systems, Inc. ("MERS")
   - Confirm you can generate a valid MIN
   - Document your revised MERS® System process flows
   - Determine your system access and security levels in accordance with your *Line of Business* and transaction requirements
   - Install system interfaces to the MERS® System, if needed
   - Develop the required servicing or origination system and document preparation enhancements, if needed
   - Test the required servicing or origination system enhancements, if needed
   - Develop and implement a quality assurance program for the MERS® System, and submit your MERS® System quality assurance plan to MERSCORP Holdings
   - Attend a MERS® OnLine training session
   - Train your staff on the use of the MERS® System
3. After integration, you will:
   - Be given access to the *Corporate Resolution Management System* ("CRMS") to propose officers of your company as MERS Signing Officers (each a "Signing Officer"), and to request a new or updated *MERS Corporate Resolution* ("Corporate Resolution"), which empowers your organization's Signing Officers to perform limited actions in the name of MERS.
   - Complete the Customer Integration survey

# Procedure: Using a Third Party Originator

Any Broker or Affiliate originating loans secured by a "MERS as Original Mortgagee" (*MOM*) *Security Instrument* must be a MERS® System Member. You may register the loans on the MERS® System for your broker or affiliate, but you must enter their Org ID in the *Originating Org ID* field.

If you buy closed loans from a broker or affiliate who is not a MERS® System Member, you can have the Originator assign each loan to Mortgage Electronic Registration Systems, Inc. and you will need to register the loans on the MERS® System as *Non-MOM*, entering the non-Member Originator's name in the *Original Note Holder* field.



If you purchase a MOM loan that closed after March 31, 2012 by an Originator who has not yet completed the membership process or the system will not accept the Org ID that you are trying to enter, you can use a value of **1011001** (Originating Org ID Exception) in the Originating Org ID field as a placeholder to register the loan, but you must update the loan with the correct Org ID within 60 calendar days of the registration date. This placeholder Org ID is considered a mismatch for reconciliation and data reviews.

# Procedure: Member to Member Petition

The Member to Member Petition process allows a Member (the "Petitioner") to request the assistance of MERSCORP Holdings when the Petitioner encounters another active Member that is unresponsive to requests to initiate the necessary transactions on the MERS® System to reflect the correct rights holders for a MIN(s).

Before beginning the Member to Member Petition process, the selling Member must be given seven (7) calendar days from the *Effective Transfer Date* to initiate the transfer on the MERS® System. Once seven (7) calendar days have elapsed, the Petitioner should contact the *Help Desk* for assistance.

1. Member Services Operations (MSO) provides the Petitioner with the MERS® System contacts for the Member. The Petitioner must attempt to contact the Member to resolve the issue more than once.
2. If the Member does not respond to the Petitioner's attempts, MSO provides the *Member to Member Petition Procedures* and *Member to Member Petition* to the Petitioner upon request.
3. A Manager or higher of the Petitioner organization completes the *Member to Member Petition.* The Petitioner submits the completed form with exhibits to MSO.
4. MSO notifies the unresponsive Member via email, providing the Member 14 calendar days to respond or resolve the matter.
5. If the unresponsive Member does not respond or resolve the matter, it escalates to the MERSCORP Holdings Regional Director. If the unresponsive Member does not respond to the Regional Director within three (3) business days, MSO obtains final approval to transfer the MIN(s) in accordance with the executed *Member to Member Petition*.
6. MSO notifies the Petitioner when the issue is resolved.
7. The unresponsive Member is billed for the work performed on its behalf.

# Procedure: Member NOD Dispute

In the event an Investor is involved in a dispute with a Warehouse Lender, or the *Servicing Member*, the Members involved shall engage in a good faith effort to resolve their dispute. If necessary, the Investor can request that MERSCORP Holdings take action to prevent activity on the disputed MINs by that Servicer/Subservicer:



1. The Investor will notify MERSCORP Holdings in writing of the dispute with the Servicer/Subservicer or Warehouse Lender, and produce proof of ownership.
2. The Investor may ask MERSCORP Holdings to:
   - Process a transfer transaction(s) for the disputed MIN(s), or
   - Correct the registration(s) of the disputed MIN(s).
3. MERSCORP Holdings reviews, approves, and processes the request.
4. All Org IDs associated with impacted MINs can view MIN information.
5. MERSCORP Holdings bills the Investor for the related transfers.

# Procedure: Borrower Disputes

Neither MERSCORP Holdings nor MERS is a "furnisher" of credit information to a consumer reporting agency as that term is defined in the FCRA.

If MERSCORP Holdings or MERS receives a dispute from an individual to correct personal information on the MERS® System, MERSCORP Holdings will:

- Send the individual's request to the Member identified as the Servicer on the MERS® System as an encrypted email message from *borrower_dispute@mersinc.org*. Members should whitelist this email address to ensure receipt of these messages.
- Notify the individual that we have sent their dispute to the Servicer for investigation.

It is the Member's responsibility to perform the following actions within 30 calendar days of receipt of the individual's dispute:

- Investigate the disputed information reported by the individual. While the investigation is occurring, update the Social Security number field on the MERS® System for the individual with the temporary placeholder value of **444444444** to indicate that a borrower dispute is in process.

  Note: A Member may also use the temporary placeholder value of **444444444** on the MERS® System to indicate that a borrower dispute is in process when the individual contacts the Member directly to initiate the dispute.

- Correct any disputed information on the MERS® System that it determines is inaccurate or incomplete. At the conclusion of the Member's investigation, the previously entered placeholder value of **444444444** must be removed.
- Respond directly to the individual with the results of its investigation.
- Send a message to *borrower_dispute@mersinc.org* confirming that the Member has completed its investigation and responded directly to the individual.
- Comply with any other provisions of applicable law.



# Procedure: Mortgage or Assignment Erroneously Recorded in the Name of MERS

When a non-Member ("Requestor") informs MERSCORP Holdings of a mortgage or assignment erroneously recorded in the public land records in the name of MERS, MERSCORP Holdings resolves the matter as follows:

1. The MERSCORP Holdings Law Department reviews the matter and determines whether MERS will provide an affidavit to disclaim any purported MERS interest in the mortgage to the Requestor.
2. The Law Department informs the Requestor about the processing fee to resolve the matter and provides a disclaimer to the Requestor. If the loan was discovered through the unidentified mail service provided by the MERSCORP Holdings Mail Center, an additional research fee of $95 per loan is billed to the Requestor.
3. The Requestor makes payment to MERSCORP Holdings prior to the provision of the affidavit.
4. MERSCORP Holdings registers and immediately deactivates the MIN on the MERS® System.

# Procedure: Member Resignation

Any Member may resign its membership from the MERS® System by giving written notice of *Resignation* to MERSCORP Holdings. Requests may be mailed, e-mailed, or faxed to:

MERSCORP Holdings, Inc.
1818 Library Street, Suite 300
Reston, VA 20190
*resignation@mersinc.org*
Fax: (703) 748-0183

- MERSCORP Holdings acknowledges the Member's request to resign in writing and provides the *Resigning Member* with a list of the active loans registered to the Resigning Member on the MERS® System.

  Within sixty (60) calendar days of MERSCORP Holdings' acknowledgment, the Resigning Member must take the following actions:

  - For loans where the Resigning Member is named as Servicer:
    - If servicing rights to the loan have been sold to a new Servicer that is a Member, initiate a Transfer of Servicing Rights (TOS) transaction on the MERS® System to that Member, or



- If the new Servicer is not a Member, or if the Resigning Member will retain servicing rights to the loan, prepare and have a MERS Signing Officer execute, and record an *Assignment from MERS*.
    - For loans where the Resigning Member is named as Investor:
        - If the beneficial rights to the loan have been sold to a new Investor, work through the registered Servicer to initiate a Transfer of Beneficial Rights (TOB) transaction on the MERS® System, or transfer beneficial rights to Undisclosed Investor, or
        - Prepare, have a MERS Signing Officer execute, and record an Assignment from MERS, and work through the registered Servicer to deactivate the MIN on the MERS® System as **Transfer to Non-MERS Status**.
    - For loans where the Resigning Member is named as Subservicer:
        - Remove its Org ID from the Subservicer field on the MERS® System.
    - For loans where the Resigning Member is named as Interim Funder:
        - Release its Interim Funder rights on the MERS® System.

    In addition, within the same sixty (60) calendar days noted above the Resigning Member must:

    - Meet any other conditions that MERSCORP Holdings may set for the Deactivation of the Member's loans on the MERS® System.
    - Sign the *Completion of Resignation of Membership Attestation Form* and email it to *resignationresponse@mersinc.org*.

- The Resigning Member is responsible for the prompt payment of any fees, charges, and assessments invoiced to it, including any invoices received after its Resignation.
- When MERSCORP Holdings determines that the Resigning Member has completed the Resignation of Membership requirements to its satisfaction, it will transfer the Member's membership to Resigned Member status. A *Resigned Member* may reinstate its membership under its previously issued Org ID.
- If the Resigning Member fails to complete the Resignation of Membership requirements, the *MERS Entities* reserve the right to complete the Resignation.
- Once Resignation is complete, the Resigned Member remains liable and obligated under the terms of Rules 13 and 14.

Other Members that need to claim loans registered to the Resigning Member may use the certificate process described in *Reconciliation of MINs Naming a Resigning Member*.



# Procedure: Disciplinary Actions

Rule 7 governs the process by which MERSCORP Holdings may impose monetary penalties or otherwise sanction a Member for violations of the Rules or Procedures or for errors, delays or other conduct materially detrimental to the operation of MERSCORP Holdings or MERS, the MERS® System or other Members (each a "Violation").

The imposition of monetary penalties or other sanctions shall be subject to an initial notice, an opportunity to provide a written response, and an opportunity to cure and/or remediate the Violation. Additionally, a Member may engage in a dispute resolution process.

MERSCORP Holdings uses the email address *rulenotifications@mersinc.org* to communicate with Members about Violations. Violation notifications are always sent to the Member's *Executive Sponsor*; the following MERS® System contacts may also be included depending on the Violation: the *CRMS Manager* ("CM"), *Legal Contact*, *Primary Operational Contact*, and *QA Officer*. Members should whitelist this email address to ensure receipt of these messages.

Note: Violation notifications are not sent to the Member's GAL email address.

During the latter stages of the process (e.g., Penalty Imposition, Member *Lockout*, *Termination of Membership*) MERSCORP Holdings also sends the Rule Violation notifications to the Member's Executive Sponsor via certified mail.

When replying to Violation notices, or making payment for penalties, the Member must include the Case Number assigned to the Violation to ensure that its response is associated with the correct Violation in a timely manner.

# Procedure: Transacting with a Member in Lockout Status

MERSCORP Holdings may institute a *Lockout* of a Member from the MERS® System under certain conditions as provided for in the Rules or the Procedures. While a Lockout is in effect, the Member cannot log on to MERS® OnLine and is unable to perform transactions on the MERS® System. Additionally, other active Members are unable to perform transactions on the MERS® System for any MINs that list the locked out Org ID as a rights holder.

If an active MERS® System Member needs to perform transactions on a MIN(s) with a rights holder in a Lockout status, the active Member should contact the *Help Desk* for assistance.



# Reports

While no reports are associated with obtaining or resigning your MERS® System membership, error messages appear on the following reports for processing that was stopped due to a Servicer Lockout:

- *Seasoned Registration Rejects/Warnings (RB)*

- *Registration Rejects/Warnings (RG)*

- *Transfer of Beneficial Rights Rejects (BF)*

- *Physical Transfer of Servicing Rights (SC)*

- *Foreclosure Reject (DF)*

- *Payoff Reject (DP)*

- *Transfer to Non-MERS Status Reject (DQ)*

- *Default by Servicer to Non-Member Rejects (DR)*

- *Assumption Rejects/Warnings (AB)*

- *Maintenance Rejects/Warnings (MB)*

For detailed descriptions of these reports, see the *MERS® System Reports Handbook*.



# System Security

## Overview

There are three (3) required layers of identity validation in the MERS® System security scheme and two (2) optional layers that a Member may elect to use for its Org ID. The three (3) required layers of identity validation comprise a user's logon credentials:

- **Org ID**
- **User ID**
- **User Password**

The two (2) optional layers of identity validation are:

- **Enhanced Logon Authentication (ELA):** The ELA feature is a user validation that consists of a set of predefined challenge questions and user-specified answers. When ELA is enabled for an Org ID, a user must successfully answer randomly selected challenge questions before access to MERS® OnLine is granted.

- **IP-Based Authentication:** IP-Based Authentication is a network validation. When enabled for an Org ID, MERS® OnLine only grants access to users from a specific list or range of IP addresses provided by the Member.

Any attempt to access the MERS® System is denied unless all enabled layers of identity validation are satisfied. MERSCORP Holdings assigns your Org ID, which identifies your organization, when your *Membership Application* is approved. The MERS® System stores your Member Information under your Org ID (lines of business, contact information, etc.).

Your *Lines of Business* (LOBs) under Member Information determine which of the MERS® System functions you will be able to access. For example, a Custodian can view only loans for which it is the Custodian, and it cannot access transfer of beneficial rights or loan modifications.

Your MERS® System Administrator(s) is responsible for establishing and maintaining the security that controls access to the MERS® System and specific processes within the MERS® System. Your System Administrator(s) establishes User IDs and Passwords and assigns users to specific roles that enable certain levels of access in the MERS® System. The System Administrator(s) also resets passwords, reactivates User IDs, and deletes unused User IDs. See the *MERS® OnLine User Guide* for instructions on setting up and maintaining User IDs and security roles.

As defined by a contractual agreement, your organization may grant security access to a third party to process specific transactions (e.g., the MERS® System Members that are known as *Registrars* may be authorized by you to perform registrations, transfers, updates and deactivations on your behalf) by setting up a Vendor relationship, but you may assign User IDs only to persons within your organization.



# Org ID Overview

Your Org ID is one of the critical levels of identity validation in the MERS® System security scheme.

One of the primary uses of the Org ID value is in the **Originating Org ID** field where it identifies the Member that originated a MOM loan.

Note: The **Original Note Holder** field identifies the loan Originator if the Originator is not a MERS® System Member. Either the Original Note Holder or Originating Org ID field is required for all Non-MOM loans with a *Note Date* after March 31, 2012.

The MERS® System enforces the following validations on the Org ID value entered into the **Originating Org ID** field:

- It is a required value on all MOM MINs with a Note Date after March 31, 2012.

- It must be a valid MERS® System Org ID.

- In *Registration* and Update transactions for MOM, Non-MOM, and *iRegistration* MINs, the Org ID must belong to a Member that is assigned to at least one of the following LOBs:

  - Originator
  - Servicer
  - Investor
  - Third Party Originator (TPO)
  - Subservicer
  - Originating Org ID Exception

- In MOM Registration and Update transactions where the Originating Org ID belongs to a Member with a Line of Business that is exclusively a Third Party Originator, the Member's Status must be "Active". Attempts to submit an inactive TPO Org ID in the **Originating Org ID** field either at Registration or via MIN Update will reject.

# Impact

The security process affects all MERS® System Members and MERSCORP Holdings.

# Procedure: MERSCORP Holdings - System Security

Your *Business Integration Resource* ("BIR") enters the following information on the MERS® System regarding your organization.

- Org ID
- Company Name
- Corporate Address
- Phone
- Fax



- Corporate website address
- Primary company (applicable for *Primary/Secondary Relationships*)
- FHA approved indicator
  (Notify MERSCORP Holdings if this information changes; only MERSCORP Holdings can change this indicator on the MERS® System)
- *Agency ID(s)*
  (Notify MERSCORP Holdings if this information changes; only MERSCORP Holdings can change the Agency IDs associated with a Member on the MERS® System)
- Line(s) of Business
- Contact information
- Membership date

Your BIR also provides the *MERSCORP Holdings Help Desk* ("Help Desk") and Mail Room with the email address you provide for our official notices (i.e., your GAL email address), including service of process we receive on your behalf. If your GAL email address changes, you must notify the *Help Desk* immediately. For additional information on the GAL, refer to the topics included under *Receiving Official Communications from MERSCORP Holdings*.

# Procedure: Member - System Security

1. Your MERS® Integration Contact identifies a Primary System Administrator for the MERS® System, and optional Secondary System Administrator, who is responsible for the following tasks:
   - Assigning each user within your organization a unique User ID on the MERS® System.
   - Assigning a security role to each User ID.
   - Resetting passwords, deactivating User IDs and deleting User IDs and Security Roles no longer needed.
   - Providing access to the appropriate individual(s) in your organization who will maintain your Member Information section of MERS® OnLine including Address, Phone/Fax numbers, URL Address and Contact List.
   - Giving authority to third party providers so they can perform specific functions on behalf of your company by setting up a Vendor relationship, but no third party may be provided a User ID under your Org ID.
2. After your BIR sets up and activates your company on the MERS® System, your Operational Contact(s), or other designated party, is responsible for maintaining the



accuracy of your data, and notifying MERSCORP Holdings if certain information changes.

3. Your organization is responsible for keeping the following information current once your organization is activated on the MERS® System:
   - Company Name
     (Notify MERSCORP Holdings if this information changes; only MERSCORP Holdings can change Company Name on the MERS® System)
   - Corporate Address (Also notify MERSCORP Holdings if this changes)
   - Phone (Also notify MERSCORP Holdings if this changes)
   - Fax (Also notify MERSCORP Holdings if this changes)
   - Corporate website address
   - Investor Alternate Address and Indicator (if a Member populates these optional fields with data)
   - Servicer/Subservicer Alternate Address and Indicator (if a Member populates these optional fields with data)
   - Contact information (Also notify MERSCORP Holdings if primary contact changes)

   For the items where it states to notify MERSCORP Holdings, do so by using the *Company Information Change Request* form available on the corporate website.
4. If the email address to which official notices for your organization should be sent changes, you must notify the Help Desk immediately.
5. Your organization is responsible for disabling user access to the MERS® System upon employee termination or resignation.
6. Your organization is responsible for reviewing user access to the MERS® System to determine if any changes are necessary based on the employee's current duties and responsibilities, at least annually, and making all such changes.

Note: When conducting a review of user access to the MERS® System, it is important to understand that the MERS® System logon credentials provide a user with access to both MERS® OnLine and the MERSCORP Holdings Member website.

# Procedure: Third Party Providers - System Security

Your organization may grant security access to the MERS® System to third parties to process transactions on your behalf.

Your System Administrator(s) sets up this security through the Member Information Relationships section of MERS® OnLine by adding Vendor relationships. The transactions that may be processed by these vendors are:

- Registrations



- Transfers
- Deactivations
- Updates
- Inquiries

**You may not set up a User ID under your Org ID for a third party.**

# Procedure: Associated Member- System Security

The MERS® System provides all *Associated Members* a central point to obtain information on a MIN (i.e. current Servicer, current Investor) with which they are associated.

Any Member can be identified as an Associated Member on a MIN, provided it is an active MERS® System Member with a valid Org ID.

The MERS® System displays the actual, detailed *MIN Status* of a MIN to Associated Members as well as Primary Members and the Member that registered the MIN. For all other Members, the MERS® System displays the following summary Status values instead: "Active", "*Pre-Closing*", "*Registration Reversal*", and "Inactive". As a result, Members without an interest in a loan do not see the detailed *Deactivation* or *Foreclosure Status* of a MIN; the MIN Status is instead reported as "Inactive" for these Members.

The following Lines of Business (LOBs) define Associated Members on the MERS® System:

- *Collateral Agent*
- *FHLB/FRB*
- *Government Housing Agency*
- *Master Servicer*
- *Mortgage Insurance Co.*
- Trustee
- *Warehouse/Gestation Lender*
- *Property Preservation Company*
- Other

At the MIN level, the Servicer or Subservicer may identify the following types of Associated Members:

- Collateral Agent
- FHLB/FRB
- Government Housing Agency
- Master Servicer



- Mortgage Insurance Company
- Trustee
- Warehouse/Gestation Lender
- Alternate Custodian 1-4
- Participation Investor 1-4
- Other 1-4
- Property Preservation Company 1-4

# Procedure: My MERS®

The MERS® System allows you to customize the list of organizations that appear in the pop-up lists on the Registration, Transfer of Beneficial Rights, Transfer of Servicing Rights and MIN Information windows using the *My MERS®* feature. This enables you to see only the list of organizations with which you currently do business. To customize the pop-up lists, you must define those relationships within your profile and turn on the My MERS® option.

Within the Relationships section of the Member Information, you can select which relationship to view, create or delete. The different types will appear at the top of the Relationships page in alphabetical order and include:

- Collateral Agent
- Custodian
- FHLB/FRB
- Government Housing
- Interim Funder
- Investor
- Master Servicer
- Mortgage Insurance Company
- Other
- Property Preservation Company
- Servicer
- Subservicer
- Trustee
- Vendor (also included to incorporate Third Party security functionality)
- Warehouse/Gestation Lender

Active Members with a Line of Business equal to the selected Relationship Type will appear in the pop-up list. (Inactive Members will not appear in the pop up list.) The MERS® System *Lite Members* will not show on pop-up Org ID lists on a registration or



transfer transaction because it is unlikely another Member will name a Lite Member. Lite Members can, however, be named in these transactions.

When you have defined your Member Information Relationships, use the Member Information My MERS® option to turn on this option. The system will not allow you to turn on the My MERS® functionality if your organization has a Vendor Line of Business.

## Procedure: Transaction Default Settings

You can also define default values for the rights holders and option selections that appear on the Registration, Create TOS, and Create TOS/TOB pages in MERS® OnLine, using the Member Information Transaction Default Settings option.

**Registration Settings** allow you to enter the lien type, MOM indicator, Pre-Closing indicator, rights holder Org IDs, and *Originating Organization* information you usually enter during Registration. Once entered in Registration Settings, this information appears whenever you initiate a new registration, so you don't need to enter it for each loan. To enter different information for a particular loan, just enter it as you would if you hadn't used Registration Settings.

**TOS Settings** allow you to enter the rights holder Org IDs you usually enter when creating a **Transfer of Servicing Rights (TOS)** or **Transfer of Servicing and Beneficial Rights (TOS/TOB)** transaction. There is also a "Delete Current Custodian Option." Once entered in TOS Settings, this information appears whenever you initiate a new transfer transaction, so you don't need to enter it for each transfer. To enter different information for a particular transfer, you just enter it the same way you would if you hadn't used TOS Settings.

## Reports

The following reports will list Associated Member interest on MINs from updates received from both batch processing (Flat File/X12) and MERS® OnLine. For detailed descriptions of these reports, see the *MERS® System Reports Handbook*:

- *Change Notification (VB)*
- *MIN Milestone (VA)*
- *Registration Rejects/Warning (RG)*
- *Seasoned Registration Rejects/Warning (RB)*
- *Maintenance Rejects/Warning (MB)*

Note: There are no reports associated with My MERS® or the Transaction Default Settings.



# Member Information

## Overview

Your organization is required to maintain certain portions of your Member Information to define processing options, document handling, and contact information. Your MERS® System Administrator(s) maintains information that controls system access and security. Some portions of the Member Information screens can only be changed by MERSCORP Holdings.

As a Member, you are required to review (and update as necessary) your company's information (including your list of contacts) at least monthly. You may change the information in your Member Information (*Main Menu > Administration > Member Information*) at any time. MERSCORP Holdings recommends that you designate one person as a contact for these changes, generally your Operational Contact(s).

Besides maintaining your Member Information on the MERS® System, you are responsible for notifying MERSCORP Holdings when there is a change to your corporate name, address, phone or fax number. You can use the *Company Information Change Request* form available on the Member website to notify MERSCORP Holdings of these changes.

You are responsible for notifying the *Help Desk* if your email address for document images and official notices needs to be changed (i.e., your **GAL** email address).

You are also responsible for notifying the MERSCORP Holdings *Finance Department* if your Accounts Billing contact information needs to be changed.

---

Note: Your Accounts Billing contact receives the monthly invoices from MERSCORP Holdings and responds to billing inquiries.

---

Any individual listed as a MERS® System contact for an Org ID should be an employee of the Member organization and not an employee of a Vendor. If a Member provides a non-employee as a MERS® System contact, the Member remains responsible for responding to or complying with any correspondence sent to the Vendor on its behalf.

Your GAL email address, and the email addresses for your MERS® System contacts, must be issued by your organization on its corporate email system for the purpose of business correspondence; personal email addresses are not permitted.

Notification requirements for corporate name changes are described in the *Member Corporate Name Changes* chapter. Your notification of address changes should include:

- Org ID
- Organization Name
- Member Type (General, Lite, or Patron)
- Other Org IDs affected by change



- Name, title, and email address of contact submitting notification
- Old address
- New address
- Which offices/contacts are affected
- Effective Date
- If email address is changing:
    - Old email address
    - New email address
    - Effective Date
- If telephone or fax number is changing:
    - Old number
    - New number
    - Effective Date

# Impact

The maintenance of the Member Information affects all MERS® System Members.

# QA Plan Requirements - Member Information

The QA standards and validations under the MERS® System QA Plan for Member Information are covered under the following sections:

- *Member Information QA Standards*
- *Member Information Validations*

## *Member Information QA Standards*

A Member must adhere to the following QA standards for its Member Information:

- Ensure that its Member information on the MERS® System (i.e., *Member Profile*) is accurate, current and reconciled monthly.
- Notify MERSCORP Holdings when there is a change to its corporate name, address, phone number, or fax number using the *Company Information Change Request* form.
- Notify the Help Desk if its email address for document images and official notices needs to be changed (i.e., your GAL email address).
- Assign MERS® System User IDs only to individuals employed by the Member.
- Provide email addresses for the Member's GAL and MERS® System contacts that are



issued by the Member on its corporate email system for the purpose of business correspondence; personal email addresses are not permitted.

- MERS® System contacts should be employees of the Member organization and not employees of a Vendor. If a non-employee is provided for any MERS® System contact, the Member remains responsible for responding to or complying with any correspondence sent to the Vendor on its behalf.
- Review user access to the MERS® System at least annually to determine if any changes are necessary based on the employee's current duties and responsibilities, and update user access as necessary to align with his/her current duties and responsibilities.
- Disable user access to the MERS® System upon employee termination or resignation.

## *Member Information Validations*

- At least monthly, ensure that all Member Information on the MERS® System is current and accurate. This includes:
  - Member name (must be legal organization name)

    Note: To submit a name change request to MERSCORP Holdings, complete the *Company Information Change Request* form.
  - Member address(es)
  - Member phone and fax numbers
  - Member URL
  - GAL email address

    Note: The GAL email address is not maintained in the MERS® System. Contact the *Help Desk* to change.
  - Accounts Billing contact

    Note: The Accounts Billing contact is not maintained in the MERS® System. Contact the MERSCORP Holdings *Finance Department* to change.
  - Mandatory contacts: Verify the name, address, phone number, and email address for each of the following mandatory contacts:
    - *Customer Service - Primary*
    - *Executive Sponsor*
    - *Legal*
    - *Operational - Primary*
    - *Quality Assurance Officer*
    - *System Administrator - Primary*
    - *Technical* (required for Members using a *System-to-System* interface)



For definitions of these contact types, see the *Member Information* section.

- User IDs on the MERS® System are only issued to employees of the Member.
- Only employees of the Member should be listed as MERS® System contacts. If a non-employee is provided for any MERS® System contact, the Member remains responsible for responding to or complying with any correspondence sent to the Vendor on its behalf.
- The email addresses provided by the Member are issued on its corporate email system for the purpose of business correspondence.
- User access to the MERS® System reviewed at least annually to determine if appropriate for the employee's current duties and responsibilities and updated as necessary.
- User access to the MERS® System disabled upon employee termination or resignation.

# Procedure: Maintaining Member Information

Your organization is responsible for keeping all contact names, addresses, email addresses and telephone numbers current, and for notifying MERSCORP Holdings if your corporate name, address, or notification email address changes.

Maintain your organization's Member information on the MERS® System as follows:

1. Use the *Name/Address* page (*Main Menu > Administration > Member Information > Name/Address*) to update the following information:

| Address | Description |
|---|---|
| Corporate Address | Used in the Member Summary for your organization and in the *MERS® ServicerID*, and the *Servicer Identification System*. Includes address, phone number, fax number, toll-free phone number, and URL. You must also notify MERSCORP Holdings directly if this information changes. |
| Regular Mailing Address | Used by the MERSCORP Holdings Mail Center to distribute original mortgage documents received for your organization. |
| Overnight Mailing Address | Used by the MERSCORP Holdings Mail Center to distribute original mortgage documents received for your organization if you have chosen to have them delivered via overnight delivery.<br>Includes address, phone number, carrier, and account information.<br>If Overnight Mail is requested, you must provide your Corporate Airbill Number. |
| Investor Alternate Address | Includes address, phone number, fax number, toll-free phone number, and URL.<br>Note: This information is not currently used by the MERS® System. |
| Servicer/Subservicer Alternate Address | Includes alternate address, phone number, fax number, toll-free phone number, and URL. The city, state, phone number, and URL in this section may be used by MERS® ServicerID, and the |



| Address | Description |
|---|---|
| | Servicer Identification System instead of the corresponding values from your Corporate Address. To enable this feature, populate the fields in this section, and set the value of the **Use Servicer/Subservicer Alternate Address – Public** field to "Y". |

2. Use the *Relationships* page (*Main Menu > Administration > Member Information > Relationships*) to give third parties the authority to act on your organization's behalf. The following is a list of available relationship types:

- Collateral Agent
- Custodian
- FHLB/FRB
- Interim Funder
- Investor
- Master Servicer
- Other
- Servicer
- Subservicer
- Vendor
- Trustee
- Property Preservation Company
- Document Preparation Provider
- Government Housing Agency
- Mortgage Insurance Company

3. Use the *Contact* page (*Main Menu > Administration > Member Information > Contacts*) to maintain the list of employees in your organization who act as the mandatory contacts for the MERS® System.

a) The following contacts are required for each Org ID and can only be assigned to one person per Org ID:

| Contact Type | Description |
|---|---|
| Customer Service – Primary | Person who handles public requests for information about loans registered on the MERS® System. |
| System Administrator - Primary | Person responsible for setting up a unique User ID for each person at your company that needs access to MERS® OnLine or the Member website, maintaining your organization's User IDs and Roles, and resetting passwords.<br>The Help Desk refers user security requests for your organization to this contact. |
| Operational - Primary | Person responsible for overseeing or conducting the day-to-day MERS® System functions for the Member and keeping its Member Information, including Contacts, current. This contact appears in the Member Summary available from the Member Search feature on our Member website, MERS® OnLine, and MERS® Link. |

b) The following contacts are required for each Org ID and can be assigned to multiple users per Org ID:

| Contact Type | Description |
|---|---|
| Executive Sponsor | The senior executive(s) responsible for the MERS® System operations in the Member organization. The Executive Sponsor should have full authority to act on behalf of the Member in connection with the MERS® System. |
| Legal | Person(s) responsible for coordinating communication between the MERSCORP Holdings Law department and |



| Contact Type | Description |
|---|---|
| | the Member's legal counsel regarding litigation and other legal issues. |
| Quality Assurance Officer | Person(s) responsible for the Member's MERS® System Quality Assurance program. |

c) The following contacts are required for each Org ID that uses the specific product or feature referenced, and may be assigned to multiple users per Org ID:

| Contact Type | Description |
|---|---|
| eRegistry | Person responsible for responding to *MERS® eRegistry* questions on behalf of the Member. Only required for MERS® eRegistry Members. |
| Technical | Person responsible for ensuring that your internal system(s) is compatible with the MERS® System. Only required for Members using a system-to-system interface. |

d) The following contacts are optional and may be assigned to multiple users per Org ID:

| Contact Type | Description |
|---|---|
| Compliance Officer | Person responsible for regulatory internal requirements for the Member. |
| Customer Service - Secondary | Person who acts as the back-up for the Member's Primary Customer Service contact. |
| Mail Room | Person responsible for handling mail received by the MERSCORP Holdings Mail Center for your organization. |
| Operational - Secondary | Person who acts as the back-up for the Member's Primary Operational contact. |
| Property Preservation | Person responsible for handling property preservation for your organization. Appears on Member Summary in MERS® OnLine and MERS® Link for MERS® System Members and MERS® Link Subscribers to contact regarding property maintenance issues. |
| System Administrator - Secondary | Person who acts as the back-up for the Member's Primary System Administrator. |

You must maintain the following contact information in your Member Information:

- Name
- Phone number and extension
- Email address
- Pager number
- Fax number
- Address



- City
- State
- Zip code
- Contact Type

4. Use the *Options* page (*Main Menu > Administration > Member Information > Options*) to maintain the following password-related configuration options:

| Field | Description |
|---|---|
| Password Expiration Days | The number of days before a user's password expires. Located in the in the Durations section. |
| Disable Inactive User days | The number of days of after which a User ID is disabled for inactivity. This is an optional setting. |
| XML Transaction Password | The password used to submit *XML Registration* transactions. |

5. You may complete the following fields on the *Options* page to enable the optional *Enhanced Logon Authentication (ELA)* functionality for your Org ID, which requires that users successfully answer a set of predefined questions as part of the MERS® OnLine logon process:

| Field | Description |
|---|---|
| Authentication questions required to answer | Specifies the number of questions a user must answer to access MERS® OnLine. |
| Authentication frequency | Specifies how often a user is required to answer the challenge questions. |

6. You may complete the following fields on the *Options* page to override the default minimum length for passwords and challenge question responses for your Org ID:

| Field | Description |
|---|---|
| Minimum Password Length | Overrides the default 6-character minimum password length. Valid lengths range from 6 to 12 characters. |
| Minimum Response Length | Overrides the default 8-character minimum length for challenge question responses. Valid lengths range from 6 to 30 characters. |

# Procedure: MERSCORP Holdings

MERSCORP Holdings maintains a portion of your organization's profile as well. You can view this information, but you cannot update it. Contact the *Help Desk* if you need MERSCORP Holdings to update this information.

- Member Name
  (MERSCORP Holdings requires official notification to update; see *Member Corporate Name Changes*)



- Primary Org ID

- Lines of business

- FHA approval flag

- Investor Options

- Servicer Options

- Subservicer Options

- Agency IDs

- Document Handling Instructions
  (If Overnight Mail is requested, you must provide MERSCORP Holdings with your Corporate Airbill Number).

- Registration by Others flags
  (May be used to block other Members from registering a loan showing your organization as Investor, Servicer, or Subservicer).

- Automated Password Reset flag
  (Allows users to establish challenge questions to be used to log into the system if they forget their password).

- eRegistry and eDelivery Options



# Member Corporate Name Changes

## Overview

Because of mergers, acquisitions and other business events, your corporate name as recorded in the MERS® System may need to change. Please review the MERS® System Membership Application and Rules of Membership for policies pertaining to these events.

MERSCORP Holdings is responsible for making corporate name changes on the MERS® System.

Where not legally prohibited and sufficient time exists, an officer of your organization must notify MERSCORP Holdings in writing at least:

- 30 days before a simple corporate name change becomes effective or
- 90 days before a merger with or acquisition by another organization

## Impact

This process potentially impacts all MERS® System Members.

## Procedure: Member Corporate Name Changes

1. MERSCORP Holdings requires official written notification for all corporate name changes. Use the *Company Information Change Request* form available on the corporate website.

   The notification must be completed by an officer of your company and sent to MERSCORP Holdings within the time periods defined in the *Overview*.
   The notification must include the following information:

   - Member Org ID
   - Old corporate name
   - New corporate name
     (Must be unique within the MERS® System)
   - Effective date of the name change
   - Reason for name change (e.g. merger)
   - Member Type (General, Lite, or Patron)
   - Other Org IDs affected by change
   - Name, title, and email address of company officer submitting notification



2.  MERSCORP Holdings updates your corporate name in the MERS® System on the effective date specified.

3.  The new corporate name appears anywhere your member name is linked to its Org ID. For example, on all pop up lists in the MERS® System, registered loans and batch transactions in the system, and reports produced thereafter will show the new name.

4.  If MERS previously issued your organization a Corporate Resolution, the CRMS automatically submits a request for an updated Corporate Resolution to reflect your organization's new company name.



# Mortgage Identification Number (MIN)

## Overview

The Mortgage Identification Number (MIN) is an 18-digit number that uniquely identifies a mortgage loan registered on the MERS® System. A MIN is permanently assigned to a mortgage at registration and cannot be duplicated or reused. To process information on the MERS® System, you must enter the MIN.

A MIN consists of a three-part, 18-digit string in the following format:



- **Component 1:** The seven-digit *Organization Identification Number* (Org ID) that uniquely identifies a Member or an Affiliate Org ID on the MERS® System. MERSCORP Holdings assigns the Org ID to your organization. Like the rest of the MIN, the Org ID never changes, regardless of servicing transfers. In the example above, the Org ID is **9594567**.

- **Component 2:** A 10-digit *Sequence Number* assigned by your organization. You can use an internal number that has meaning to your company (e.g., your internal loan number), or you can generate random Sequence Numbers, as long as you never re-use the number. In the example above, the Sequence Number is **0123456789**.

- **Component 3:** A one-digit *Check Digit* calculated by your organization using the Mod 10 Weight 2 Algorithm, which is documented in the *Creating a MIN*. In the example above, the check digit is **8.**

Note: A MIN in X12 file or Flat File transaction does not include dashes.

Your company may have a utility that automatically calculates the check digit for you. Your company's LOS or servicing system may generate your MINs, or you may use a third party application.

A MIN is unique and must never be reused. However, it can be reactivated if it was deactivated because servicing was sold to a non-Member Servicer then transferred back to a MERS® System Member. The new Servicer would then register the MIN to reactivate it. For details, refer to *MOM and Non-MOM Loan Registration*.

The MERS® System validates MINs at registration by checking for duplicate MINs, ensuring that the check digit is calculated correctly, and validating that the first seven digits of the MIN match an Org ID set up in the Member's profile.

Note: For details on the placement of the MIN and *SIS Phone Number* on documents, refer to *Document Requirements for MERS Loans*. Recording requirements may vary by jurisdiction and could conflict with MERS® System requirements. In all cases, a local jurisdiction's requirements take precedence over MERS® System requirements.

# Impact

This process potentially impacts the following Members:

- Servicers
- Subservicers
- Originators
- Third-Party Originators
- Investors
- Document Custodians
- Associated Members

# Procedure: Creating a MIN

1. The Member uses the seven-digit Org ID assigned by MERSCORP Holdings.
2. The Member determines the unique 10-digit Sequence Number.
3. The Member generates the check digit using the MOD 10 Weight 2 Algorithm. Refer to *MIN Check Digit Calculation* below for detailed calculation steps.

## *MIN Check Digit Calculation*

The MOD 10 Weight 2 Algorithm is as follows:

1. The units (i.e., the rightmost) position and every alternate position of the base number (from right to left) are multiplied by two. Any carry is added to the product of the next multiplication operation. If there is a carry on the last multiplication operation, it is immediately added to the product.
2. The digits in the products and the digits in the base number not multiplied by two are added together.
3. The total is subtracted from the next higher number ending in zero. If the total ends in zero, the number is subtracted from itself.
4. The difference is the check digit.



**Example: Org ID = 9594567 Sequence # = 0123456789**

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **1. Base Number** | 9 | 5 | 9 | 4 | 5 | 6 | 7 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | |
| **2. Alternate Positions** | 9 | | 9 | | 5 | | 7 | | 1 | | 3 | | 5 | | 7 | | 9 | |
| **3. Times2** | x2 | | x2 | | x2 | | x2 | | x2 | | x2 | | x2 | | x2 | | x2 | |
| **4. Product Values (line 2 x 2)** | 1+8+1 | | 1+8=9 | | 1+0=1 | | 4 | | 2 | | 1+6=7 | | 1+0=1 | | 1+4 =5 | | 8 | |
| **5. Digits Not Multiplied** | | 5 | | 4 | | 6 | | 0 | | 2 | | 4 | | 6 | | 8 | | SUM |
| **6. Add Product Values & Digits (lines 4 and 5)** | 10 | +5 | +9 | +4 | +1 | +6 | +4 | +0 | +2 | +2 | +7 | +4 | +1 | +6 | +5 | +8 | +8 | = 82 |
| **7. Next Higher Number Ending in 0** | | | | | | | | | | | | | | | | | | 90 |
| **8. Minus Sum of digits** | | | | | | | | | | | | | | | | | | - 82 |
| **9. Check Digit** | | | | | | | | | | | | | | | | | | 8 |
| **10. Base Number + Check Digit = MIN** | 9 | 5 | 9 | 4 | 5 | 6 | 7 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 8 |



# MERS® System Quality Assurance

Your organization committed to abide by the MERS® System Quality Assurance ("QA") Standards by signing the Member Application. The current Servicer of a MERS Loan inherits from the seller the responsibility for meeting the QA Standards. Therefore, a Servicer should consider managing any relationship that it maintains with a trading partner such that it ensures the partner's compliance with the MERS® System QA Standards with respect to MERS Loans.

MERSCORP Holdings will provide the knowledge, training, and tools (or assistance in creating tools) to ensure that a Member's MINs are generated correctly, the information entered on the MERS® System is accurate and complete, the proper language is used to convey legal title to MERS, and the MIN and SIS Phone Number are correctly placed on loan documents.

MERSCORP Holdings expects your company to integrate our QA Standards into your everyday business practices by developing a MERS® System QA Plan. We expect you to self-audit your performance against your QA Plan using a random sample of your loans and meet or exceed our QA Standards.

Additionally, if your company services loans registered on the MERS® System, we require an Annual Report of the control structure of your organization's System-to-System reconciliation process, reject/warning report process, and adherence to your organization's internal MERS® System QA Plan.

## Impact

These processes impact all MERS® System Members, but especially Members who service or subservice loans.

## MERS® System Quality Assurance Policy

The MERS® System Quality Assurance Policy is designed to ensure that:

- A valid MIN is assigned to the loan and affixed in the proper location on the recorded documents associated with the loan (e.g., MOM Security Instrument, Assignment to/from MERS, Lien Release).

- MERS is accurately recorded in the public land records as Mortgagee after loan origination or *Assignment to MERS*.

  **Important:** In accordance with the MERS® System Rules of Membership, if a jurisdiction does not require Recordation, the MOM Security Instrument and Assignment to MERS documents must be recorded in the public land records.



- The loan information is accurately registered on the MERS® System after origination, Assignment to MERS, or acquisition of servicing.
- When Beneficial or *Servicing Rights* are sold to another Member, the seller and buyer update the MERS® System to reflect the new ownership interests.
- When a loan is foreclosed, paid off, or servicing is sold to a non-Member, MERS is released in the public land records as the Mortgagee and the MIN assigned to the loan is affixed in the proper location on the lien release document or *Assignment from MERS*.

**Important:** In accordance with the MERS® System Rules of Membership, if a jurisdiction does not require Recordation, the Assignment from MERS and Lien Release documents must be recorded in the public land records.

- Any Member that accesses borrower information from the MERS® System affirms that it neither uses nor intends to use that information (other than information which the Member already possesses) as a factor in determining a consumer's eligibility for credit or insurance to be used primarily for personal, family or household purposes, for employment, for a government issued license, or to continue to retain an existing credit account, or in assessing a consumer's credit or payment risks with respect to an existing obligation.

Key components of the MERS® System Quality Assurance Policy include:

- **Quality Assurance (QA) Plan:** Lists the QA standards, requirements, and validations for which a Member that performs transactions on the MERS® System is responsible. For details, refer to *Quality Assurance Plan*.
- **Annual Report:** Confirms the controls that a Member has in place for their system-to-system reconciliation, reject/warning processing, and adherence to their MERS® System QA Plan. For details, refer to *Annual Report*.
- **Data Reconciliation:** A Member must reconcile all required and conditional fields on the MERS® System with their *System of Record*. For details, refer to *Data Reconciliation Standards*.
- **Monitoring:** MERSCORP Holdings monitors Member compliance to the MERS® System Quality Assurance Policy via several processes. For details, refer to *MERSCORP Holdings' Quality Assurance Reviews*.

## Quality Assurance Plan

All Members that perform transactions on the MERS® System are required to have in place a current MERS® System Quality Assurance Plan ("QA Plan") for each active Org ID using MERSCORP Holdings' QA Plan template. We require that your organization keep its most recent MERS® System QA Plan on file with MERSCORP Holdings. We expect your organization to monitor its performance against its current QA Plan and to review its QA Plan at least annually for accuracy and effectiveness. Members must submit



their completed QA Plan by June 30th of the current year. A submitted QA Plan covers your organization's activity since its last submitted QA Plan and may include activity from the prior calendar year.

You may submit an updated QA Plan electronically ("eQAPlan") to MERSCORP Holdings as follows:

- Access the *Member website* and sign in with your MERS® System credentials.
- Select **eQAPlan** from the *Quick Links* section.
- Follow instructions to submit your eQAPlan.
- Submit one QA Plan for each active Org ID.
- If your organization has developed its own QA Plan, complete our QA Plan template, and email your QA Plan as an addendum to *compliance@mersinc.org*.

If you are unable to complete an eQAPlan, complete the paper-based QA Plan template:

- Request the QA Plan template from *compliance@mersinc.org*.
- Follow the instructions provided in the template to complete your QA Plan. You cannot submit your QA Plan unless all the required fields are complete.
- Submit one QA Plan for each active Org ID.
- If your organization has developed its own QA Plan, complete our QA Plan template, and email your QA Plan as an addendum to *compliance@mersinc.org.*

Your organization is responsible for saving a copy of its completed QA Plan for its records.

If we have questions or concerns regarding your QA Plan, we will contact your MERS® System Quality Assurance Officer and/or *Executive Sponsor*.

## Annual Report

The *Annual Report of MERS® System Quality Assurance Standards Compliance* ("Annual Report") ensures that each Member *Servicer* is compliant with the MERS® System Quality Assurance Standards. A Servicer must complete and submit an Annual Report each calendar year for each active Org ID that covers activity from the prior 12 months, including activity that may be from the prior calendar year.

The owner of servicing rights for loans registered on the MERS® System is required to complete the Annual Report of MERS® System Quality Assurance Standards Compliance and submit it to MERSCORP Holdings. If a Servicer's portfolio is subserviced and their Subservicers complete the Annual Report process, the Servicer must identify their Subservicers in an attachment to the Servicer's Annual Report.

The Annual Report confirms:

- Member has in place procedures designed to provide reasonable assurance that it has



submitted to MERSCORP Holdings data for all the MERS® System required and conditional reporting fields.

- Member has conducted system-to-system reconciliations for all the MERS® System required and conditional reporting fields at the required frequency (monthly or quarterly; see Requirements below).
- Required and conditional fields entered on the MERS® System on behalf of Member match those values in Member's internal *System of Record*, and discrepancies and remediation activities necessary to align the two systems are tracked and monitored on aging reports until cleared.
- Member has in place procedures designed to provide reasonable assurance that it has conducted daily capture of all reject/warning reports associated with registrations, transfers, and status updates on open-item aging reports.
- Member has in place procedures that are designed to provide reasonable assurance of compliance with the MERS® System Rules and Procedures applicable to Signing Officers.
- Member has monitored its performance against Member's Quality Assurance Plan, has reviewed the plan at least annually for effectiveness, and has revised the plan as necessary.

Your Annual Report must be signed by your Executive Sponsor and third-party review organization or internal reviewer (as applicable).

Your organization is responsible for saving a copy of its completed yearly Annual Report for its records.

## Annual Report Requirements

- If your organization is listed on the MERS® System as the Servicer on 1,000 or more active MINs as of March 31st of the current year, you must use an **external, third-party** review organization. Third-party review organizations can be external auditors or third party compliance/consulting organizations.
- If your organization is listed on the MERS® System as the Servicer on less than 1,000 active MINs as of March 31st of the current year, you may use an **internal reviewer** or engage an **external, third-party** review organization. Your MERS® System QA Officer or Legal contact may serve as your internal reviewer, but no other mandatory MERS® System contact may serve in this role. Any other employee of your organization that is not affiliated with your MERS® System operations, including any non-mandatory MERS® System contact, may serve as your internal reviewer.
- All Members (except Lite Members) who are listed as the Servicer on the MERS® System must submit a completed Annual Report. Any organization that becomes a new Member after March 31 of a given year will be exempt from the Annual Report requirement for that year only.



- Include with your submission an explanation of any noted exceptions to the six (6) bulleted requirements on the Annual Report form. For example, **"The date of our last system-to-system reconciliation does not conform to the required reconciliation frequency because…."**

  **Important:** Your Annual Report will be rejected if your last reconciliation date is beyond the required frequency, or no reconciliation was performed, and no explanation is provided.

- Members must reconcile their portfolio according to the guidelines below.
  - **Members servicing 1,000 or more active registered loans** as of March 31st of that year are required to conduct at least **monthly** system-to-system reconciliations for all the MERS® System required and conditional reporting fields.
  - **Members servicing fewer than 1,000 active registered loans** as of March 31st of that year are required to conduct at least **quarterly** system-to-system reconciliations for all the MERS® System required and conditional reporting fields.
  - All Members completing the Annual Report must certify that they are conducting system-to-system reconciliations at the required frequency (monthly or quarterly). If your portfolio is subserviced and your Subservicer(s) complete(s) the Annual Report process, you must still complete an Annual Report and identify your Subservicer(s) in an attachment to your Annual Report.
- Members must obtain the required signatures on the Annual Report.
  - For Members servicing 1,000 or more active registered loans as of March 31st of that year, the external, third-party review organization that reviewed your performance must sign the Report.
    - If the third-party review organization refuses to sign the Annual Report, an alternate option is as follows:
      - ✓ Enter the name of the third-party review organization on the "Signature of third-party reviewer" signature line on the Annual Report.
      - ✓ Submit the signed engagement letter from the third-party review organization.
      - ✓ The engagement letter must specifically address each of the requirements listed on the Annual Report.
    - For Members servicing less than 1,000 active registered loans as of March 31st of that year, the internal reviewer or external third party must sign the Report.
    - Your organization's Executive Sponsor must sign the Report. To verify or change who your Executive Sponsor is on the MERS® System, see the *Member Information Contacts Quick Reference Guide*.
- Submit your completed Annual Report to MERSCORP Holdings each year to *compliance@mersinc.org* by December 31st.



# Data Integrity QA Standards - Loan Registration

The following data integrity requirements apply to the data on the Subservicer's *System of Record* if one is named on the MERS® System; otherwise they apply to the data on the Servicer's System of Record.

Upon registering a loan on the MERS® System, the Member must validate that the data on the MERS® System matches its System of Record (i.e., the two-way validation). For certain validations (e.g., SSN Numbers, name changes for marriage/divorce), it may be necessary to examine the documents in the overall loan file to verify that the information is accurate. The data on the MERS® System must match the corresponding data on your System of Record. The Member's System of Record is the source of data for the MERS® System.

Note: If a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede the MERS® System requirements.

## Data Integrity Requirements

- Loan status on the MERS® System matches Member's *System of Record* except for iRegistration loans in foreclosure (Members are not required to report iRegistration foreclosure activity on the MERS® System).
- *Original Borrower* Name(s) on the MERS® System exactly match name(s) on Member's System of Record ("Member's system").
- Current Borrower Name(s) or Corporate Name(s) on the MERS® System exactly match the name(s) on Member's system, including middle name or initial. For REO iRegistration loans, the Corporate Name on the MERS® System should state "Real Estate Owned".
- All Primary Borrower Social Security or Tax ID numbers on the MERS® System match Member's system and reflect valid SSNs or TINs except as follows:
  - **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:** Used for foreign national with no SSN or Tax ID.
  - **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:** A temporary placeholder used while a Member is performing an investigation as part of the *Borrower Disputes* process or when a borrower contacts the Member directly to initiate the dispute.
  - **No other placeholder values are permitted for SSN or Tax ID.**
- Property address exactly matches the address on the Member's system.
- Property County, FIPS code, or ANSI code matches the legal description on the Member's system (County where property is located).
- Note Date on the MERS® System matches Note Date on Member's system. This requirement does not apply to REO iRegistration loans because the Note Date is the date that the loan was registered on the MERS® System.



- Note Amount on the MERS® System matches note amount on Member's system. This requirement does not apply to REO iRegistration loans because the Note Amount on the MERS® System is set to $1.00.
- MOM Indicator correctly reflects MERS as Mortgagee status:

| MOM Indicator | Condition |
|---|---|
| MOM | Loan closed with MERS as the Mortgagee on the Security Instrument. |
| Non-MOM | Loan secured by a Mortgage for which MERS is the Mortgagee through assignment. Non-MOM loans include iRegistration loans subsequently converted to a Non-MOM. |
| iRegistration | Loan registered on the MERS® System for informational purposes only (MERS is not the Mortgagee). |

- Lien Type on the MERS® System matches Member's system.
- *Owner Occupied* flag on the MERS® System matches Member's system.
- Investor on the MERS® System matches Member's system if the Investor is an *Option 1* or *Option 2* Member Investor. You may identify a non-Member Investor with an alias by using Org ID 1000002 (Undisclosed Investor).
- Servicer on the MERS® System matches Member's servicing system.
- Subservicer on the MERS® System matches Member's servicing system.
- For REO iRegistration loans, the *Property Preservation Company* identified on the MERS® System matches the company on the Member's system.
- For MOM and Non-MOM loans only:
  - Originating Org ID field contains the correct Org ID of the loan Originator if the Originator is a MERS® System Member.
  - Original Note Holder field contains the correct name of the loan Originator if the Originator is a non-Member.
  - All MOM loans with a Note Date after March 31, 2012 contain the Originating Org ID.
  - All Non-MOM loans with a Note Date after March 31, 2012 contain either the Originating Org ID (for a MERS® System Member) or the Original Note Holder (for a non-Member).
  - All *Co-Borrower* Social Security numbers or Tax Identification numbers on the MERS® System match the corresponding number on the Member's system.
  - Investor Loan Number on the MERS® System matches Member's system if required by Investor.



- If *Agency ID* is required by an Investor and a loan is being registered after the beneficial ownership rights have transferred, the Agency ID on the MERS® System is that of the organization that sold the loan to the Agency.
- If applicable, FHA/VA Case numbers on the MERS® System match Member's system if required by Investor.
- For MINs in securities where the Investor is an *Agency* that requires a *Pool Number*, the Pool Number field on the MERS® System contains the Pool Number and matches Member's system.
- For MINs in rated securities**,** the Securitization field on the MERS® System contains the *Trust* name and matches Member's system.

  Example: ABC Trustee 2010-10 or ABC as Indenture Trustee of the 2008HE3-25trust.

Note: For certain validations (e.g., SSN Numbers, deceased borrowers, name changes for marriage/divorce), it may be necessary to examine the documents in the overall loan file to verify that the information is accurate.

## Data Reconciliation QA Standards

The MERS® System data reconciliation requirement calls for a periodic *two-way* validation between your *System of Record* and the MERS® System. The reconciliation criterion is that the data on the MERS® System matches the corresponding data on your System of Record. The Member's System of Record is the source of data for the MERS® System.

Your organization must reconcile certain fields in the MERS® System to your System of Record for all active loans at the required frequency:

- Monthly, if you service 1,000 or more active registered loans as of March 31 of the current year
- Quarterly, if you service under 1,000 active registered loans as of March 31 of the current year

There are two different field-reconciliation tables below, one for *MOM and Non-MOM Loans* and another for *iRegistration Loans*. Additionally, any other fields that contain data on the MERS® System must be reconciled with your internal system as well except as follows:

- *Agency ID*: Is not subject to the periodic data reconciliation requirement.
- *Funding Date*: Is not subject to the periodic data reconciliation requirement.
- *Owner Occupied*: Is not subject to the periodic data reconciliation requirement.
- *Original Borrower*: If a Member's System of Record stores Original Borrower information after an Assumption occurs, the Member must reconcile this data on the



MERS® System. If the Member's System of Record does not store Original Borrower information, the Member is not required to reconcile this data on the MERS® System.

Any fields populated on your internal system but not on the MERS® System do not need to be reconciled.

## MOM and Non-MOM Data Reconciliation

The fields in the table below must be reconciled for MOM and Non-MOM loans. The following values are used in the **Required or Conditional** column:

- Required = Must be present for all loans

- Conditional = Required if the field applies to that loan, borrower, or property (e.g., Co-Borrower information, Originating Org ID for a MOM loan), and the data is present on the Member's *System of Record*. For details on the requirements that make a conditional field required for a MIN, refer to *Conditional Field Criteria*.

| MERS® System Field Name | Field Description | Required or Conditional |
|---|---|---|
| MIN_NBR | MIN (Mortgage Identification Number) | Required |
| MIN_STAT | MIN Status Indicator | Required |
| LIEN_TYPE | Lien Type | Required |
| NOTE_AMT | Note Amount | Required |
| NOTE_DT | Note Date | Required |
| ORGNL_MRGTE_ID | Originating Org ID | Conditional |
| NOTE_HLDR_NM | Original Note Holder | Conditional |
| SERVR_ORG_ID | Servicer Org ID | Required |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Conditional |
| INVST_ORG_ID | Investor Org ID | Required |
| PPC1_ID | Property Preservation Company 1 Org ID | Conditional |
| BORR_CORP_NM | Borrower Corporate Name | Conditional |
| BORR_FST_NM | Borrower First Name | Conditional |
| BORR_MID_NM | Borrower Middle Name | Conditional |
| BORR_LST_NM | Borrower Last Name | Conditional |
| BORR_SSN | Social Security Number | Required |
| BORR_CORP_NM | Co-Borrower Corporate Name | Conditional |



| MERS® System Field Name | Field Description | Required or Conditional |
|---|---|---|
| BORR_FST_NM | Co-Borrower First Name | Conditional |
| BORR_MID_NM | Co-Borrower Middle Name | Conditional |
| BORR_LST_NM | Co-Borrower Last Name | Conditional |
| BORR_SSN | Co-Borrower Social Security Number | Conditional |
| PROP_NBR | Property Street Number | Conditional |
| PROP_STRT | Property Street Name | Required |
| PROP_UNIT_NBR | Property Unit Number | Conditional |
| PROP_CITY | Property City | Required |
| PROP_ST | Property State | Required |
| PROP_ZIP | Property Zip | Required |
| PROP_DESCR_VAL | Property County/FIPS Code/ANSI Code | Required |
| SI_IN_MERS | MOM Indicator | Required |
| INVST_LOAN_NBR | Investor Loan Number | Conditional |
| FHA_VA_MI_NBR | FHA/VA/MI Loan Number | Conditional |
| POOL_NBR | Pool | Conditional |
| SECURITIZATION | Securitization | Conditional |

Note: The PROP_DESCR_VAL field contains only one of the following: the county name where the property is located, or the corresponding *FIPS Code*, or *ANSI Code*.

## *iRegistration Data Reconciliation*

The fields in the table below must be reconciled for iRegistration loans. The following values are used in the **Required or Conditional** column:

- Required = Must be present for all loans
- Conditional = Required if the field applies to that loan, borrower, or property, and the data is present on the Member's *System of Record*. For details on the requirements that determine if a conditional field is required, refer to *Conditional Field Criteria*.

| MERS® System Field Name | Field Description | Required or Conditional |
|---|---|---|
| MIN_NBR | MIN (Mortgage Identification Number) | Required |



| MERS® System Field Name | Field Description | Required or Conditional |
|---|---|---|
| MIN_STAT | MIN Status Indicator | Required |
| LIEN_TYPE | Lien Type | Required |
| NOTE_AMT | Note Amount | Required |
| NOTE_DT | Note Date | Required |
| SERVR_ORG_ID | Servicer Org ID | Required |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Conditional |
| INVST_ORG_ID | Investor Org ID | Required |
| PPC1_ID | Property Preservation Company 1 Org ID | Conditional |
| BORR_CORP_NM | Borrower Corporate Name | Conditional |
| BORR_FST_NM | Borrower First Name | Conditional |
| BORR_MID_NM | Borrower Middle Name | Conditional |
| BORR_LST_NM | Borrower Last Name | Conditional |
| BORR_SSN | Social Security Number | Required |
| PROP_NBR | Property Street Number | Conditional |
| PROP_STRT | Property Street Name | Required |
| PROP_UNIT_NBR | Property Unit Number | Conditional |
| PROP_CITY | Property City | Required |
| PROP_ST | Property State | Required |
| PROP_ZIP | Property Zip | Required |
| PROP_DESCR_VAL | Property County/FIPS Code/ANSI Code | Required |
| SI_IN_MERS | MOM Indicator | Required |

Note: The PROP_DESCR_VAL field contains only one of the following: the county name where the property is located, or the corresponding FIPS code, or ANSI code.

## *Conditional Field Criteria*

The following table lists each conditionally required field in the MERS® System and the corresponding condition that makes the field required for a specific MIN:



| Conditional Field Name | Description | Conditional Requirement |
|---|---|---|
| ORGNL_MRGTE_ID | Originating Org ID | Required if the loan Originator **is** a MERS® System Member. |
| NOTE_HLDR_NM | Original Note Holder | Required if the loan Originator **is not** a MERS® System Member. |
| SUB_SERVR_ORG_ID | Subservicer Org ID | Required if a Servicer uses a Subservicer to service its loans, and the Subservicer needs to process transactions on the MERS® System, execute MERS signing authority, or receive mail service on behalf of the Servicer. |
| BORR_CORP_NM | Borrower Corporate Name | Required if the borrower is a corporation. |
| BORR_FST_NM | Borrower First Name | Required if the borrower is an individual. |
| BORR_MID_NM | Borrower Middle Name | |
| BORR_LST_NM | Borrower Last Name | |
| BORR_CORP_NM | Co-Borrower Corporate Name | Required if a corporation is listed as a co-borrower on your System of Record. |
| BORR_FST_NM | Co-Borrower First Name | Required if an individual is listed as a co-borrower on your System of Record. |
| BORR_MID_NM | Co-Borrower Middle Name | |
| BORR_LST_NM | Co-Borrower Last Name | |
| BORR_SSN | Co-Borrower Social Security number | |
| PROP_NBR | Property Street Number | Required if the property address includes a street number. |
| PROP_UNIT_NBR | Property Unit Number | Required if the property address includes a unit number. |
| INVST_LOAN_NBR | Investor Loan Number | Required if an Investor requires an Investor Loan Number for MINs in securities. |
| FHA_VA_MI_NBR | FHA/VA/MI Loan number | Required if an Investor requires an FHA/VA Case Number or MI Certificate Number on MINs. |
| POOL_NBR | Pool Number | Required if an Investor requires a Pool Number for MINs in securities. |
| SECURITIZATION | Securitization | Required for MINs that are part of a non-Agency securitization. |
| AGENCY_NBR | Agency ID | Required if an Investor requires an Agency ID for MINs in securities.<br>*Agency ID* is ***not*** subject to the periodic MERS® System Data Reconciliation requirement. Once populated with the value that correctly identifies the organization that sold the loan to the Agency, the value |



| Conditional Field Name | Description | Conditional Requirement |
| --- | --- | --- |
| | | should not be updated unless the loan is transferred to another Agency Investor. |

## *Member Reconciliation Extract (MRE)*

Upon request, MERSCORP Holdings will generate the monthly **Member Reconciliation Extract (MRE)** for a Member. The MRE consists of eight (8) tab-delimited output files that contain MIN and Member data from the MERS® System. A Member uses the MRE to reconcile the data on its *System of Record* with its data on the MERS® System. The MRE is used to perform either the monthly or quarterly system-to-system reconciliation.

The MRE output files are generated on a monthly schedule for active Members and placed in the Member's "MRE'" folder on the MERS® System's *SFTP* server. The files are available for 10 calendar days and then purged from the server. Prior to being purged, a Member can download the output files directly from the SFTP server *OR* from MERS® OnLine using the **Member Reconciliation** option of the Reports menu.

Note: MRE output files larger than 6 MB can only be downloaded directly from the SFTP server. To access the SFTP server, a Member needs an SFTP interface to the MERS® System. For details, refer to the *MERS® Integration Handbook Volume II.*

The layout of the *MRE Output Files*, available on our Member website, outlines the data contained in each of the output files, which are as follows:

1. **MIN Information** - General data by MIN
2. **MIN Holders** - Primary rights holder information by MIN
3. **Associated Members** - Additional rights holder information by MIN
4. **Borrowers** - All Borrower information by MIN
5. **Legal Description** - Legal Description information by MIN
6. **Member** - Member information by Org ID
7. **Contacts** - Contact information for each Org ID in the extract
8. **Modification Data** - Modification Agreement information by MIN

Note: Deactivated MINs, including those with a Status of **Foreclosure Complete**, are not included in the MRE output files.

Please contact *compliance@mersinc.org* for additional information or to have the MRE output files scheduled for your organization.

MERSCORP Holdings, in its sole discretion, determines the monthly schedule for the MRE output files and reserves the right to change the schedule as required to maintain system performance and availability.



## *Reconciliation of MINs Naming a Resigning Member*

If during your reconciliation, you find that there are MINs naming a *Resigning Member* in the MERS® System but for which your organization is Servicer, Subservicer or Investor, the MINs can be claimed using the below process. Please be aware that in submitting a certificate you are indemnifying MERS and MERSCORP Holdings if inaccurate information in the certificate subjects MERS and/or MERSCORP Holdings to damages.

Certificates of Ownership are available which authorize MERSCORP Holdings to initiate transfers on behalf of Resigning Members. The Online form allows you to log in using an authorized Org ID and User ID combination, designate the certificate type, enter the appropriate previous and new rights holder information, upload the MIN list, and automatically submit the certificate to MERSCORP Holdings for approval.

Access to submit the Online certificates is obtained by providing the below information for each Org ID to *certificates@mersinc.org*. By submitting these credentials, you assert the requestor is authorized to commit your organization to the transaction requests and resulting fees.

- Name of authorized requestor
- Requestor's MERS® OnLine User ID (No particular security role is required, but the User ID must be active, and the associated user name must match name of requestor)
- Requestor's business email address (domain must match that for Org ID)

When the transaction has been processed on the MERS® System, an email is sent from *certificates@mersinc.org* to your GAL email address that contains the transfer batch number to be confirmed.

# MERSCORP Holdings' Quality Assurance Reviews

MERSCORP Holdings conducts periodic Quality Assurance ("QA") reviews to audit compliance with the MERS® System QA Standards specified in the *Procedures* and *Rules* and monitor the effectiveness and accuracy of a Member's training, tools, and procedures. These QA reviews may include, but are not limited to, the mortgage documents related to a Member's *MERS Loans* and the data on the Member's System of Record related to these loans. MERSCORP Holdings generally performs the following types of QA reviews:

- *Data Review*
- *Document Review*
- *Compliance Review*
- *Quality Assurance Profile*

If a Member is selected for a QA Review, it is required to participate in good faith throughout the entire process which includes addressing any items identified in a post-review action plan.



## Data Review

The Data Review is a system-to-system comparison of active MIN data from the MERS® System and the Member's *System of Record* that verifies all the required and conditional data listed on the MERS® System, including loan status and Rightsholders, match the Member's system of record. A Member is selected for a Data Review because it is the current Servicer for *MERS Loans*.

Note: The Member's System of Record is the source of data for the MERS® System.

In a Data Review, the Member provides a set of tab-delimited text files containing data for its active MERS Loans from its System of Record as of a certain date, and MERSCORP Holdings compares this data to an extract from the MERS® System as of the same date.

The outcome of a Data Review may include an action plan for the Member to address.

iRegistration loans are not reviewed by MERSCORP Holdings during a Data Review.

## Document Reviews

A Member may be selected for a Document Review based upon the size of its portfolio of serviced MERS Loans or for adverse reasons. A Document Review evaluates a Member's compliance with the MERS® System requirements concerning actions taken in the name of MERS and the corresponding transactions performed on the MERS® System. During a Document Review, MERSCORP Holdings selects a random sample of the Member's MERS Loans and requests certain documentation based upon each loan's status in the MERS® System. The outcome of a Document Review may include an action plan for the Member to remediate any exceptions cited during the review.

## Compliance Review

MERSCORP Holdings may conduct a Compliance Review, which may include an on-site visit, to review a Member's MERS® System operations and discuss process improvement opportunities. A Compliance Review may be at the Member's expense if the review is due to a high number of mismatches from the Member.

MERSCORP Holdings schedules a date for a Compliance Review with a Member in advance. The review covers a Member's MERS® System operations. A Compliance Review may result in an action plan for the Member to address.



## Quarterly Quality Assurance Profile

MERSCORP Holdings may issue a Quarterly Quality Assurance Profile (QQAP) that requires a Member's response. Members are selected for the QQAP based on various factors including regulatory requirements.

MERSCORP Holdings generates a QQAP for select Members and sends it to the Member's *Executive Sponsor* via email. Each Member must complete the QQAP and return it within 30 days. The QQAP response includes details about the total number of MINs in the Member's most recent reconciliation, mismatch percentages as compared to the MERS® System, and total MIN status mismatches.



# MOM and Non-MOM Loan Registration

## Overview

*Registration* is the process for entering information to activate a loan on the MERS® System. A Member must register any:

- MOM loan it has closed, purchased, or otherwise acquired, and any
- Loan assigned to MERS post-origination, including any Non-MOM it has purchased or otherwise acquired.

To register a loan for which MERS is neither the original Mortgagee nor assignee, see *iRegistration*. To register a loan that has not yet closed, see *Pre-Closing*. To register a loan for which the prior registration was reversed refer to *Procedure: Re-registration after Reversal*.

There are three methods of submitting Registration transactions to the MERS® System:

- MERS® OnLine our manual browser-based application
- Asynchronous System-to-System transaction: Flat File or EDI X12
- Synchronous System-to-System transaction: XML

Note: XML transactions are only available for MOM and iRegistration loans.

The Member registering a loan is required to enter the Org ID of the Investor, Servicer, and Subservicer if applicable. Once a loan is registered, the registering Member has seven (7) calendar days, including the registration date, to make any necessary changes to the information associated with the MIN. Thereafter, the MIN can only be updated by the current Servicer or Subservicer (unless there is a default by the Servicer or MERSCORP Holdings receives alternative instructions from the Investor). If a transfer of servicing occurs at any time within seven (7) calendar days of a MIN's registration date, the registering Member is thereafter unable to update the MIN. Once the registering Member is no longer able to update a MIN, any inquiry it performs on the MIN returns Non-Rightsholder information unless the Member is also a Primary Rightsholder on the MIN.

Other MERS® System Members with an interest in a loan can also be identified, including a Document Custodian and other Associated Members. Although not required, an *Interim Funder* can show its security interest in a loan on the MERS® System by instructing the registering Member to add its Org ID to the Interim Funder field.

Note: An Interim Funder can remove its security interest from the MERS® System once it no longer has an interest in the loan or is made whole. Option 2 Transfers of Beneficial Rights with interim funding interests will appear on a mismatch report, noting co-existing beneficial interests.



The system can also populate the **Agency ID** field at registration or when a transfer transaction is complete, if the Investor requires it, and the Agency ID is specified in the *Member's Profile*.

## Impact

The loan registration process affects the following Members:

**Primary Members:**

- Servicers
- Subservicers
- Originators
- Third-Party Originators
- Investors
- Custodians
- Interim Funders

**Associated Members:**

- Collateral Agent
- FHLB/FRB
- Government Housing Agencies
- Master Servicer
- Mortgage Insurers
- Trustee
- Warehouse/Gestation Lenders
- Alternate Custodian (up to 4 entries)
- Participation Investor (up to 4 entries)
- Other (up to 4 entries)
- Property Preservation Company (up to 4 entries)

Note: Government Housing Agencies, Mortgage Insurance Companies, Trustees, Warehouse/Gestation Lenders, etc. are known as **Associated Members** and may be named during registration processing.

## QA Plan Requirements - MOM Loan Registration

The QA standards, document requirements, and data validations under the MERS® System QA Plan for MOM loans are covered under the following sections:



- *MOM Security Instrument QA Standards*
- *MOM Security Instrument Document Requirements*
- *MOM Loan Data Validations for MERS® System*

As always, if a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede those of the MERS® System.

## MOM Security Instrument QA Standards

- Name Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee in accordance with Investor guidelines and include the SIS Phone Number (888-679-6377) in the "MERS as Mortgagee" language. Sample MOM language is included in *Sample Changes - Naming MERS as Mortgagee on a Security Instrument*.
- Place the Mortgage Identification Number (MIN) in a visible location on the first page of the Security Instrument (e.g., to the right of the form title, but not in the top or right margins), but not in any space reserved for the local recorder per jurisdictional requirements. In all cases, a local jurisdiction's recording requirements take precedence over the MERS® System requirements. For additional guidance, see *Document Requirements - MERS Loans*.
- Promptly send the executed Security Instrument for *Recordation* in accordance with state requirements and Investor guidelines. In accordance with the Rules, the Security Instrument must be sent for Recordation even if the jurisdiction does not require it.
- The Member that originates a *MOM* loan, or the Servicing Member at origination, must register the loan on the MERS® System no later than seven (7) calendar days after the *Note Date*, or *Funding Date* for refinance loans or loans in escrow states, even if the rights to the loan are immediately sold to a non-Member. The Originating Org ID must also be entered when registering the loan.
- Any Member that purchases an unregistered MOM loan must take the necessary steps to ensure that it is registered on the MERS® System immediately upon learning that it is not registered; the loan must be registered no later than seven (7) calendar days after the date upon which the buyer began servicing the loan on its System of Record.

Note: While this requirement provides a Member that purchases an unregistered MOM loan an opportunity to request that the seller register it on the MERS® System, the purchaser, as the current Servicer, remains responsible for complying with the MERS® System QA Standards. For details, refer to *MERS® System Quality Assurance*.

## MOM Security Instrument Document Requirements

- Approved MOM language used.
- Correct MIN placed in a visible location on the first page of the document.



- SIS Phone Number placed in the "Definitions" section of the document.

- Correct address for MERS placed in the "Definitions" section of the document.

- Executed Security Instrument promptly sent for Recordation in accordance with state and Investor guidelines.

For further details, see the appropriate sections under *Additional Document Requirements*.

If the loan is a co-op, these validations are performed on the UCC-1 instead of the Security Instrument.

## *MOM Loan Data Validations for MERS® System*

Note: The current *Servicing Member* is responsible for ensuring that all loan information is entered on the MERS® System.

- Enter all required loan information on the MERS® System at the time of Registration.

- MOM indicator is set to "MOM" in the MERS® System.

- Originating Org ID correctly reflects loan Originator.

- MOM loan is registered no later than seven (7) calendar days after the Note Date, or Funding Date for refinance loans or loans in escrow states.

- All loan information entered during registration satisfies the MERS® System *Data Integrity Requirements*.

# QA Plan Requirements - Non-MOM Loan Registration

The QA standards, document requirements, and data validations under the MERS® System QA Plan for Non-MOM loans are covered under the following sections:

- *Non-MOM QA Standards - Assignment to MERS*

- *Non-MOM Document Requirements - Assignment to MERS*

- *Non-MOM Data Validations for MERS® System*

As always, if a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede those of the MERS® System.

## *Non-MOM QA Standards - Assignment to MERS*

- Prepare the document naming Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee (i.e., the *Assignment to MERS*).

- Ensure that the MIN and SIS Phone Number are placed correctly on the Assignment to MERS, unless that placement does not comply with a local jurisdiction's recording



requirements. In all cases, the jurisdiction's requirements take precedence over the MERS® System requirements. For details, refer to Document Requirements - MERS Loans.

- Promptly send the executed Assignment to MERS for Recordation in accordance with state requirements and Investor guidelines. In accordance with the Rules, the Assignment to MERS must be sent for Recordation even if the jurisdiction does not require it.
- The Member servicing a loan at the time it is initially assigned to MERS must register it on the MERS® System as a Non-MOM no later than seven (7) calendar days after the Assignment Date. The Originating Org ID, if the Originator has an Org ID, or the Original Note Holder, if the Originator does not have an Org ID, must also be entered within 90 calendar days of the Registration Date.
- Any Member that purchases an unregistered Non-MOM must take the necessary steps to ensure that it is registered on the MERS® System immediately upon learning that it is not registered; the loan must be registered no later than 7 days after the date upon which the buyer began servicing the loan on its System of Record.

Note: While this requirement provides a Member that purchases an unregistered Non-MOM loan an opportunity to request that the seller register it on the MERS® System, the purchaser, as the current Servicer, remains responsible for complying with the MERS® System QA Standards. For details, refer to MERS® System Quality Assurance.

## Non-MOM Document Requirements - Assignment to MERS

- Approved MERS as Mortgagee language used.
- Correct MIN placed in a visible location on the first page of the document.
- SIS Phone Number placed correctly on the document.
- Correct address for MERS placed properly on the document.
- Executed Assignment to MERS promptly sent for Recordation in accordance with state and Investor guidelines.

For further details, see the appropriate sections under Additional Document Requirements.

If the loan is a co-op, these validations are performed on the UCC-3 instead of the Assignment to MERS.

## Non-MOM Data Validations for MERS® System

Note: The current Servicing Member is responsible for ensuring that all loan information is entered on the MERS® System.



- Enter all required loan information on the MERS® System during Registration with the exception of Originating Organization; enter the Originating Organization within 90 calendar days of the Assignment Date:
  - Originating Org ID if originated by a MERS® System Member
  - Original Note Holder if originated by a non-Member
- MOM indicator is set to "Non-MOM" in the MERS® System.
- All loan information is entered during registration satisfies the MERS® System *Data Integrity Requirements*.
- Non-MOM loan is registered no later than seven (7) calendar days after the Assignment Date.

# Procedure: Initial Registration

1. Close the loan using a Security Instrument that names MERS as Original *Mortgagee* and send it for *Recordation*. Or, close the loan on a standard Security Instrument, prepare and execute an Assignment to MERS, and send both for Recordation.
2. Enter the MIN on the MERS® System. The MERS® System validates the MIN.
3. Enter the loan information:
   - Lien type – 1st or Subordinate Lien (which accommodates all liens subsequent to the first)
   - Note Date
   - Note Amount
   - Funding Date (date interest starts to accrue, if different from Note Date)
   - *Owner Occupied* Flag
   - FHA/VA Case Number or MI Certificate Number
   - MOM indicator:
     - Defaults to MOM – MERS is the original Mortgagee on the Security Instrument
     - Set to Non-MOM only if the loan was originated on a standard Security Instrument and assigned to MERS
     - For loans neither originated with MERS as Mortgagee nor assigned to MERS, see the *iRegistration* chapter
   - Pre-Closing Indicator:
     - Defaults to No
     - For loans that have not yet closed, see the *Pre-Closing Registration* chapter.



- Originating Org ID (required for MOM loans, and for Non-MOM if Originator is a MERS® System Member)
- Original Note Holder (required if Originator is not a MERS® System Member)
- Servicer
- Subservicer
- Investor (use 1000002 if Investor is not a MERS® System Member)
- Document Custodian
- Interim Funder (only if a MERS® System Member)
- Associated Member(s)

4. Enter borrower information, for all borrowers, as it appears on your *System of Record*:
   - Borrower Name:
     - Corporate Name
       (Business, Trust, or other non-individual)
       **OR**
     - First Name
     - Middle Name or initial
     - Last Name
     - Name Suffix

   Note: One *Primary Borrower* and up to three *Co-Borrowers* may be entered on the Registration page. Use the Borrower Details option on the MIN Information menu in MERS® OnLine to add additional Co-Borrowers once a loan is registered, or use the MIN Information Update batch transaction (Trans Code 103).

   - Social Security number (required for Primary Borrower) or Tax ID (required for corporate borrower). Must be a valid Social Security number except as follows:
     - **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:** Used for a foreign national with no SSN or Tax ID.
     - **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:** A temporary placeholder used while a Member is performing an investigation as part of the Borrower Disputes process or when a borrower contacts a Member directly to initiate the dispute.
     - **No other placeholder values are permitted for SSN or Tax ID.**
5. Enter property information exactly as it appears on your System of Record:
   - Street number (For properties without street numbers, as in Rural Route addresses, the property street number is not required).
   - Street name
   - Street designator (e.g. ST, BLVD, etc.)
   - Street direction (e.g. N, S, SE, etc.)



- Unit number
- City
- State
- ZIP code and extension
- County/Place

Note: Use of the 5-digit County code or the 7-digit Place code is recommended. If the county or place name is used, use the full name (e.g., Dallas County vs. Dallas city).

6. Enter the following miscellaneous information, if applicable:
   - Investor loan number, if required by the Investor
   - Agency ID, if required by the Investor
   - Investor pool number for agency Investors
   - Securitization Trust name for private pools
7. Enter the following Modification Agreement information (required for construction-to-permanent and some *CEMA* loans):
   - Modification Agreement Note Date
   - Modification Agreement Note Amount
8. Submit the transaction.
9. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post Registration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Procedure: Post-Closing Registration

If a loan is registered as a Pre-Closing on the MERS® System, you can register it as an active MOM or Non-MOM loan once it closes. To register it as an active iRegistration loan, see *Post-Closing iRegistration*.

Note: If the Pre-Closing was performed via batch or XML and contains more than four borrowers, only the first four will remain if you register the MOM or Non-MOM loan in MERS® OnLine.

1. Enter the MIN on the MERS® System as a Registration
2. MERS® OnLine validates the MIN, and displays the Registration page populated with the information from the Pre-Closing registration.
3. Check all loan information and update as needed. Be sure to update the Pre-Closing indicator to No, and enter a Note Date if one was not entered for the Pre-Closing.



4. Submit the transaction.
5. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post Registration Events* for details on the actions that occur after a loan is registered on the MERS® System.

## Procedure: Re-registration after Reversal

If a loan is in registration reversal status on the MERS® System, you can correct the information for that loan and re-register it.

1. Enter the MIN on the MERS® System as a Registration
2. MERS® OnLine validates the MIN, and displays a summary of the loan information, along with the Re-Registration menu.
3. Enter the appropriate *Owner Occupied* value.
4. Check all loan information and update as needed, using the options available on the Re-Registration menu.
5. Select Re-Register from the Re-Registration Loan page.
6. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post Registration Events* for details on the actions that occur after a loan is registered on the MERS® System.

## Procedure: Re-registration after Deactivation

If a loan has been deactivated on the MERS® System for any reason other than **Foreclosure Complete** or **Paid in Full**, that loan can be re-registered using the existing MIN if it is later assigned to MERS. For loans assigned to the Member rather than to MERS, *see* *iRegistration after Deactivation*.

Note: If a loan that was originally recorded with MERS as Mortgagee is assigned back to MERS, it is no longer considered a MOM loan and must be re-registered as a Non-MOM.

1. Prepare and execute an *Assignment to MERS* and send it for *Recordation*. Include the existing MIN, and SIS Phone Number, on the assignment.
2. Enter the MIN on the MERS® System as a Registration.
3. The MERS® System validates the MIN and displays the loan information.
4. For MOM Indicator, select Non-MOM (if loan is not assigned to MERS, see *iRegistration after Deactivation*).
5. Enter the new Servicer Org ID.



6.  Enter the appropriate *Owner Occupied* value.

7.  Check the remaining loan information to ensure it is correct.

8.  Submit the transaction.

9.  The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

10. Enter any assumptions that occurred between the loan being deactivated and re-registered. For details, refer to *Assumption of Mortgage*.

Refer to *Post Registration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Post Registration Events

After the initial MERS Loan registration, the following events occur:

- If the MIN matches the MIN of an *eNote* registered on the MERS® eRegistry, and the loan information entered on the MERS® System does not match the loan information on the MERS® eRegistry, a *Mismatched MIN/eNote Record (EJ) Report* will be generated for each rights holder.

- The appropriate registration transaction appears on the MIN-level *Milestones*. For a *Post-Closing* registration, the Registration Date in MIN Information reflects the most recent registration.

- The *Registration Verification (RF)* or *Seasoned Registration Verification (RA) Report* is generated for each primary rights holder on the loan (e.g., Investor, Servicer, Interim Funder, Custodian) and the registering Member.

- For Associated Members on the loan, the *MIN Milestones (VA) Report* is generated.

- As the registering Member, you are charged the appropriate registration fee. The fee appears on your next monthly invoice from MERSCORP Holdings.

- As the registering Member, you can correct any errors in the MIN information during the seven (7) calendar days after registration (including the registration date) or until a transfer of servicing occurs during this seven day window. Thereafter, only the current Servicer or Subservicer can update the information.

- If you have not entered an originating organization, or have Originating Org ID Exception (1011001) in the Originating Org ID field as a placeholder, 60 calendar days after registration, the loan will appear on the *MINs Without Originating Organization (QE) Report* if the Note Date is after March 31, 2012.



# Reports

The following reports are generated during the Loan Registration and *Seasoned Loan Registration* process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Registration Verification (RF)*

- *Registration Rejects/Warnings (RG)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien- Daily (RH)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien- Monthly (RI)*

- *Mismatched MIN/eNote Record (EJ)*

- *Seasoned Registration Verification (RA)*

- *Seasoned Registration Rejects/Warnings (RB)*

- *MIN Milestone Report for Associated Members (VA)*

- *MINs Without Originating Organization (QE)*



# iRegistration

## Overview

An iRegistration is a loan you register on the MERS® System for which MERS is not the Mortgagee.

By tracking iRegistration loans on the MERS® System, all Members benefit from the increased capability of the MERS® System to:

- Verify borrower and property information during the loan origination process
- Leverage information about the property offered as security for a loan during the pre-funding and post-funding phases of the loan origination process
- Track vacant properties to provide Property Preservation contact information to code enforcement officials

You can register an iRegistration loan for:

- A loan you have just closed
- A seasoned loan you have purchased
- A loan for which the prior registration was reversed
- A loan that was deactivated for reason of **Transfer to non-MERS Status** and then purchased by a MERS® System Member but not assigned to MERS
- A loan that was assigned from MERS to a non-MERS Member
- A loan previously registered as a Pre-Closing that has closed
  (for loans that have not yet closed, see *Pre-Closing*)
- A Real Estate Owned (REO) property that was not previously registered on the MERS® System

As the registering Member, you are required at registration to enter the Org ID of the Investor, Servicer, and Subservicer if applicable. Once you register a loan, you have seven (7) calendar days, including the registration date, to make any necessary changes to the information associated with the MIN. Thereafter, the MIN can only be updated by the current Servicer or Subservicer (unless there is a default by the Servicer or MERSCORP Holdings receives alternative instructions from the Investor). If a transfer of servicing occurs at any time within seven (7) calendar days of a MIN's registration date, the registering Member is thereafter unable to update the MIN. Once the registering Member is no longer able to update a MIN, any inquiry it performs on the MIN will return Non-Rightsholder information unless the Member is also a Primary Rightsholder on the MIN.

You can identify other MERS® System Members with an interest in a loan, including a Document Custodian and other Associated Members. Although not required, an Interim



Funder can show its security interest in a loan on the MERS® System by instructing the registering Member to add its Org ID to the Interim Funder field.

The system can also populate the **Agency ID** field at registration or when a transfer transaction is complete, if the Investor requires it, and the Agency ID is specified in the *Member's Profile*.

Members are not required to report foreclosure activity for iRegistration loans on the MERS® System.

The primary *Deactivation* transactions for iRegistration loans are:

- **Transfer to non-MERS Status:** May be used to deactivate an iRegistration (*Flow Loan Registration* or *Seasoned Loan Registration*) that will no longer be tracked on the MERS® System. If an iRegistration was initially registered as a Flow Loan Registration, the **Transfer to non-MERS Status** transaction must be used to deactivate the loan.
- **Registration Reversal:** May be used to deactivate an iRegistration that will no longer be tracked on the MERS® System if the loan was initially registered as a Seasoned Loan Registration. Note that the **Transfer to non-MERS Status** transaction may also be used to deactivate these loans.
- **Paid in Full:** Used when the Servicer accepts payoff funds and/or records a Lien Release.
- **Foreclosure Complete:** Used when a Member opts to track iRegistration foreclosure activity on the MERS® System. Members are not required to report foreclosure activity for iRegistration loans on the MERS® System (see *iRegistration Loans* for foreclosure processing options). If a Member opts to **not** track iRegistration foreclosure activity, when the foreclosure process is complete, deactivate the MIN using the **Transfer to Non-MERS Status** or **Registration Reversal** transaction as described above.

There are three methods of submitting an iRegistration transaction to the MERS® System:

- Using our browser-based application, MERS® OnLine
- Asynchronous System-to-System transaction: Flat File or EDI X12
- Synchronous System-to-System transaction: XML

# Impact

The iRegistration process affects the following Members:

**Primary Members:**

- Servicers
- Subservicers



- Originators
- Third-Party Originators
- Investors
- Custodians
- Interim Funders

**Associated Members:**

- Collateral Agent
- FHLB/FRB
- Government Housing Agencies
- Master Servicer
- Mortgage Insurers
- Trustee
- Warehouse/Gestation Lenders
- Alternate Custodian (up to 4 entries)
- Participation Investor (up to 4 entries)
- Other (up to 4 entries)
- Property Preservation Company (up to 4 entries)

Note: Government Housing Agencies, Mortgage Insurance Companies, Trustees, Warehouse/Gestation Lenders, etc. are known as **Associated Members** and may be named during registration processing.

# QA Plan Requirements - iRegistration Loan Registration

The QA standards, document requirements, and data validations under the MERS® System QA Plan for iRegistration loans are covered under the following sections:

- *iRegistration QA Standards*
- *iRegistration Document Requirements*
- *iRegistration Data Validations for MERS® System*

## *iRegistration QA Standards*

- Ensure MERS is not the current Mortgagee or assignee.



- If MERS is the original Mortgagee on the Security Instrument, ensure that an Assignment from MERS is prepared, executed, and then promptly sent (in recordable form) for *Recordation*.
- Ensure no MIN, SIS Phone Number, MERS address, or other reference to MERS is included on Security Instrument or assignments, unless MERS was once the Mortgagee.

## *iRegistration Document Requirements*

Although MERSCORP Holdings no longer performs Document Reviews on iRegistration loans, Members are still required to self-audit their performance on these loans.

- No MERS-related language used, or an Assignment from MERS was prepared, executed, and then promptly sent, in recordable form, for Recordation before registration as an iRegistration.
- No MIN, SIS Phone Number, or other reference to MERS on Security Instrument or assignments.

## *iRegistration Data Validations for MERS® System*

Note: The current *Servicing Member* is responsible for ensuring that all loan information is entered on the MERS® System.

- Provide all system-required fields at the time of registration. Originating Organization is optional for iRegistration loans. For details on the required iRegistration fields, see *Procedure: iRegistration*.
- MOM indicator is set to "iRegistration" in the MERS® System.
- All loan information entered during registration satisfies the MERS® System *Data Integrity Requirements*.

# Procedure: iRegistration

1. Close the loan on a standard Security Instrument.
   Do not include the MIN, SIS Phone Number, MERS address, or any other reference to MERS on the Security Instrument or any subsequent documents for this loan.
2. Enter the MIN on the MERS® System using a Registration transaction. The MERS® System validates the MIN.
3. Enter the loan information:
   - Lien type – 1st or Subordinate Lien (which accommodates all liens subsequent to the first)



- Note Date
- Note Amount
- *Owner Occupied* flag
- MOM indicator: Select "iRegistration"
- Pre-Closing Indicator: Select "No"
- Servicer
- Investor (use Org ID **1000002** for non-Member Investor)

4. Enter information for the Primary Borrower as it appears on your *System of Record*:
   - Borrower Name:
     - Corporate Name
       (Business, Trust, or other non-individual)
       **OR**
     - First Name
     - Middle Name or initial
     - Last Name
     - Name Suffix
     - Social Security number (required for Primary Borrower) or Tax ID (required for corporate borrower). Must be a valid Social Security number except as follows:
       - ✓ **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:** Used for a foreign national with no SSN or Tax ID.
       - ✓ **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:** A temporary placeholder used while a Member is performing an investigation as part of the Borrower Disputes process or when a borrower contacts the Member directly to initiate the dispute.
       - ✓ **No other placeholder values are permitted for SSN or Tax ID.**

   Co-Borrower information is not required for an iRegistration.

   ---

   Note: One Primary Borrower and up to three Co-Borrowers may be entered on the Registration page. Use the Borrower Details option on the MIN Information menu to add additional Co-Borrowers in MERS® OnLine, or the MIN Information Update batch transaction (Trans Code 103).

   ---

5. Enter property information as it appears on your System of Record:
   - Street number (For properties without street numbers, as in Rural Route addresses, the property street number is not required).
   - Street name
   - Street designator (e.g. ST, BLVD, etc.)
   - Street direction (e.g. N, S, SE, etc.)



- Unit number
- City
- State
- ZIP code
- County/Place

Note: Use of the 5-digit FIPS code or 7-digit ANSI Place code is recommended. If the county or place name is used, use the full name (e.g., Dallas County vs. Dallas city).

6. None of the fields in the *Miscellaneous* section are required for an iRegistration. When the system prompts you to complete any of the following fields, enter a value of **1111** to complete the transaction:
   - **Investor Loan Number** for Fannie Mae and Freddie Mac
   - **Pool Number** and **Agency ID** for Ginnie Mae
7. Submit the transaction.
8. The MERS® System validates the registration, and loan status reflects an **Active (Registered)** status.

Refer to *Post iRegistration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Procedure: Post-Closing iRegistration

If a loan is registered as a Pre-Closing on the MERS® System, you can register it as an active iRegistration once it closes. To register it as an active MOM or Non-MOM loan, see *Post-Closing Registration*.

Note: If the Pre-Closing was performed via batch or XML and contains more than four borrowers, only the first four will remain if you register the iRegistration in MERS® OnLine.

1. Close the loan on a standard Security Instrument.
   Do not include the MIN, SIS Phone Number, MERS address, or any other reference to MERS on the Security Instrument.
2. Enter the MIN on the MERS® System using a Registration transaction.
3. MERS® OnLine validates the MIN, and displays the Registration page populated with the information from the Pre-Closing registration.
4. Check all loan information and update as needed. Be sure to update the Pre-Closing indicator to No, and enter a Note Date if one was not entered for the Pre-Closing.
5. Submit the transaction.



6. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post iRegistration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Procedure: iRegistration after Reversal

If a loan is in registration reversal status on the MERS® System, you can correct the information for that loan and re-register it as an iRegistration.

1. Close the loan on a standard Security Instrument.
   Do not include the MIN, SIS Phone Number, MERS address, or any other reference to MERS on the Security Instrument.

2. Enter the MIN on the MERS® System using a Registration transaction.

3. MERS® OnLine validates the MIN, and displays a summary of the loan information, along with the Re-Registration menu.

4. Enter the appropriate *Owner Occupied* value.

5. Check all loan information and update as needed, using the options available on the Re-Registration menu. Be sure the Pre-Closing indicator is set to No, and the MOM indicator is set to iRegistration.

6. Select Re-Register from the Re-Registration Loan page.

7. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post iRegistration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Procedure: iRegistration after Deactivation

If a loan has been deactivated on the MERS® System for any reason other than **Foreclosure Complete** or **Paid in Full**, that loan can be re-registered using the existing MIN if it is later assigned to a MERS® System Member. For loans assigned to MERS rather than to the Member, see *Re-Registration after Deactivation*.

1. Do not include the MIN, SIS Phone Number, MERS address, or any other reference to MERS on the assignment

2. Enter the MIN on the MERS® System using a Registration transaction

3. The MERS® System validates the MIN and displays the loan information

4. Enter the new Servicer Org ID

5. Enter the appropriate *Owner Occupied* value.



6. Check the remaining loan information to ensure it is correct. If the loan was assigned to MERS, see *Re-Registration after Deactivation*. If the loan was assigned directly to the Member, the MOM indicator should be iRegistration.
7. Submit the transaction.
8. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

Refer to *Post iRegistration Events* for details on the actions that occur after a loan is registered on the MERS® System.

# Procedure: iRegistration for REO Property

Real Estate Owned (REO) properties can be registered on the MERS® System as an iRegistration to track Property Preservation contact information, however, the standard process must be modified due to the unique circumstances of this scenario (no *Note* or borrower is currently associated with the property).

Perform the following steps to register an REO property on the MERS® System as an iRegistration:

1. Submit a unique MIN for the property on the *Register a MIN* page, and complete the following fields on the *Registration Details* page:
    - Loan Information:
        - Lien type **-** select '**1st Lien'**
        - Note Date **-** enter the current date
        - Note Amount **-** enter a value of '**1.00'**
        - Owner Occupied **-** select '**No'**
        - MOM - select 'iRegistration'
        - Pre-Closing **-** select **'No'**
        - Servicer **-** enter the Org ID of the Servicer
        - Investor **-** enter the Org ID of the Servicer
        - Property Preservation Company **-** enter the Org ID of the company managing the property
    - Borrower Information:

      Corporate Name **-** enter **Real Estate Owned**
    - Property Information:

      Enter the property information exactly as it appears on your *System of Record*:
        - Street number (For properties without street numbers, as in Rural Route addresses, the property street number is not required).



- Street name
- Street designator (e.g. ST, BLVD, etc.)
- Street direction (e.g. N, S, SE, etc.)
- Unit number
- City
- State
- ZIP code
- County/Place

Note: Use of the 5-digit FIPS code or 7-digit ANSI Place code is recommended. If the county or place name is used, use the full name (e.g., Dallas County vs. Dallas city).

2. Click **Submit** to register the REO property.

   The Property Preservation Company can be updated as needed.

3. When the property is no longer REO, deactivate the MIN using the *Transfer to Non-MERS Status* or *Registration Reversal* transaction. See the iRegistration *Overview* for guidance on using each transaction.

# Post iRegistration Events

After the initial registration of an iRegistration, the following events occur:

- If the MIN matches the MIN of an eNote registered on the MERS® eRegistry, and the loan information entered on the MERS® System does not match the loan information on the MERS® eRegistry, a *Mismatched MIN/eNote Record (EJ) Report* will be generated for each rights holder.

- The appropriate registration transaction appears on the MIN-level *Milestones*. For a *Post-Closing* registration, the Registration Date in MIN Information reflects the most recent registration.

- The *Registration Verification (RF)* or *Seasoned Registration Verification (RA) Report* is generated for each primary rights holder on the loan (e.g., Investor, Servicer, Interim Funder, Custodian) and the registering Member.

- For Associated Members on the loan, the *MIN Milestones (VA) Report* is generated.

- As the registering Member, you are charged the appropriate registration fee. The fee appears on your next monthly invoice from MERSCORP Holdings. There is no registration fee for a Pre-Closing iRegistration.

- As the registering Member, you can correct any errors in the MIN information during the seven (7) calendar days after registration (including the registration date) or until a transfer of servicing occurs during this seven day window. Thereafter, only the current Servicer or Subservicer can update the information.



# Reports

The following reports are generated during the iRegistration process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Registration Verification (RF)*

- *Registration Rejects/Warnings (RG)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien- Daily (RH)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien- Monthly (RI)*

- *Mismatched MIN/eNote Record (EJ)*

- *Seasoned Registration Verification (RA)*

- *Seasoned Registration Rejects/Warnings (RB)*

- *MIN Milestone Report for Associated Members  (VA)*



# Conversion from iRegistration to Non-MOM

## Overview

If an active iRegistration is assigned to MERS, the *Servicing Member* must convert the loan from an iRegistration to a Non-MOM using the *Conversion* transaction. The Conversion transaction may only be performed on an iRegistration and may be submitted to the MERS® System using either a batch or online Registration transaction.

The named Servicer and Investor cannot be changed in a Conversion transaction. An Interim Funder can be added, but not changed or deleted. Other data on the record may be updated, and system edits follow registration rules.

## Impact

The conversion process potentially impacts the following Members:

- Servicers
- Subservicers
- Investors
- Document Custodians
- Associated Members

## QA Plan Requirements - iRegistration to Non-MOM Conversion

Under the MERS® System QA Plan, loans converted from iRegistration to Non-MOM are subject to the *QA Plan Requirements for Non-MOM loans*.

You must also convert the iRegistration loan to a Non-MOM loan on the MERS® System no later than seven (7) calendar days after the Assignment Date.

## Procedure: iRegistration to Non-MOM Conversion

1. Prepare and execute an *Assignment to MERS*, including the MIN, SIS Phone Number, and the address for MERS, and send the executed assignment for *Recordation*.
2. The Servicing Member submits the MIN to the MERS® System in a Registration transaction.



3. The MERS® System validates the MIN. If it is an active iRegistration that is not in a foreclosure status, and the submitting Member is its Servicing Member, it is eligible for conversion.

4. If performed in MERS® OnLine, the existing loan data is displayed on the Registration page, with the MOM indicator set to "Non-MOM" and the Investor and Servicer fields grayed out.

5. In batch, all registration data must be submitted. Investor and Servicer must match those already on the MIN, and a MOM Indicator of N must be submitted.

6. Interim Funder may be added if one exists, but not removed or changed.

7. Submit the transaction.

8. The MERS® System validates the registration and loan status reflects an **Active (Registered)** status.

9. If the MIN matches the MIN of an eNote record registered on the MERS® eRegistry, a *Mismatched MIN/eNote Record (EJ) Report* will be generated for each rights holder.

10. The conversion appears on the MIN-level milestones.

11. For primary rights holders on the loan (for example, Investor, Servicer, Interim Funder and Custodian), the *Conversion Verification (CF) Report* is generated.

12. For Associated Members on the loan, the *MIN Milestones (VA) Report* is generated.

13. The conversion fee is charged to the Servicer and appears on the next monthly invoice from MERSCORP Holdings.

# Reports

The following reports are generated during the Conversion process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Conversion Verification (CF)*

- *Conversion Rejects/Warnings (CG)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien (RH, RI)*

- *Mismatched MIN/eNote Record (EJ)*

- *MIN Milestone Report for Associated Members (VA)*



# Pre-Closing Registration

## Overview

A Pre-Closing is a loan registered on the MERS® System before it has closed. It is not active, so cannot be updated, transferred, or deactivated. A Pre-Closing may be registered as a MOM, Non-MOM or iRegistration. The Pre-Closing transaction is generally used to register a MIN during the application phase of a potential mortgage loan.

When registering a Pre-Closing, you are required to enter the Investor and Servicer Org IDs. Note Date is optional, but if entered, the Note Date may not be in the past; it may be the current date or up to a year in the future.

Once the Pre-Closing is registered, it cannot be updated, but the Pre-Closing registration can be reversed if it was done in error.

A Pre-Closing can be registered as an active iRegistration, MOM or Non-MOM loan once the loan closes in a transaction known as post-closing registration, and loan information may be updated at post-closing.

**The organization registering the Pre-Closing loan receives the** *Registration Verification* (*PF) Report* if the same MIN is later registered as an active loan by another Member.

There are three methods of submitting Pre-Closing transactions to the MERS® System:

- Using our browser-based application, MERS® OnLine
- Asynchronous System-to-System transaction: Flat File or EDI X12
- Synchronous System-to-System transaction: XML

Note: XML transactions are only available for MOM and iRegistration loans.

## Impact

The Pre-Closing process affects the following Members:

**Primary Members:**

- Servicers
- Subservicers
- Originators
- Third-Party Originators
- Investors
- Custodians



- Interim Funders

**Associated Members:**

- Collateral Agent
- FHLB/FRB
- Government Housing Agencies
- Master Servicer
- Mortgage Insurers
- Trustee
- Warehouse/Gestation Lenders
- Alternate Custodian (up to 4 entries)
- Participation Investor (up to 4 entries)
- Other (up to 4 entries)
- Property Preservation Company (up to 4 entries)

Note: Government Housing Agencies, Mortgage Insurance Companies, Trustees, Warehouse/Gestation Lenders, etc. are known as **Associated Members** and may be named during registration processing.

# QA Plan Requirements - Pre-Closing Registration

Under the MERS® System QA Plan, Pre-Closing registrations are subject to the standards, requirements, and validations of the corresponding loan type (i.e., *MOM*, *Non-MOM*, or *iRegistration*).

# Procedure: Pre-Closing Registration

1. Submit the MIN to the MERS® System in a Registration transaction. The MERS® System validates the MIN.
2. Enter the loan information:
   - Lien type – 1st or Subordinate Lien (which accommodates all liens subsequent to the first)
   - Expected Note Date (optional, up to 365 days in future)
   - Note Amount
   - *Owner Occupied* Flag
   - FHA/VA Case Number or MI Certificate Number
   - MOM indicator: Choose MOM, Non-MOM or iRegistration



- Pre-Closing indicator: Choose "Yes"
- Originating Org ID (if Originator is a MERS® System Member)
- Original note holder name (if Originator is not a MERS® System Member)
- Servicer
- Subservicer
- Investor
- Interim Funder (only if a MERS® System Member)
- Document Custodian
- Associated Member(s)

3. Enter borrower information, for all borrowers, as it appears on the origination system:
   - Borrower Name:
     - Corporate Name (Business, Trust, or other non-individual)

     OR

     - First name
     - Middle name
     - Last name
     - Name Suffix

   Note: One Primary Borrower and up to three Co-Borrowers may be entered on the Registration page.

   - Social Security number (required for Primary Borrower) or Tax ID (required for corporate borrower). Must be a valid Social Security number except as follows:
     - **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:** Used for a foreign national with no SSN or Tax ID.
     - **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:** A temporary placeholder used while a Member is performing an investigation as part of the Borrower Disputes process or when a borrower contacts the Member directly to initiate the dispute.
     - **No other placeholder values are permitted for SSN or Tax ID.**
4. Enter property information as it appears on the origination system:
   - Street number (For properties without street numbers, as in Rural Route addresses, the property street number is not required).
   - Street name
   - Street designator (e.g. ST, BLVD, etc.)
   - Street direction (e.g. N, S, SE, etc.)
   - Unit number



- City
- State
- ZIP code and extension
- County/Place

Note: Use of the 5-digit FIPS code or 7-digit ANSI Place code is recommended. If the county or place name is used, use the full name (e.g., Dallas County vs. Dallas city).

5. Enter the following miscellaneous information, if applicable:
   - Investor loan number, if required by the Investor
   - Agency ID, if required by the Investor
6. Submit the transaction.
7. The MERS® System validates the registration and loan status reflects a "Pre-Closing" status.
8. The Pre-Closing registration appears on the MIN-level milestones.
9. For primary rights holders on the loan (for example, Investor, Servicer, Interim Funder and Custodian), the *Pre-Closing Registration Verification (PF) Report* is generated.
10. For Associated Members on the loan, the MIN Milestones *(VA) Report* is generated.
11. As the registering Member, you are charged the Pre-Closing registration fee. The fee appears on your next monthly invoice from MERSCORP Holdings.
12. You cannot update any information on a loan in Pre-Closing status. To correct an error, you must reverse the registration of the MIN and then re-register it with the correct information.
13. Once the loan closes, you can register it as an iRegistration without paying an additional fee, or as a MOM or Non-MOM for an additional fee, and loan information may be updated as part of this post-closing registration transaction.

# Procedure: Pre-Closing Registration after Reversal

If a loan is in registration reversal status on the MERS® System, you can correct the information for that loan and re-register it as a Pre-Closing.

1. Enter the MIN on the MERS® System as a Registration.
2. In batch, enter all registration information as you would for a Pre-Closing that has never been registered.
3. In MERS® OnLine:
   - A summary of the loan information from the previous registration is displayed along with the Re-Registration menu.



- o  Check all loan information and update as needed, using the options available on the Re-Registration menu.

- o  Be sure the Pre-Closing indicator is set to Yes.

- o  Select Re-Register from the Re-Registration Loan page.

4. The MERS® System validates the registration and loan status reflects a "Pre-Closing" status.

5. The Pre-Closing registration appears on the MIN-level milestones.

6. For primary rights holders on the loan (for example, Investor, Servicer, Interim Funder and Custodian), the *Pre-Closing Registration Verification (PF) Report* is generated.

7. For Associated Members on the loan, the *MIN Milestones (VA) Report* is generated.

8. As the registering Member, you are charged the Pre-Closing registration fee. The fee appears on your next monthly invoice from MERSCORP Holdings.

9. You cannot update any information once the registration transaction is complete. To correct an error, you must reverse the registration of the MIN and then re-register it with the correct information.

10. Once the loan closes, you can register it as an iRegistration without paying an additional fee or as a MOM or Non-MOM for an additional fee.

# Reports

The following reports are generated during the Pre-Closing Registration process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Pre-Closing Registration Verification (PF)*

- *Pre-Closing Registration Rejects/Warnings (PG)*

- *MIN Milestone Report for Associated Members (VA)*



# Registration Reversal

## Overview

Use the **Registration Reversal** transaction when:

- A MIN is registered in error, and no document naming MERS as Mortgagee was ever sent for Recordation.

- A borrower cancels or rescinds a loan during the rescission period.

- A loan is registered with the incorrect Servicer or Investor; the loan would then be re-registered immediately using the correct Servicer or Investor.

- Optionally, to deactivate an iRegistration that you will no longer track on the MERS® System if the loan was initially registered as a *Seasoned Loan Registration*.

  Note: The **Transfer to Non-MERS Status** transaction remains an appropriate Deactivation transaction for seasoned iRegistration loans.

A Registration Reversal may be processed through MERS® OnLine, X12 or flat file transactions.

The registering Member may reverse a registration for seven (7) calendar days starting on the Registration Date or until a transfer of servicing occurs during this seven day window. Thereafter only the Servicing Member can reverse the registration.

If a loan is registered as an iRegistration and MERS becomes the Mortgagee through an assignment, you can use the *Conversion* transaction to convert the iRegistration to a Non-MOM. If a loan is registered as an iRegistration and recorded in the land records as a MOM, the iRegistration registration will need to be reversed in order to register the loan as a MOM. Similarly, if a loan is registered as a MOM or Non-MOM but MERS is never the Mortgagee, the registration will need to be reversed in order to register the loan as an iRegistration.

## Impact

The loan registration reversal process affects the following Members:

- Servicers
- Subservicers
- Originators
- Third-Party Originators
- Investors
- Custodians
- Interim Funders
- Associated Members



## QA Plan Requirements - Registration Reversal

- If a MOM loan was registered on the MERS® System but did not close, and the Security Instrument was never sent for Recordation, reverse the registration no later than seven (7) calendar days after learning that the loan never closed.
- If a Non-MOM loan was registered on the MERS® System but the Assignment to MERS was never sent for Recordation, reverse the registration no later than seven (7) calendar days after learning that the loan was never assigned to MERS.

## Procedure: Registration Reversal

Only the Servicer, Subservicer or Member that originally registered the MIN can perform this process. Also, if the beneficial rights for a MIN have been transferred, the registration can only be reversed if the current Investor transfers the MIN back to the registering Member.

1. Select Registration from the Reversals menu.
2. Enter the MIN.
3. The MERS® System validates the MIN.
4. The MERS® System validates the registration reversal and changes the loan status to "Registration Reversal".
5. The registration reversal appears on the MIN-level milestones.
6. For Members with an interest in the loan (for example, Investor, Servicer, Interim Funder and Custodian), the *Registration Reversal Verification (RK) Report*, and/or the *Registration Reversal Rejects/Warnings (RL) Report*, is generated.

   Note: No fee is assessed to the Member performing the registration reversal, but the applicable registration fee will still be assessed for the initial registration.

7. For Associated Members on the loan, the *MIN Milestones (VA) Report* is generated.
8. All registration information is retained for use if the MIN is re-registered.
9. If the MIN is re-registered, the normal registration fee will apply.

## Reports

The following reports are generated as a result of the Registration Reversal process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Registration Reversal Verification (RK)*
- *Registration Reversal Rejects/Warnings (RL)*
- *MIN Milestone Report for Associated Members (VA)*



# Reverse Mortgage Processing

## Overview

No separate functionality is required for reverse mortgage processing. Registrations and other transactions for reverse mortgages are performed as for other loans.

## Impact

Reverse mortgage processing affects any organization that registers, maintains, or deactivates reverse mortgages.

## QA Plan Requirements - Reverse Mortgages

Under the MERS® System QA Plan, Reverse Mortgages are subject to the standards, requirements, and validations of the corresponding loan type (i.e., *MOM*, *Non-MOM*, or *iRegistration*).

## Procedure: Reverse Mortgage Processing

1.  Register the MIN associated with the reverse mortgage in the same method as any registration, which can be accomplished through batch processing or through MERS® OnLine. See *Procedure: Initial Registration* for details.

2.  When identifying the Note Amount, use the Maximum Principal Amount from the Note. This field may also be mapped through batch file processing.

3.  Track life of loan events as for other mortgage loans.



# Construction Loan Processing

## Overview

Construction loans may be modified to become permanent loans once construction is complete, or they may be paid off by a permanent loan. In the first case, both the construction and permanent loans are registered on the MERS® System as one loan. In the second case, each loan is processed separately on the MERS® System.

## Impact

Construction loan processing affects any organization that registers, maintains, or deactivates construction loans.

## QA Plan Requirements - Construction Loans

Under the MERS® System QA Plan, Construction loans are subject to the standards, requirements, and validations of the corresponding loan type (i.e., *MOM*, *Non-MOM*, or *iRegistration*).

You must also enter any Modification Agreement information relating to the construction loan on the MERS® System no later than seven (7) calendar days after its effective date, or the Registration Date if later.

## Procedure: One-Step Closing

In the first of two scenarios, a construction loan is modified to become the permanent loan. You can close the construction loan as a MOM loan and record the modification with MERS as Mortgagee, saving the cost and effort of recording an assignment, or you can close the construction loan on a standard document and assign it to MERS after it is modified to become permanent. In either case, selling the servicing more than 270 days after the original Note Date incurs the appropriate transfer fee (*Seasoned Servicing Transfer Fee* or *Intracompany Transfer Fee*).

### *Closed on a MOM Security Instrument*

1. The MOM Security Instrument must be:
   - Given a valid MIN.
   - Executed and promptly sent for *Recordation* in accordance with state or Investor guidelines.



- Registered on the MERS® System no later than seven (7) calendar days after the Note Date, or Funding Date for escrow states.

2. When construction is completed, a Modification Agreement must be prepared, which includes the correct placement of the existing MIN and SIS Phone Number on the modification. The Modification Agreement must reflect MERS as the Mortgagee, and must be signed by an authorized Signing Officer. Once the modification is executed, it must be promptly sent for Recordation.
3. Update the MERS® System to reflect the modification.
4. If the permanent loan is sold to another MERS® System Member, transfer the rights in the same manner as other MERS® System loans.
5. If the loan is sold to a non-Member:
   - Deactivate the MIN in the MERS® System in accordance with the MERS® System requirements.
   - Prepare and send for Recordation an *Assignment from MERS* that has been executed by an authorized Signing Officer.

## *Closed on a Standard Security Instrument and Assigned to MERS*

1. Close the loan using the standard construction loan Security Instrument. There is no MIN and no registration on the MERS® System. MERS is not the Mortgagee.
2. When construction is completed, prepare and send for *Recordation* the standard modification agreement. MERS is not the Mortgagee.
3. Following the modification, prepare an *Assignment to MERS*, which includes the correct placement of a valid MIN and the SIS Phone Number on the assignment. Once the modification is executed, it must be promptly sent for Recordation in accordance with the MERS® System requirements.
4. Register the loan on the MERS® System as a Non-MOM, in accordance with the MERS® System requirements, entering the information from your *System of Record*.
5. If the permanent loan is sold to another MERS® System Member, transfer the rights in the same manner as other MERS® System registered loans.
6. If the loan is sold to a non-Member after being assigned to MERS and registered:
   - Deactivate the MIN in the MERS® System in accordance with the MERS® System requirements.
   - Prepare and send for Recordation an *Assignment from MERS* that has been executed by an authorized Signing Officer.



## *Closed on a Standard Security Instrument and Not Assigned to MERS (iRegistration)*

You may register a loan that does not have MERS as Mortgagee as an iRegistration at origination, or before or after modification, because MERS is never the Mortgagee. Transfers must be reflected, and selling the servicing more than 270 days after the original Note Date incurs the appropriate transfer fee (Seasoned Servicing Transfer Fee or Intracompany Transfer Fee).

1. Close the loan using the standard construction loan Security Instrument, and register it on the MERS® System as an iRegistration.
2. When construction is complete, prepare and send for *Recordation* the standard modification agreement. Because MERS is not the Mortgagee, do not place the MIN or SIS Phone Number on the modification.
3. Update the MERS® System to reflect the modification date and amount.
4. If the permanent loan is sold to another MERS® System Member, create a transfer transaction in the usual manner.
5. If the loan is sold to a non-Member after being registered:
    - Deactivate the MIN in the MERS® System in accordance with the MERS® System requirements.
    - Prepare and send for Recordation a standard assignment; MERS is not the Mortgagee.

# Procedure: Two-Step Closing

In the second of two scenarios, a construction loan is paid off by a permanent loan. You can close the construction loan as MOM, non-MOM, or iRegistration; however, since it is a separate loan from the permanent loan, it will incur a separate registration fee.

1. The construction loan may be closed using either a MOM or standard Security Instrument.
    - If closed on a MOM Security Instrument, the loan must be:
        - Given a valid MIN
        - Executed and promptly sent for *Recordation* in accordance with state or Investor guidelines
        - Registered on the MERS® System as a MOM loan no later than seven (7) calendar days after the Note Date, or Funding Date for escrow states
        - Deactivated using the **Paid in Full** transaction on the MERS® System when it is paid off by the permanent loan



- If the loan is closed on a Non-MOM Security Instrument, then assigned to MERS:
  - The assignment must be:
    - ✓ Given a valid MIN
    - ✓ Executed and promptly sent for Recordation in accordance with state or Investor guidelines
  - The loan must be registered on the MERS® System as a Non-MOM loan no later than seven (7) calendar days after the Assignment Date
  - The loan must be deactivated using the **Paid in Full** transaction on the MERS® System when it is paid off by the permanent loan
- If the loan is neither closed on a MOM Security Instrument nor assigned to MERS, but is registered as an iRegistration, the loan must be:
  - Given a valid MIN
  - Registered on the MERS® System as an iRegistration
  - Deactivated using the **Paid in Full** transaction on the MERS® System when it is paid off by the permanent loan

2. When construction is completed, register the permanent loan on the MERS® System, with a valid MIN, as you would any other loan.
3. If the permanent loan is sold to another MERS® System Member, create a transfer transaction as for other MERS® System registered loans.
4. If the permanent loan is sold to a non-Member:
   - Deactivate the MIN in the MERS® System in accordance with the MERS® System requirements.
   - For a MOM or Non-MOM loan, prepare and send for Recordation an *Assignment from MERS* that has been executed by a Signing Officer.



# Transfer of Beneficial Rights

## Overview

The Transfer of Beneficial Rights (*TOB*) transaction is used to track the transfer of the beneficial ownership of the indebtedness secured by the mortgage or deed of trust from one Investor to another.

There are two types of Investors in the MERS® System:

- **Member Investors (Investors who are MERS® System Members):**
  Member Investors sign a MERS® System Application, pay the MERS® System membership fees, and have full access to the MERS® System.
  *As a Member Investor, you have the choice of processing Confirmations of Transfer of Beneficial Rights transactions and all other transactions manually or automatically.*

- **Non-Member Investors**
  Non-Member Investors do not sign a MERS® System Application or pay the MERS® System fees and have no ability to access the MERS® System, confirm their MERS® System transactions or retrieve any MERS® System reports. They must be represented on the MERS® System with Org ID 1000002.

  Org ID 1000002 displays as "Undisclosed Investor" on the MERS® System.  The *MERS® ServicerID* and the phone-based Servicer Identification System (SIS) provide the following guidance to someone from the *General Public* inquiring about a MIN with this Org ID listed as the Investor: "For Investor name, please contact the Servicer".

There are two types of TOB transactions on the MERS® System, either of which may be initiated online or via batch.

- **Option 1:**
  Used only by Option 1 (or Agency) Investors such as Freddie Mac, Ginnie Mae, and Fannie Mae, to claim Investor rights on loans transmitted to them. Option 1 transfers require no confirmation, and remove any Interim Funder or *Warehouse/Gestation Lender* interests from the loan.

- **Option 2:**
  Used by most MERS® System Members. Option 2 transfers require confirmation from the new Investor. They do not remove Interim Funder or Warehouse/Gestation Lender interests from the loan. You cannot use this option to transfer to an Option 1 Investor.

The seller must initiate all Transfer of Beneficial Rights transactions within seven (7) calendar days of the *Effective Transfer Date*.

Note: If a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede the MERS® System requirements.



The MERS® System will allow a MIN to co-exist in an Option 2 TOB batch and a Transfer of Servicing (TOS) batch only if the New Servicer and New Investor are the same entity.

The MERS® System will allow a MIN to co-exist in an Option 1 TOB batch and a Flow or Seasoned TOS batch.

## TOB Transactions – Option 1 vs. Option 2

Although the MERS® System tracks changes in ownership of the beneficial ownership rights for loans registered on the MERS® System, the MERS® System cannot transfer the beneficial ownership rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee. As a MERS® System Member, you have two options for tracking a transfer of beneficial rights to another Member: Option 1 and Option 2. The determination of whether Option 1 or Option 2 is used is based on the Membership Profile of the purchasing Investor.

### Option 1

In an Option 1 transfer, the Investor transfers beneficial rights on a system other than the MERS® System and that system then initiates the MERS® System transaction. An Option 1 transfer can be created in either flat file/EDI X12 mode or online.

Loans in an Option 1 batch that have not been registered are automatically reprocessed ("cycled") until the loans have been registered, up to ten (10) calendar days from the Transfer Date. Option 1 Investors receive notification when MIN cycling begins through the *Transfer of Beneficial Rights Reject (BF) Report.*

If you include MINs that are not registered in your agency transmission, you will receive an abbreviated version of the *Transfer of Beneficial Rights Reject (BF) Report* listing these unregistered MINs. It is your responsibility to register these MINs immediately, entering your MERS® System Org ID in the Investor field. If you register them after the 10 day cycling process is over, you must name the Agency in the Investor field.

An Option 1 Transfer of Beneficial Rights will replace any Option 2 Investor on the loan. The Investor that was removed during the Option 1 process is notified of its removal in the *Investor Removed by Option 1 TOB (BI) Report*. Additionally, Interim Funder and Warehouse/Gestation Lender interests are released automatically in an Option 1 beneficial rights transfer. No confirmations are required for Option 1 transfers.

If a MIN is included in an Option 1 and an Option 2 beneficial rights transfer batch at the same time, when the Option 1 beneficial rights transfer is completed, the duplicate MIN is deleted from the Option 2 beneficial rights transfer. The MINs that were deleted from the Option 2 beneficial rights transfer appear on the *MINs Deleted from Transfer of Beneficial Rights (BH) Report*. Non-duplicate MINs remain in the Option 2 transfer batch.



MINs can exist simultaneously in an Option 1 beneficial rights transfer batch and a transfer of servicing batch. See *Transfer of Servicing Rights* for details.

Important dates for beneficial rights transfer (Option 1) are:

- *Transfer Creation Date*: the date the Investor creates the beneficial rights transfer on the MERS® System.
- *Transfer Date*: the date the beneficial rights are transferred to the new Investor. May be the same as the Transfer Creation Date or the current processing date if the Transfer Creation Date is in the past.

- The Transfer Date cannot be changed, and the transfer cannot be canceled, on Option 1 beneficial rights transfers.
- Any deactivation transaction submitted for a MIN in a pending TOB batch transfer is not processed except one submitted by the MERS® eRegistry.

## Option 2

An Option 2 beneficial rights transfer is initiated on the MERS® System by the Servicing Member. The New Investor cannot be an Option 1 Investor, and then:

- The Servicing Member creates a pending beneficial rights transfer batch. Beneficial rights transfers can be created in flat file/EDI X12 mode and on MERS® OnLine.
- The current Investor and the new Investor confirm or reject the transfer.
  - If the current Investor does not have the **Approval of Option 2 beneficial transfer** option selected in its Member Information Options, its confirmation is automatic.
  - If the new Investor does not have the **Approval of Option 2 beneficial transfer** option selected in its Member Information Options, its confirmation is automatic.
  - If you reject the transfer using MERS® OnLine, you can provide a Reject Reason. Reject Reason definitions are specific to each Investor.
- If the new Investor has indicated in its Member Information that Investor Loan Number, Pool Number, or Agency ID is required, then the new Investor must supply the data for each MIN when it confirms the MINs.
- On the Transfer Date, the MERS® System will process all transfers confirmed by that date. The MERS® System will process transfers as they are confirmed until the



Expiration Date. Confirmation and reject activity for each processing cycle is reported on the non-cumulative *Physical Transfer of Beneficial Rights (BB) Report*.

- The Interim Funder removes its security interests in the loans. It is not necessary to have the *Interim Funder Interests* removed for the beneficial rights transfer to be registered. Completed transfers with interim funding interests not released appear on the *Coexisting Security Interest (IA) Report.*
- A Warehouse/Gestation Lender's interest is automatically removed by the **Transfer of Servicing Rights** transaction, or removed by the Servicing Member if servicing is not transferred.

While a TOB transfer is pending on the MERS® System:

- All parties named in the batch can view the pending transaction using the **View List of Batches** feature in MERS® OnLine.
- The new Investor can confirm or reject MINs in the batch at any time prior to the Expiration Date.
- The new Investor can change transfer confirmations (for example, reject a previously confirmed loan) any time prior to the Transfer Date.
- The party initiating the batch can change the Transfer Date. This will remove any confirmations made before the date was changed, so all MINs will have to be confirmed again.
- The new Investor can change the Investor loan and pool numbers to reflect its own information.
- The initiating Member can add MINs to the batch any time prior to the completion date, but the new MINs will have to be confirmed by the new Investor before they will be transferred.
- The initiating Member can delete any MIN from the batch, as long as that MIN has not been confirmed by the new Investor.
- The initiating Member can cancel the entire batch any time prior to the completion of the batch on Option 2 transfers, as long as the new Investor has not confirmed the transfer.
- If you create a transfer Batch that has missing MINs, or MINs that shouldn't be included, use the **Modify Batch** option in MERS® OnLine to correct it while the Batch is in pending or overdue status. This activity will produce a *Modified Batch –Transfer of Beneficial Rights (BL) Report*.
- Any deactivation transaction submitted for a MIN in a pending TOB batch transfer is not processed except one submitted by the MERS® eRegistry.

Loans not completely confirmed or rejected by the Expiration Date (31 calendar days from the Transfer Date or from the Creation Date if Transfer Date is prior) are noted on the



*Expired Transfer of Beneficial Rights (BD) Report*, and the transfer batch status changes from transfer overdue to transfer Pending Delete.

Important dates for beneficial rights transfer (Option 2) are:

- **Transfer Creation Date:** the date the Servicing Member creates the beneficial rights transfer transaction on the MERS® System.

- **Transfer Date**: the date the beneficial rights are transferred to the new Investor. May be the same as the Transfer Date or within 30 calendar days of that date.

- **Transfer Expiration date**: 31 calendar days after the Transfer Date MINs not confirmed or rejected by the expiration date will revert to their original Investor.



If the Transfer Date is before the Transfer creation date, the Transfer deletion date will be 31 calendar days after the Transfer creation date.

# Impact

The Transfer of Beneficial Rights process affects the following Members:

- Servicers

- Subservicers

- Investors

- Interim funding lenders

- Document custodians

- Associated Members

# QA Plan Requirements - TOB Transactions

The following QA standards apply to **Transfer of Beneficial rights (TOB)** transactions:

- Verify that all loans bought or sold were/are set up in a beneficial transfer batch within seven (7) calendar days of the *Effective Transfer Date* (the date defined in the Purchase and Sale Agreement on which the transfer of beneficial ownership occurs).

- Verify that the batches for all loans sold during the previous month were accepted by the Investor/buyer, or confirmed by Member if the MINs are being purchased, prior to the expiration date of the batch (within 30 days of the transfer date or batch creation date, whichever is later).



- Verify with the purchaser of any loans sold, the status of any rejected MINs or batches, and if necessary, make any corrections to the batch or MIN level detail to allow acceptance of the transfer by the Investor/buyer (or delete batch and create corrected batch, if applicable).
- If the purchaser is a Member, validate that the MINs in the transfer batch(es) are correct and accept the MINs or batches prior to the batch expiration date or report any discrepancies to the seller and reject those MINs or batches.

# Procedure: Option 1 TOB

For Option 1, the loan must be registered on the MERS® System. The Member selling beneficial rights delivers loans to the Investor as it did before, but must include the MIN in the transmission. The Investor then transfers beneficial rights for the loans it has agreed to purchase and updates the MERS® System.

- Loans that are rejected from the batch transaction should be updated by the Investor in the MERS® System using the Option 1 transfer of beneficial rights.
- MINs rejected due to non-registration are automatically reprocessed up to 10 calendar days from the Transfer Date. Option 1 Investors are notified when the reprocessing cycle begins through the *Transfer of Beneficial Rights Rejects (BF) Report*.

This option is used when the seller registers the loan on the MERS® System, listing itself as the Investor, and then sells the loan to an Option 1 Investor. The seller must include the MIN on the transmission to the Option 1 Investor. The Investor then initiates the transfer of beneficial rights from its own system and the process below begins.

1. The new Investor creates a batch transaction that transfers beneficial rights to itself on the MERS® System.
2. When the Transfer Date is reached, the MIN is transferred.
3. If the MIN has not been registered by the Transfer Date, the batch continues to cycle for up to ten days.
4. Loans not registered within the ten day window may be registered with the new Investor's Org ID in the Investor field, or after registration the new Investor can update the loan in MERS® OnLine using the Option 1 Transfer of Beneficial Rights.
5. Registered loans that are rejected from the batch transaction can be updated by the new Investor in MERS® OnLine using the Option 1 Transfer of Beneficial Rights.
6. The transfer of beneficial rights appears on the MIN-level milestones, audit history, and transfer audit history.
7. The Originator or Servicer, old Investor, new Investor, and Custodian of the transfer of beneficial rights receive a *Physical Transfer of Beneficial Rights (BB) Report*.

---

Note: This process is also used by some Investors to reflect each additional principal advance against a Home Equity Conversion Mortgage (HECM). The system generates the



usual milestone, audit history, transfer audit history, and report entries for each advance reported as an option 1 TOB, but the same option 1 Investor appears as both previous and new Investor.

# Procedure: Option 2 TOB

The seller uses this option when selling to an Option 2 Investor. The seller enters the transfer of beneficial rights transactions on the MERS® System, and the Investor can choose whether to confirm or reject the transfer.

The Transfer Date can be a past date, up to 60 calendar days before the transaction origination date, or up to 180 days in the future.

1. The current Servicing Member creates a pending beneficial rights transfer batch on the MERS® System, including the following information:
   - Transfer Date
   - Current Investor
   - New Investor
   - New Custodian (if applicable)
   - MINs
2. The MERS® System validates the information.
3. The initiating Member and current Investor receive a *Pending Transfer of Beneficial Rights (BA) Report.*

   The initiating Member may:
   - Cancel the Option 2 Transfer of Beneficial Rights any time before it is confirmed by the new Investor.
   - Use the **Modify Batch** option in MERS® OnLine to add MINs to or delete MINs from the batch while it is in pending or overdue status. This activity will produce a *Modified Batch –Transfer of Beneficial Rights (BL) Report.*
4. The current and new Investors confirm or reject the transfer at the batch, pool, securitization, or loan level.
   - If the Investor is a *Passive Investor*, the confirmation is automatic.
   - If the new Investor has indicated that Investor Loan Number, Pool Number, Agency ID, or any combination of the three is required, then the new Investor must supply the data fields for each MIN.
5. The MERS® System updates the Investor information on the Transfer Date or on the date that the Investor confirms the transfer, whichever is later.
6. The transfer of beneficial rights appears on the MIN-level milestones, audit history, and transfer audit history.



7.  The current Servicer, new Investor, old Investor, and old and new Document Custodians receive a *Physical Transfer of Beneficial Rights (BB) Report.*

The MERS® System checks daily to determine if the Transfer Date has been reached. If the new Investor does not confirm the transfer by the Transfer Date, the MERS® System reflects an overdue transfer status for the loan(s).

## Option 2 TOB Processing

**Before the Transfer Effective Date the system will:**

- Automatically remove a MIN from the pending TOB Option 2 batch if it is transferred by a TOB Option 1 transaction, deactivated, or registration reversed. This will be reported on the *Physical Transfer of Beneficial Rights (BB)* report.

- Automatically cancel the batch if all MINs have been removed from it. This will be reported on the *Canceled Transfer of Beneficial Rights (BG)* report.

**On the Transfer Effective Date the system will:**

- Remove from the batch all confirmed MINs.

- Update the rights holder for all confirmed, active MINs.

- Update milestones, audit history, and transfer audit history for each transferred MIN.

- Mark these MINs as transferred on the *Physical Transfer of Rights (BB) Report*.

- Remove from the batch all MINs rejected by the confirming Member (all MINs with at least one confirmation indicator set to "N") and MINs removed by the system due to the MIN becoming deactivated or re-registered with a different servicer.

- Mark the MINs as rejected or removed on the *Physical Transfer of Rights (BB) Report*.

- If any unconfirmed MINs remain in the batch, the system will change the batch status to **Overdu**e and list those MINs in the *Overdue Transfer of Rights (BC)* Report.

Note: The *Physical Transfer of Rights* (BB) *Report* is NOT cumulative. You must review it each time it is produced to see the activity from the previous cycle.

**After the Transfer Effective Date**, for each processing cycle after the Transfer Effective Date, **the system will**:

- Remove from the overdue batch all newly confirmed MINs.

- Update the rights holder for these MINs.

- Update milestones, audit history, and transfer audit history for the MINs.

- Mark these MINs as transferred on the *Physical Transfer of Rights (BC) Report.*

- Remove from the batch all MINs newly rejected by the confirming Member (all MINs with at least one confirmation indicator set to "N") and MINs removed by the system



due to the MIN becoming deactivated or re-registered with a different Investor. These MINs will be marked as rejected or removed from the *Physical Transfer of Rights (BB) Report.*

If there are any remaining, active unconfirmed MINs in the overdue batch, they will continue to be listed on *Overdue Transfer of Rights (BC) Report.*

If there are unconfirmed MINs in a batch 20 calendar days after the Transfer Effective Date, the system will display a message on the Welcome Page for both the initiating and confirming Members.

**On the Transfer Expiration Date** (30 calendar days from the Transfer Date or from the Creation Date if later)**, the MERS® System will:**

- Produce an *Expired Transfer (BD) Report* listing any unconfirmed MINs.

- Mark the batch as "Pending Delete" and stop all further processing on the batch.

- Not change the Investor field.

# Reports

The following reports are generated during the Transfer of Beneficial Rights process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Pending Transfer Of Beneficial Rights (BA)*

- *Modified Batch – Transfer of Beneficial Rights (BL)*

- *Physical Transfer of Beneficial Rights (BB)*

- *Overdue Transfer of Beneficial Rights (BC)*

- *Transfer of Beneficial Rights Rejects (BF)*

- *Canceled Transfer of Beneficial Rights (BG)*

- *Expired Transfer of Beneficial Rights (BD)*

- *MINs Deleted from Transfer of Beneficial Rights (BH)*

- *Investor Removed by Option 1 TOB (BI)*

- *Summary of Transfer of Beneficial Rights Rejects (BJ)*

- *MIN Milestone Report for Associated Members (VA)*



# Transfer of Beneficial Rights to Non-Member Investors

## Overview

It is not a requirement that an Investor be a MERS® System Member for a loan to remain on the MERS® System. For private Investors, where an assignment in the Investor's name is not required, the loans may be transferred by inserting Org ID **1000002** in the New Investor field. On the MERS® System, the Member name for this Org ID is "Undisclosed Investor" and the Member's address and contacts display as "Contact Servicer". On the MERS® ServicerID, the following statement displays in the Investor field: "For Investor name please contact the Servicer".

The following criteria must be met to use this Org ID:

- No assignment has been recorded naming the Investor as Mortgagee. (If the Investor requires an Assignment from MERS, see *Transfer to Non-MERS Status* Deactivation.)

- The Investor does not desire to be a MERS® System Member.

- The Investor does not wish to view information on the MERS® System for loans on which it owns the Beneficial Rights, and does not wish to review any MERS® System reports for transactions associated with those loans.

## Impact

This process has the potential to impact all MERS® System Members.

## Procedure: Transfer of Beneficial Rights to Non-Member Investors

1. As part of the normal Investor approval process for transfers or loan deliveries, you must notify the Investor of your intent to name MERS as the Mortgagee by delivering a MOM Security Instrument or through an Assignment to MERS.

2. You will identify non-Member Investor loans and transfer the beneficial rights in the MERS® System using Organization ID 1000002 as New Investor.

## Reports

The following reports are generated for beneficial rights transfer to a non-Member. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Physical Transfer of Beneficial Rights (BB)*



- *Transfer of Beneficial Rights Rejects (BF)*
- *Summary of Transfer of Beneficial Rights Rejects (BJ)*
- *MIN Milestone Report for Associated Members (VA)*



# Removing Interim Funder Security Interests

## Overview

The pledge of a security interest in any mortgage loan registered on the MERS® System to an Interim Funder (e.g., Warehouse Lender), shall be shown as released on the MERS® System when the security interest has been released in accordance with the methods and procedures established between the Interim Funder, the lender granting the security interest and the subsequent purchaser of the mortgage loan.

Interim funding interests are removed from the MERS® System in two situations:

- **Option 1:** Indirectly by the Investor when an Option 1 transfer of beneficial rights is completed and the Interim Funder is removed from the loan record by an Investor purchase.

- **Option 2:** Directly by the Interim Funder when it has been reimbursed, either by the Lender, Investor, or another Interim Funder.

The Interim Funder can remove its security interest from the MERS® System once it no longer has an interest in the loan or is made whole; however, it is not necessary to have the interim funding interest removed for the beneficial rights transfer to occur.

If the Option 1 beneficial rights transfer is used, the interim funding interests are removed automatically. The Interim Funder reviews any wiring instructions provided to it by the Originator as applicable and contacts the seller of the beneficial interests if there are problems.

If the Option 2 beneficial rights transfer is used, the Interim Funder removes its security interests before or after the transfer of beneficial rights has been completed to the new Investor. On Option 2 transfers, completed transfers with existing interim funding interests will appear on a mismatch report, which notes the coexisting beneficial interests.

## Impact

The Removal of Interim Funder Security Interests affects the following Members:

- Interim funding organizations
- Investors
- Servicer
- Subservicers
- Associated Members



# Procedure: TOB Option 1

The following procedure is used for removing Interim Funder security interests with a TOB Option 1 transaction:

1. The Servicer registers the loan, identifying an Interim Funder entity as holder of a secured interest on the MERS® System.
2. The Servicer sells the loan to an Option 1 Investor (Fannie Mae for example) and includes the MIN in its loan delivery transmission.
3. The new Option 1 Investor creates a batch transaction that updates the MERS® System. The beneficial interest on the sold loan(s) is transferred to the Investor, and the Interim Funder is automatically removed as the holder of a secured interest on the MERS® System.
4. The removal of Interim Funder appears on the MIN-level milestones.
5. The Interim Funder organization receives a *Release of Security Interests by Interim Funder (IB) Report.*
6. The Interim Funder reviews any wiring instructions provided to it by the lender as applicable and contacts the seller of the beneficial interests if there are problems.

# Procedure: TOB Option 2

1. The Servicer registers the loan, identifying the Interim Funder at registration as holder of a secured interest on the MERS® System.
2. The Servicer then initiates an Option 2 transfer of beneficial rights on the MERS® System.
3. The Investor purchasing the beneficial rights confirms or rejects the transfer of beneficial rights.
4. The Interim Funder verifies that its advance on the loan has been repaid, usually because of Investor purchase, and then updates the loan on the MERS® System to show the release of its security interest.
5. The removal of Interim Funder appears on the MIN-level milestones.
6. The Investor, the Interim Funder, the Servicer or Member selling the rights and the Document Custodian (if applicable) receive a *Release of Security Interests by Interim Funder (IB) Report*.



# Reports

The following reports are generated during the interim funding process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Co-existing Security Interests (IA)*
- *Release of Security Interests by Interim Funder (IB)*
- *Interim Funder Rejects (IC)*
- *MIN Milestone Report for Associated Members (VA)*



# Removing Warehouse/Gestation Lender Security Interests

## Overview

The Warehouse/Gestation Lender field can be cleared on the MERS® System when your organization no longer has an interest in the loan or is made whole.

A Warehouse/Gestation Lender's interest is removed from a MIN in one of three ways:

- Indirectly when an Option 1 **Transfer of Beneficial Rights** transaction is completed.

- Indirectly when a **Transfer of Servicing Rights** transaction is completed.

- Directly by the Servicing Member.

It is not necessary to have a Warehouse/Gestation Lender's interest removed for a beneficial rights transfer to occur. Completed Option 2 transfers with existing Warehouse/Gestation Lender's interests will appear on the *Co-existing Security Interests (IA) Report*, which notes the coexisting beneficial interests.

If the Option 1 **Beneficial Rights Transfer** is used, a Warehouse/Gestation Lender's interest is removed automatically. The Warehouse/Gestation Lender reviews any wiring instructions provided to it by the Originator as applicable and contacts the seller of the beneficial interests if there are problems.

## Impact

The Removal of the Warehouse/Gestation Lender security interests affects the following Members:

- Interim funding organizations

- Investors

- Servicer

- Subservicers

- Associated Members

## Procedure: TOB Option 1

The following business procedure is used for removing a Warehouse/Gestation Lender's security interest using a TOB Option 1 transaction:



1. The Servicer registers the loan, identifying the Warehouse/Gestation Lender entity as holder of a secured interest on the MERS® System.
2. The Servicer sells the loan to an Option 1 Investor (Fannie Mae for example) and includes the MIN in the loan delivery transmission.
3. The new Option 1 Investor creates a batch transaction that updates the MERS® System. The beneficial interest on the sold loan(s) is transferred to the Investor, and the Warehouse/Gestation Lender is automatically removed from the MIN.
4. The removal of Warehouse/Gestation Lender appears on the MIN-level milestones.
5. The Warehouse/Gestation Lender organization receives a *MIN Milestone Report for Associated Members (VA)* and a *Change Notification* (*VB) Report*.
6. The Warehouse/Gestation Lender reviews any wiring instructions provided to it by the lender as applicable and contacts the seller of the beneficial interests if there are problems.

# Procedure: TOB Option 2

1. The Servicer registers the loan, identifying the Warehouse/Gestation Lender at registration as holder of a secured interest on the MERS® System.
2. The Servicer then initiates an Option 2 transfer of beneficial rights on the MERS® System.
3. The Investor purchasing the beneficial rights confirms or rejects the transfer of beneficial rights.
4. The *Co-existing Security Interests (IA) Report* informs the Investor and Warehouse/Gestation Lender of their mutual security interests.
5. The Warehouse/Gestation Lender verifies that its advance on this loan has been repaid, usually because of the Investor purchase.
6. The Warehouse/Gestation Lender's interest is automatically removed by the **Transfer of Servicing Rights** transaction, or removed by the Servicing Member if servicing is not transferred.
7. The removal of Warehouse/Gestation Lender appears on the MIN-level milestones.
8. The Warehouse/Gestation Lender receives the *MIN Milestone (VA) Report* and *Change Notification* (*VB) Report*.



# Reports

The following reports are generated during the process to remove a Warehouse/Gestation Lender's security interest on the MERS® System. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Co-existing Security Interests (IA)*
- *MIN Milestone Report for Associated Members (VA)*
- *Change Notification (VB)*



# Transfer of Servicing Rights

## Overview

***Both seller and buyer are responsible for completing the Transfer of Servicing Rights transaction on the MERS® System in a timely manner.***

There are two types of *Servicing Rights Transfers*: *Flow Transfer* and *Seasoned Transfer*. The difference between the two types of transfers is based on how long after the Note Date the loan is transferred on the MERS® System. The MERS® System defines flow transfers of servicing rights as those completed 270 or fewer calendar days after the Note Date. A seasoned transfer of servicing rights is one that occurs more than 270 calendar days after the Note Date.

MERSCORP Holdings management reserves the right to examine the Purchase and Sale Agreement under which a sale and transfer of servicing rights occurs if there is doubt whether a particular transfer meets the flow criteria, or if a sale of servicing occurred.

The MERS® System distinguishes between flow and seasoned transfers of servicing rights and bills the applicable fee for seasoned transfers (Seasoned Servicing Transfer Fee or Intracompany Transfer Fee). There is no fee for flow transactions regardless of how many flow transactions a MIN undergoes.

When a TOS transaction contains both flow and seasoned MINs, the MERS® System will move the flow and seasoned MINs to separate batches. If submitted through the Flat File/EDI X12, the system will create additional batches for each Investor involved in the batch.

In a flow batch, if the sale and transfer dates submitted are not equal, the MERS® System will change the *Sale Date* to equal the *Transfer Date*.

If the Investor (such as Ginnie Mae) requires Servicer Agency ID, the new Servicer must provide its Agency ID either at the MIN level or in its Member Information (which will then populate the MIN with the Agency ID) after confirmations and before transfer occurs. If the batch is already created but is lacking Agency IDs, the Servicer can update each MIN in the batch. Servicers with more than one Agency ID for that Investor must update each MIN unless the Agency ID to be used is included in their MERS® System Member Information. To update a TOS batch, the Servicer will use the Confirm Batch transaction.

When a current Servicer sells servicing rights to loans it services to a new Servicer, the roles of any Subservicer (both current and new) and Investor are considered. Any combination of these roles is supported in the MERS® System.

A MIN can only exist in one **Transfer of Servicing Rights** transaction at a time, and can only exist in an Option 2 TOB transaction and a TOS transaction simultaneously if the



New Servicer and New Investor are the same entity. If a conflict occurs, the following happens:

- **In MERS® OnLine**, the second transaction rejects during creation and the batch cannot be created until the "conflicting" batch is processed or canceled or the "conflicting" MIN is removed from the batch to be created.
- **In a Flat File/EDI X12 process**, the batch is created if at least one MIN is valid. MINs that already exist in a TOS or TOB Option 2 batch will reject and appear on the reject report. The MERS® System automatically creates the appropriate batches based on the current Investor listed on the MIN for batch transactions, for MINs that match the flow criteria.

**NOTE FOR FLAT FILE/EDI X12 USERS:** To update the MIN with Agency ID without affecting the confirmations, use a 252 transaction with "N" (No) for Confirmation action code, and Confirmation for Effective Date. Both fields must contain "N" in order to bypass the confirmation edits. Refer to the *Integration Handbook Volume II* and the *EDI Implementation Guide* for details.

A MIN can exist in a TOS batch and an Option 1 TOB batch simultaneously.

- If **some** of the MINs in the TOS batch are also in the Option 1 TOB, the system will automatically delete the duplicate MINs from the TOS batch, and create a new batch for them using the new Investor.
- If **all** the MINs in the TOS batch are also in the Option 1 TOB, a new batch is not created, and the existing TOS batch is updated with the new Investor.

The seller must initiate all **Transfer of Servicing Rights** transactions within seven (7) calendar days of the *Effective Transfer Date*.

Note: If a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede those of the MERS® System.

## Transfer of Servicing Process Flow

**The general process in a Transfer of Servicing rights transaction on the MERS® System is as follows:**

- The current Servicing Member creates a pending **Transfer of Servicing Rights** transaction on the MERS® System and specifies the new Servicer and/or Subservicer, Investor, Sale Date (if different from the Transfer Date), Transfer Date, and new Document Custodian.
  - The Servicer may create a **Transfer of Servicing Rights** transaction when a Subservicer is also named on the MIN.
  - The new Servicer, any Subservicer, Custodians, and the Investor (if required) are notified of the pending transfer by a *Pending Transfer of Servicing Rights (SA) Report*.



- The initiating Member can cancel the transfer batch any time before the transfer takes place.
- The initiating Member can change the Transfer Date any time before the Transfer Date is reached, as long as no MINs in the batch have been confirmed.
- If the new Servicer is a Non-Member, or for an iRegistration, the current Servicer is responsible for preparing and recording assignments in the public land records evidencing the transfer of title to the new Servicer.
- If the new Servicer is a Non-Member, a deactivation transaction is used instead of the TOS transaction. (See *Transfer to Non-MERS Status*.)

- The confirmation of the Transfer of Servicing Rights for the initiating Member is automatic.
  - If the Servicer creates the TOS, the confirmation for the Current Servicer is automatic.
  - If the Subservicer creates the TOS, the confirmation for the Current Subservicer is automatic, and the Current Servicer must confirm the transfer.
- If there is a New Subservicer, the New Subservicer confirms the transfer, and the New Servicer does not confirm.
  - When the Current Servicer creates a batch naming itself as the New Subservicer, the confirmation for the New Subservicer is automatic.
  - When the Current Subservicer creates a batch naming itself as the New Servicer, and naming a New Subservicer, the New Subservicer is required to confirm the transfer.
  - When the Current Subservicer creates a batch naming itself as the New Subservicer, the confirmation for the New Subservicer is automatic.
- If there is no New Subservicer, the New Servicer confirms the transfer.
  - When the Current Subservicer creates a batch naming itself as the New Servicer without naming a New Subservicer, the confirmation for the new Servicer is automatic.
- **For seasoned transfers only,** if the Investor has specified in Member Information that it must confirm transfers of servicing rights on its loans, the Investor confirms the transfer.
- Any deactivation transaction submitted for a MIN in a pending TOS batch transfer is not processed except one submitted by the MERS® eRegistry.
- The New Servicer (or New Subservicer if present), Current Servicer, or Investor (only for seasoned loans, and only if Investor has specified in Member Information that it must confirm transfers of servicing rights) may reject the transfer any time before the transfer date.



- If you reject the transfer as the New Servicer or New Subservicer, using MERS® OnLine, you can choose from a dropdown list of Reject Reasons. Specific definitions for these Reject Reasons are determined by each Member.
- On the Transfer Date, and on each processing day that the batch remains in overdue status:
  - MINs that have been confirmed by all necessary parties will transfer to the new Servicer and/or Subservicer.
    - If the Investor has indicated in its Member Information that Agency ID is required, the System will automatically update each MIN in the batch with the Agency ID listed in the new Servicer's Member Information. The Agency ID will update to null values if the new Investor does not require Agency ID.
    - Any existing Warehouse/Gestation Lender is removed from the MIN.
    - The current Custodian remains on the MIN unless a new Custodian, or the remove Custodian indicator, is specified when the transfer is created.
    - Associated Members (with the exception of Warehouse/Gestation Lender) identified on each transferred MIN remain with that MIN.
      - ✓ The current Servicing Member can delete the Associated Member any time before the transfer takes place.
      - ✓ Once the transfer has taken place, the new Servicing Member can update Associated Member information.
    - After the transfer is complete, the old Servicing Member cannot update the loans.
- MINs that are rejected by any party will be removed from the batch without being transferred.
- MINs that are neither confirmed nor rejected will remain in the batch in an overdue status.
  - MINs can still be confirmed while batch status is overdue.
- If any MINs remain in the batch on the Transfer Expiration Date (30 calendar days after the Transfer Date or batch creation date, whichever is later), the batch will be cancelled, and the remaining MINs will not be transferred.

# Impact

The **Transfer of Servicing Rights** process potentially impacts the following Members:

- Servicers
- Subservicers
- Investors



- Document Custodians
- Associated Members

# QA Plan Requirements - TOS Transactions

The following QA standards apply to **Transfer of Servicing rights (TOS)** transactions:

- Verify that all loans bought or sold were/are set up in a servicing transfer batch within seven (7) calendar days of the *Effective Transfer Date* (the date defined in the Purchase and Sale Agreement, on which the buyer begins servicing the loans on its servicing system).

- Verify that the batches for all loans sold during the previous month were accepted by the Investor/buyer, or confirmed by Member if the MINs are being purchased, prior to the expiration date of the batch (within 30 days of the Sale Date or batch creation date, whichever is later).

- Verify with the purchaser of any loans sold, the status of any rejected MINs or batches, and if necessary, make any corrections to the batch or MIN level detail to allow acceptance of the transfer by the Investor/buyer (or delete batch and create corrected batch, if applicable).

- If the purchaser is a Member, validate that the MINs in the transfer batch(es) are correct and accept the MINs or batches prior to the batch expiration date or report any discrepancies to the seller and reject those MINs or batches.

# Flow Transfer of Servicing Rights

## *Note Date*

If a MIN's Note Date is 270 or fewer calendar days before the Transfer Date, the MIN is processed in a Flow TOS batch.

- **If the Flow TOS Flat File or EDI X12 transaction is used:**
  If the Note Date on one or more MINs is more than 270 days before the Transfer Date, the flow **Transfer of Servicing Rights** batch is created without those MINs. The following error message appears for the rejected MINs on the *Transfer of Servicing Rights Reject Report*: "Transfer Date is past the cutoff for a flow transaction"

- Use the TOS Flat File/EDI X12 transaction instead of the Flow TOS Flat File/EDI X12 transaction if you also have seasoned MINs to transfer. It will separate flow and seasoned MINs into separate transfer batches and you are charged only for the seasoned transfers.



## *Sale Date/Transfer Date*

Because there is not a "staging" period in a flow transfer of servicing, the MERS® System defaults the Sale Date to the value in the Transfer Date field.

- **In MERS® OnLine**, the Sale Date is automatically set equal to the Transfer Date when you complete the Transfer Date field.
- **In a Flat File/EDI X12 process**, the Sale Date is set equal to the Transfer Date when the batch is created on the MERS® System. If the initiator of a TOS transaction enters a value in the Sale Date field for the batch, the following warning message appears on the Rejects/Warnings report for the flow TOS batch: "Sale Date is not allowed."

## *No Investor Confirmation of Flow Transfer of Servicing*

To reflect current industry practices, an Investor does not have the ability to confirm a flow transfer of servicing transaction, regardless of the approval options indicated in Member Information. The approval options indicated in Member Information apply to seasoned transfer transactions.

**Milestones Updated**

The milestones generated for MINs that transfer successfully in a flow TOS are labeled "Transfer of flow servicing rights."

# Seasoned Transfer of Servicing Rights

## *Note Date*

If a MIN's Note Date is more than 270 calendar days before the Transfer Date, the MIN is processed in a Seasoned TOS batch.

## *Sale Date and Transfer Date*

The Sale Date is when the buyer purchases the servicing rights. The Transfer Date is when the new Servicing Member begins the physical servicing of the loan. The dates are specified in the Purchase and Sale Agreement between the buyer and seller of servicing rights.

- The buyer purchases the servicing rights on the Sale Date, and the buyer physically begins servicing the loans on the Transfer Date.
- The transfer on the MERS® System takes place on the Transfer Date if all necessary confirmations have been made.



- The transfer batch on the MERS® System is cancelled 30 calendar days after the Transfer Date or transfer batch creation date, whichever is later, if all necessary confirmations have not been made.

### *Investor Confirmation*

An Investor may choose to confirm seasoned TOS transactions for loans on which they are the Investor. The approval option is set by MERSCORP Holdings in Member Information. This approval option applies to seasoned TOS only.

### *Milestones Updated*

The milestones generated for MINs that transfer successfully in a seasoned TOS are labeled “Transfer of seasoned servicing rights.”

## Involuntary Transfer/Default by Servicer – Loans Transferred to a MERS® System Member

Note: The system currently represents an involuntary transfer as a default by the Servicer, although there may be more reasons for an involuntary transfer than the Servicer defaulting.

- The Involuntary Transfer/Default by Servicer TOS in which loans are transferred to a MERS® System Member is processed by MERSCORP Holdings for most Members.
- The Investor contacts the MERSCORP Holdings corporate offices when they have made a decision to transfer servicing from a Servicer on the MERS® System. The Investor identifies the current Servicer, new Servicer, Sale Date, and Transfer Date.
- The Investor may ask MERSCORP Holdings to temporarily set the Lockout Flag for the Servicer. When the Lockout Flag is set for a Member, that Member is not able to log on to MERS® OnLine or perform any transactions on the MERS® System, including X12 or flat file transactions. A more specific Lockout may be set to affect all loans on the MERS® System that are associated with that Servicer for that Investor. MERSCORP Holdings will notify via email all Members impacted by the Lockout.
- The Investor instructs MERSCORP Holdings which loans to transfer.
- If any loans included in the involuntary transfer/default by Servicer transaction also exist in another TOS batch, MERSCORP Holdings assumes the role of the initiator of the pending TOS batch and deletes these MINs from the pending transaction. All parties involved in the canceled TOS batch will receive a *Canceled Transfer of Servicing Rights (SG) Report*.



- MERSCORP Holdings initiates a transfer of servicing transaction based on instructions from the Investor.
- The Investor confirms the transfer of servicing transaction if it has noted on its *Member Profile* that it wishes to approve servicing transfers.
- The new Servicer is also required to confirm the transfer of servicing.
- Reporting and milestone generation are identical to the other transfer of servicing processes.
- If the old Servicer has a Subservicer, MERSCORP Holdings assumes the role of that Subservicer and creates separate transfer of servicing transactions on behalf of the Subservicer. The current Subservicer may also be instructed to perform the transfers.
- MERSCORP Holdings may give Option 1 Investors access to an *Option 1 TOS* transaction for default by Servicer. The Option 1 TOS allows the current Investor on a loan to complete a Transfer of Servicing transaction without confirmation being required from either the old or new Servicer.
    - Once this transaction type is authorized by MERSCORP Holdings for their organization, the Option 1 Investor can create Option 1 TOS transactions in MERS® OnLine, or through flat files or EDI transactions.
    - An Option 1 TOS batch cannot be confirmed, rejected, or modified, but it may be cancelled by the initiator if it was created in error.
    - An Option 1 TOS cannot be performed on:
        - A MIN where the Servicer and Investor are the same (use TOS or TOS/TOB transaction instead).
        - A MIN in a pending Option 1 TOB batch.
        - A MIN in a pending Option 2 TOB batch initiated by the Investor (Investor can cancel TOB batch and then create Option 1 TOS batch).
    - A MIN included in an Option 1 TOS batch will be removed from any existing transfer batch, and will not be allowed to be included in any new transfer batch, initiated by the Servicing Member:
        - Option 2 TOB
        - TOS
    - A MIN will be automatically removed from a pending Option 1 TOS batch if it is included in a new Option 1 TOB batch.
    - The Member Options page in MERS® OnLine denotes if a Member is allowed to perform Option 1 TOS transactions.



# Involuntary Transfer/Default by Servicer - Loans Transferred to a non-Member Servicer

See *Deactivations* chapter, *Involuntary Transfer/Default by Servicer* section.

**During the creation of a TOS batch…**

***If a MIN already exists in an Option 2 TOB batch***, and the New Investor Org ID for the TOB batch is the same as the New Servicer Org ID for the TOS batch, then that MIN cannot be rejected from the TOS batch.

***If SOME MINs in the TOS batch are also in an Option 1 TOB batch,*** the system will:

- Delete the duplicate MINs from the pending TOS batch.
- Create a new TOS batch containing the duplicate MINs.
- Carry over confirmation settings to the new batch (for example, if you have confirmed the transfer for three MINs, those three MINs will show a confirmed status).
- Set the Agency ID for each MIN in the new batch to match the value (if any) in the TOB Option 1 batch.
- Report the duplicate MINs on the *MINs Deleted from Pending TOS Rights (SI) Report.*

The current Servicer/Subservicer should remind the new Servicer/Subservicer that the duplicate MINs are in a new TOS batch, and any changes to confirmations or rejections must be completed before the transfer occurs.

***If ALL MINs in the TOS batch are also in an Option 1 TOB batch***, the system will:

- Update the Investor of the existing TOS to the new Investor in the TOB Option 1.
- Set the Agency ID for each MIN in the new batch to match the value (if any) in the TOB Option 1 batch.

**On the Transfer Effective Date…**
(or in the current processing cycle if the Transfer Date is less than the current date) the system will:

- Remove from the batch all confirmed MINs.
- Update the rights holder for all confirmed, active MINs.
- Update milestones for each transferred MIN.
- Mark these MINs as transferred on the *Physical Transfer of Rights (SC) Report.*
- Remove from the batch all rejected MINs (all MINs with at least one confirmation indicator set to "N") and MINs removed by the system due to the MIN becoming deactivated or re-registered with a different Servicer
- Mark these MINs as rejected or removed on the *Physical Transfer of Servicing Rights (SC) Report.*



- If there are any remaining unconfirmed MINs left in the batch, the system will change the batch status to "Overdue" and list only the remaining MINs on the *Overdue Transfer of Servicing Rights (SE) Report.*

Note: The *Physical Transfer of Servicing Rights (SC) Report* is NOT cumulative. You must review it each time it is produced to evaluate the activity from the previous cycle.

**After the Transfer Effective Date…**

For each processing cycle, the system will:

- Remove from the overdue batch all newly confirmed MINs.
- Update the rights holder for these MINs.
- Update milestones for each transferred MIN.
- Mark these MINs as transferred on the *Physical Transfer of Servicing Rights (SC) Report.*
- Remove from the batch all MINs newly rejected by the confirming Member (all MINs with at least one confirmation indicator set to "N") and MINs removed by the system due to the MIN becoming deactivated or re-registered with a different Servicer.
- Mark these MINs as rejected or removed on the *Physical Transfer of Servicing Rights (SC) Report*.

  If there are any remaining active, unconfirmed MINs in the overdue batch, they will be listed on the *Overdue Transfer of Servicing Rights (SE) Report*.

  If there are unconfirmed MINs in a batch 20 calendar days after the Transfer Effective Date, the system will display a message on the Welcome page for both the initiating and confirming Members.

**On the Transfer Expiration Date…**
(30 calendar days from the Transfer Date or from the Creation Date if Transfer Date is prior) the system will:

- Produce the *Expired Transfer of Servicing (SD) Report* listing any unconfirmed MINs.
- Mark the batch as "Pending Delete" and stop all further processing on the batch.

# Procedure: Transfer of Servicing Rights

The seller must initiate all **Transfer of Servicing Rights** transactions within seven (7) calendar days of the *Effective Transfer Date*.

Note: If a specific Investor's requirements are more stringent than the MERS® System requirements, the Investor's requirements supersede those of the MERS® System.

1. The current Servicing Member (or Investor for an Option 1 TOS) initiates the transfer transaction by entering the following loan transfer information:



- Sale Date (used for seasoned transfer only)

  The Sale Date may be a future date or up to 60 calendar days prior to the transaction creation date. On a Flow TOS, Transfer Date is used for Sale Date.
- Transfer Date
- Org ID of current Investor
- Org ID of current Servicer
- Org ID of current Subservicer (if applicable)
- Org ID of new Servicer
- Org ID of new Subservicer (if applicable)
- Org ID of new Custodian (if applicable)
- MIN(s)

2. The MERS® System validates the information.
3. The current and new Servicer, Subservicer, Investor, Document Custodian, and Interim Funder of the loans to be transferred receive and review a *Pending Transfer of Servicing Rights (SA) Report* every day the transfer is in a pending status.
4. The old and new Servicers reconcile the transfer information.
5. The new Servicing Member confirms the transfer (except for an Option 1 TOS).
6. On a seasoned **Transfer of Servicing Rights** transaction, the Investor confirms the transfer (if applicable).
7. The transfer takes place on the Transfer Date.
8. If a Warehouse/Gestation Lender appeared on the MIN before the transfer, it is removed.
9. If a Property Preservation Company appeared on the MIN before the transfer, it is removed.
10. The **Transfer of Servicing Rights** transaction appears on the MIN-level milestones.
11. The current and new Servicer, Subservicer, Investor Document Custodian, and Interim Funder receive a *Physical Transfer of Servicing Rights (SC) Report.*
12. All Associated Members on the MIN receive the *MIN Milestone Report for Associated Members (VA)*.

---

Note: If you create a transfer Batch that has missing MINs, or MINs that shouldn't be included, use the **Modify Batch** option on MERS® OnLine to correct it while the Batch is in pending or overdue status. This activity will produce a *Modified Batch –Transfer of Servicing Rights (SJ) Report.*

---



Once this transaction is complete, the seller no longer has update access to transferred loans. If the transfer is still not confirmed 30 calendar days after the Transfer Date, the seller remains in the Servicer field on the MERS® System.

## Reports

The following reports are generated during the **Transfer of Servicing Rights** process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Pending Transfer of Servicing Rights (SA)*
- *Modified Batch – Transfer of Servicing Rights (SJ)*
- *Physical Transfer of Servicing Rights (SC)*
- *Expired Transfer of Servicing Rights (SD)*
- *Overdue Transfer of Servicing Rights (SE)*
- *Transfer of Servicing Rejects/Warnings (SF)*
- *Canceled Transfer of Servicing Rights (SG)*
- *Current Investor Changed for Pending TOS Rights (SH)*
- *MINs Deleted from Pending TOS Rights (SI)*
- *MIN Milestone Report for Associated Members (VA)*



# TOS/TOB Combination

## Overview

This chapter describes how to perform a single transaction, called a *TOS/TOB Combo*, to reflect a Transfer of Servicing Rights (TOS) and an Option 2 Transfer of Beneficial Rights (TOB). The transaction has the same requirements and undergoes the same processing criteria as the TOS and TOB Option 2 transactions outlined in the *Transfer of Servicing Rights* and *Transfer of Beneficial Rights* chapters.

Both beneficial and servicing rights must be transferring from a single Member to a single Member, but you can also designate a new Subservicer. You can designate a new Document Custodian, or delete all Document Custodians on the MINs in the TOS/TOB Combo batch.

Like the TOS, the TOS/TOB Combo only generates a transaction fee if the transfer date is more than 270 days after the Note Date.

A MIN contained in a TOS/TOB Combo may exist simultaneously in an Option 1 TOB. However, any MIN contained in a TOS/TOB Combo cannot exist simultaneously in another TOS or an Option 2 TOB.

This transaction may only be initiated by the current Servicing Member on the MIN, and may be performed either in MERS® OnLine or by EDI X12/Flat File.

## Impact

The transfer of servicing rights process potentially impacts the following Members:

- Servicers
- Subservicers
- Investors
- Document Custodians
- Associated Members

## QA Plan Requirements - TOS/TOB Combinations

The following QA standards apply to **TOS/TOB Combination** transactions:

- Verify that all loans bought or sold were/are set up in a combined transfer batch within seven (7) calendar days of the *Effective Transfer Date*.
- Verify that the batches for all loans sold during the previous month were accepted by the Investor/buyer, or confirmed by Member if the MINs are being purchased, prior to



the expiration date of the batch (within 30 days of the Sale Date or batch creation date, whichever is later).

- Verify with the purchaser of any loans sold, the status of any rejected MINs or batches, and if necessary, make any corrections to the batch or MIN level detail to allow acceptance of the transfer by the Investor/buyer (or delete batch and create corrected batch, if applicable).

- If the purchaser is a Member, validate that the MINs in the transfer batch(es) are correct and accept the MINs or batches prior to the batch expiration date or report any discrepancies to the seller and reject those MINs or batches.

# Transfer Dates

The Member that creates the TOS/TOB Combo transaction identifies both a Transfer Date and Beneficial Rights Transfer Date. The Transfer Date may be up to 180 days after, or up to 30 days before, the transfer creation date. The Beneficial Rights Transfer Date cannot be later than the TOS date, but may be a retroactive date within 60 calendar days of the transaction creation date.

The transfer dates may be changed any time prior to the transfer completion date by the Member that created the transaction, and the entire batch may be canceled by the Member that created the transaction any time before it is confirmed by the receiving Member.

All MINs identified in the TOS/TOB Combo transaction must be **Active (Registered)**. If a MIN's Note Date is 270 or fewer calendar days before the transaction effective date, the MIN is processed in a Flow TOS/TOB batch; if the Note Date is more than 270 calendar days before the transaction effective date, the MIN is processed in a Seasoned TOS/TOB batch, and the transferring Member is billed the applicable fee.

**If SOME of the MINs in the pending TOS/TOB batch also exist in a TOB Option 1 batch, the system will:**

- Delete the duplicate MINs from the pending TOS/TOB batch.

- Report the duplicate MINs on the *MINs Deleted from Pending TOS Rights (SI) Report* and the *MINs Deleted from Transfer of Beneficial Rights (BH) Report.*

- Create a new Flow TOS batch containing any duplicate MINs with a Note Date that is 270 or fewer calendar days before the transfer date. The MINs left in the original TOS/TOB are not affected.

- Carry over confirmation settings to the new batch (for example, if you have confirmed the transfer for three MINs, those three MINs will show a confirmed status).

- Set the Agency ID for each MIN in the new batch to match the value (if any) in the TOB Option 1 batch.



The current Servicer/Subservicer should remind the new Servicer/Subservicer that the duplicate MINs are in a new TOS batch, and any changes to confirmations or rejections must be completed before the transfer occurs.

**If ALL MINs in the pending TOS/TOB batch are also in an Option 1 transfer of beneficial rights batch, the MERS® System will:**

- Delete any seasoned MINs from the pending TOS/TOB batch.
- Report the deleted MINs on the *MINs Deleted from Pending TOS Rights (SI) Report* and the *MINs Deleted from Transfer of Beneficial Rights (BH) Report*.
- Change the transfer type of the batch from TOS/TOB Combo to Flow TOS. This batch will retain the original batch number.
- Update the Investor of the Flow TOS batch to the new Investor named in the TOB Option 1.
- Set the Beneficial Transfer date to null since it will not be used in the resulting Flow TOS.
- Set the Agency ID for each MIN in the new batch to match the value (if any) in the TOB Option 1 batch.

Once a transfer is created and pending, all parties named in the batch can view the pending transaction using the **View List of Batches** feature in MERS® OnLine.

Once a transfer is created:

- The transfer initiator can:
  - Add MINs using **Modify Batch** any time before the transfer is completed.
  - Delete MINs from the batch using **Modify Batch**, as long as the MINs have not yet been confirmed by the receiving party.
  - Change the Transfer Date.
  - Cancel the entire batch any time prior to the completion of the batch.
- The new or old Servicer/Investor can confirm or reject loans from the batch at any time prior to the Transfer Date.
- The Investor loan and pool numbers can be changed by the new Investor to reflect its own information.
- If the initiating Member named an incorrect Document Custodian or Subservicer in the batch, the batch must be cancelled and recreated.
- Any deactivation transaction submitted for a MIN in a pending TOS/TOB batch transfer is not processed except one submitted by the MERS® eRegistry.



# Procedure: TOS/TOB Combination

The seller initiates the TOS/TOB Combo either in MERS® OnLine or via batch.

- The Sale Date will default to the Transfer Date entered. A seasoned TOS/TOB will use the Sale Date if one is entered; a flow TOS/TOB will ignore any Sale Date entered and use the Transfer Date.
- The Transfer Date and Beneficial Rights Transfer Date field values can be changed any time prior to transfer completion by the Member that created the TOS/TOB transaction.
- The transfer can be canceled any time prior to transfer completion by the Member that created the transaction.
- The current Investor and the current Servicer must have the same Org ID.
- The MIN Information window will reflect that a MIN currently exists in a pending TOS/TOB batch.
- The TOS batch confirmation transaction will be used to confirm the TOS/TOB Combo transaction. A TOS/TOB combo transaction can be confirmed via MERS® OnLine or through a flat file/EDI X12 transmission.
- The New Servicer/Investor only confirms the servicing rights transfer; the beneficial rights transfer does not have to be confirmed separately.
- The old or new Servicer/Investor may reject the transfer by MIN, Pool Number or batch any time before the Transfer Date.
    - If you reject the transfer as the new Servicer/Investor, using MERS® OnLine, you can choose from a dropdown list of Reject Reasons. Specific definitions for these Reject Reasons are determined by each Servicer/Investor.
- Both the beneficial rights and the servicing rights will transfer to the party named in the New Servicer/Investor field.
- The TOS/TOB transaction will not allow the party named in the new Servicer/Investor field to be an Option 1 Investor.
- The completed TOS will remove any Warehouse/Gestation Lender's interest from the MINs.
- The completed TOS will remove Property Preservation Company Associated Members from the MINs.
- Two milestones will be added for each TOS/TOB transaction: one for the Servicing Rights Transfer, and one for the Beneficial Rights transfer.
- TOS/TOB Combo transactions will be recorded on the Transfer of Servicing Reports.
- The MERS® System will cancel the remaining MINs in a TOS/TOB Combo transaction on the transfer deletion date (31 calendar days after the servicing rights



Transfer Date, or 31 calendar days after the servicing rights transfer creation date if the servicing rights Transfer Date is retroactive).

- For MINs in a TOS/TOB Combo transaction where the transaction is canceled, the system will automatically reverse the servicing rights transferred at the Sale Date.

- If a transfer of servicing batch is not confirmed by the Transfer Date, the loan status on MERS® System reflects an overdue status.

- The current and new Servicer, Subservicer, Investor, Document Custodian, and Interim Funder receive a *Physical Transfer of Servicing Rights  (SC) Report.*

- All Associated Members on the MIN receive the *MIN Milestone Report for Associated Members (VA).*

# Reports

The following reports are generated during the TOS/TOB Combination process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Canceled Transfer of Beneficial Rights (BG)*

- *Canceled Transfer of Servicing Rights (SG)*

- *Current Investor Changed for Pending TOS Rights (SH)*

- *Expired Transfer of Beneficial Rights (BD)*

- *Expired Transfer of Servicing Rights (SD)*

- *Investor Removed by Option 1 TOB (BI)*

- *MIN Milestone for Associated Members (VA)*

- *MINs Deleted from Transfer of Beneficial Rights (BH)*

- *MINs Deleted from Pending TOS Rights (SI)*

- *Modified Batch – Transfer of Servicing Rights (SJ)*

- *Overdue Transfer of Servicing Rights (SE)*

- *Pending Transfer of Servicing Rights (SA)*

- *Physical Transfer of Servicing Rights (SC)*

- *Summary of Transfer of Beneficial Rights Rejects (BJ)*

- *Transfer of Beneficial Rights Rejects (BF)*

- *Transfer of Servicing Rejects/Warnings (SF)*



# Registered Loans in Rated Securities

## Overview

Loans registered on the MERS® System may be included in rated securities issued by MERS® System Members. Assignments normally recorded naming the Trustee as the *Mortgagee* are largely eliminated for the *MERS Loans* in the securitization.

The securitization may include loans registered on the MERS® System and unregistered loans. For the MERS Loans included in the securitization, the Trustee must be named as the current Investor on the MINs. The Trustee does not need to be an active Investor on the MERS® System; it may choose to be a passive Investor and let the MERS® System process the confirmations automatically.

A Trustee that is a MERS® System Member should supply its Org ID to the Member issuing the securitization.

For non-Agency securitizations, the Trust name must be included in the Securitization field on the MERS® System.

## Impact

This process potentially impacts all Members.

## QA Plan Requirements - Loans in Rated Securities

Under the MERS® System QA Plan, loans in Rated Securities are subject to the standards, requirements, and validations of the corresponding loan type (i.e., *MOM*, *Non-MOM*, or *iRegistration*).

## Procedure: Registered Loans in Rated Securities

**ISSUER:**

1. Obtain the MERS® System Org ID for the securitization Trustee from the Trustee.

2. Pool loans and issue Securitization.

3. Identify the MERS® System registered loans included in the Securitization.

4. Process a TOB Option 2 transaction naming the Securitization Trustee as the new Investor. If the Trustee is not a MERS® System Member, complete a transfer to ORG ID 1000002 – "Undisclosed Investor".

5. For non-Agency securitizations, place the Trust name in the Securitization field.



**TRUSTEE:**

1. Supply the MERS® System Org ID to Issuer.

2. Confirm the TOB Option 2 transaction (if acting as active Investor).

3. Review and reconcile the MERS® System reports.

**CUSTODIAN:**

1. Review and reconcile the MERS® System reports.

# Reports

The following reports are generated as a result of the Registered Loans in Rated Securities process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Transfer of Beneficial Rights Rejects (BF)*

- *Pending Transfer of Beneficial Rights (BA)*

- *Overdue Transfer of Beneficial Rights (BC)*

- *Physical Transfer of Beneficial Rights (BB)*

- *Maintenance Verification (MA)*

- *Maintenance Rejects/Warnings (MB)*



# Deactivations

## Overview

This chapter explains the processes for deactivating a loan on the MERS® System. Loans are deactivated when MERS no longer holds any interest in the Mortgage (e.g. the lien has been released, the Mortgage has been assigned from MERS, the lien has been stripped or extinguished due to bankruptcy or foreclosure) or an iRegistration is no longer being tracked on the MERS® System.

A *Deactivation* can be reversed if it was performed in error; see the *Deactivation Reversals* chapter.

If a loan that was deactivated because the Mortgage was assigned from MERS and subsequently the Mortgage is assigned back to MERS, the loan must be re-registered; see *Re-registration After Deactivation.*

## Default by Servicer

The Default by Servicer deactivation transaction is performed by an Investor to transfer servicing from the current Servicer to a non-Member due to the current Servicer's default.

The *Create Option 1 TOS (Default by Servicer)* transaction is performed by an Agency Investor to transfer servicing from the current Servicer to another Member Servicer due to the current Servicer's default.

### *Impact*

The **Default by Servicer** process affects the following Members:

- Servicers

- Subservicers

- Investors

- Custodians

- Associated Members

Although an involuntary transfer affects these parties, only the Investor can initiate an involuntary transfer deactivation.



## Procedure: Default by Servicer

The Investor performs the following steps:

1. Select **Default by Servicer** as the deactivation reason on the MERS® System.
2. Enter the Servicer's information:
    - Current Servicer Org ID
    - Current Subservicer Org ID
    - New Servicer Org ID (9999999)
    - New Subservicer Org ID, if applicable (9999999)

   Note: "Non-MERS Servicer" is listed on the Organization Lists that displays when you click on the Servicer field.
3. The MERS® System updates the new Servicer and Subservicer if present.
4. The **Default by Servicer** deactivation appears on the MIN-level milestones.
5. The MERS® System sends a report to the Investor, Servicer, Subservicer, Custodian, and Interim Funder (if applicable).
6. The Investor sends the executed *Assignment from MERS* for *Recordation* and adheres to the assignment processing procedures described in this manual.
7. If the Mortgage is later assigned back to MERS, it can be re-registered (see *Re-registration after Deactivation*).

## Reports

The following reports are generated during the **Default by Servicer** deactivation process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Deactivation Summary (DD)*
- *Default by Serv/Subserv - Servicing Transferred to Non-MERS Member Verification (DM)*
- *MIN Milestone Report for Associated Members (VA)*

# Foreclosure and Bankruptcy

The following requirements apply to foreclosure and bankruptcy processing on the MERS® System:

- The process is initiated when an event or action occurs, in the Member's *System of Record* (Investor's or Servicer's), that represents the decision to either:
    - Initiate foreclosure proceedings, whether judicial or non-judicial.
    - File a Proof of Claim or a Motion for Relief from Stay in a bankruptcy ("Legal Proceedings").



- If MERS is the Mortgagee, the Investor or Servicer must ensure that an Assignment from MERS is prepared, executed by a MERS Signing Officer to the entity selected by the Investor, and then promptly sent, in recordable form, for *Recordation* at the Servicer's expense.
- The assignment of the Security Instrument from MERS must be executed *before* initiating any foreclosure proceedings or filing of Legal Proceedings. Additionally, the assignment must be:
  - Executed, notarized, and witnessed (if applicable)
  - In recordable form
  - Promptly sent for Recordation
  - Compliant with all applicable laws, regulations and rules

## Impact

This process potentially impacts the following Members:

- Servicers
- Subservicers
- Investors
- Trustees
- Associated Members

## MOM and Non-MOM Loans

Before initiating any foreclosure or bankruptcy action, a Member must ensure that an Assignment from MERS is prepared, executed, and then promptly sent for *Recordation*.

**Important:** Each jurisdiction defines its own requirements as to what constitutes the initiation of a foreclosure. Therefore, it is incumbent upon the Member and its counsel to determine what the particular jurisdictional requirements are where a MERS Loan is to be foreclosed and, given those requirements, ensure that MERS has assigned its interests in the Mortgage before the foreclosure is initiated.

### Foreclosure Processing Requirements

The following foreclosure processing requirements apply to MOM and Non-MOM loans on the MERS® System:

- The Investor determines whether foreclosure proceedings are to be conducted in the name of the Servicer or another party.
- Report the foreclosure activity on the MERS® System using the **Deactivate-Assigned from MERS for Default or Bankruptcy** transaction no later than seven (7) calendar



days after the event or action occurs, in the Member's *System of Record*, that represents the decision to initiate foreclosure.

- If an Assignment from MERS is sent for Recordation but foreclosure is not initiated (e.g. borrower reinstates the loan), ***and*** the MIN is still in **Active** status, the MIN status must be updated to **Transfer to Non-MERS Status**.
- If a loan that has been **Assigned from MERS for Default or Bankruptcy** is assigned back to MERS (e.g. because it reinstates), you must re-register it as a Non-MOM; see *Re-registration after Deactivation*.
- If a loan that has been **Assigned from MERS for Default or Bankruptcy** is not assigned back to MERS, but you want to track it on the MERS® System, see *iRegistration after Deactivation*.
- If the **Deactivation-Assigned from MERS for Default or Bankruptcy** or **Foreclosure Complete** status was entered in error, you will need to reverse the deactivation (see *Deactivation Reversals*).

- A **Foreclosure Complete** deactivation can also cascade to the MERS® System from the MERS® eRegistry when the eNote is charged off. This transaction appears as **Foreclosure Complete – eReg** on reports, milestones, and audit history.
- For loans in a Pending Option 2 foreclosure status, where foreclosure was initiated prior to the Rule 8 change in July 2011:
  - If the reasons for foreclosure are resolved and the loan reinstates, use the **Reinstated or Modified Option 2** option to reflect that the pending foreclosure has stopped and the loan has reinstated.
  - If the foreclosure is completed, use the **Foreclosure Complete** option to deactivate the loan on the MERS® System. (For loans sold to a third party, see *Paid in Full*.)
  - If the **Foreclosure Pending Option 2** status was entered in error, use the **Foreclosure Status Reset** option to place the loan in an active (not in foreclosure) status.

Refer to the *Glossary* for a list of the various Foreclosure Statuses.

## *Bankruptcy Processing Requirements*

The following bankruptcy processing requirements apply on the MERS® System:

- If a borrower files Bankruptcy and the Servicer chooses **not** to file a Proof of Claim or Motion for Relief from Stay, a MIN must stay in an active status.
- If a borrower files bankruptcy and the Servicer chooses to file a Proof of Claim or Motion for Relief from Stay, then the Servicer must:
  - Ensure that prior to the filing an Assignment from MERS is prepared, executed pursuant to the Member's current Corporate Resolution, and then promptly sent, in recordable form, for *Recordation* at its expense.



- Complete the **Deactivate-Assigned from MERS for Default or Bankruptcy** transaction no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the decision to file the Proof of Claim or Motion for Relief from Stay.

## iRegistration Loans

Members are not required to report foreclosure activity for iRegistration loans on the MERS® System.

- If a Member opts to track iRegistration foreclosures on the MERS® System, the following foreclosure requirements apply:
  - Report the foreclosure activity on the MERS® System using the **Foreclosure Pending (Option 3), iRegistration** option.
  - If the reasons for foreclosure are resolved and the loan reinstates, use the **Reinstated or Modified (Option 3), iRegistration** option to show that the pending foreclosure has stopped and the loan has reinstated.
  - If the foreclosure is completed, use the **Foreclosure Complete** option to deactivate the loan on the MERS® System. (For loans sold to a third party, see *Paid in Full*.)
  - If the **Foreclosure Pending Option 3** status was entered in error, use the **Foreclosure Status Reset** option to place the loan in an active (not in foreclosure) status.
  - The **Foreclosure Status Reset** option also can be used to reset the foreclosure status for an iRegistration in **Reinstated or Modified Option 3** status if it is assigned to MERS and needs to be converted to a Non-MOM, because an iRegistration cannot be converted while it is in **Reinstated or Modified Option 3** status.
- If a Member opts to **not** track iRegistration foreclosure activity, when the foreclosure process is complete, deactivate the MIN using the **Transfer to Non-MERS Status** or **Registration Reversal** transaction. See the iRegistration *Overview* for guidance on using each transaction.

## QA Plan Requirements - Foreclosures

The QA standards, document requirements, and data validations under the MERS® System QA Plan for foreclosures are covered under the following sections:

- *Foreclosure QA Standards*
- *Foreclosure Document Requirements*
- *Foreclosure Data Validations for MERS® System*



## Foreclosure QA Standards

- For MOM and Non-MOM loans, ensure that an Assignment from MERS is prepared, executed, and then promptly sent, in recordable form, for *Recordation* before foreclosure is initiated.
- Change the MIN status to **Deactivation-Assigned from MERS for Default or Bankruptcy,** for MOM and Non-MOM loans, no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the decision to initiate foreclosure.
- If an Assignment from MERS is sent for Recordation but foreclosure is not initiated (e.g. borrower reinstates the loan), ***and*** the MIN is still in **Active** status, the MIN status must be updated to **Transfer to Non-MERS Status**.

Note: If an Assignment from MERS is sent for Recordation but foreclosure is not initiated, and the MIN status was updated to **Deactivation-Assigned from MERS for Default or Bankruptcy**, no further update to the MIN is required by the Member.

- Members may, but are not required to, report foreclosure activity for iRegistration loans on the MERS® System.
- For a MIN in a Pending status, change its status to **Foreclosure Complete** or **Foreclosure Reinstated** no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the completion of foreclosure or the reinstatement of the loan.

## Foreclosure Document Requirements

- Member supplies proof that foreclosure was initiated (for MERSCORP Holdings Document Review).
- For MOM and Non-MOM loans:
  - Member supplies proof that the Assignment from MERS was executed before foreclosure was initiated and that MERS was removed from the applicable public land records.
  - Assignment from MERS:
    - Contains the correct MIN placed in a visible location on the first page of the Assignment.
    - Contains the SIS Phone Number placed correctly on the Assignment.
    - Contains the correct address for MERS if required by the applicable jurisdiction.
    - Conforms to the Signing Officer Requirements. For details, refer to *Signing Officer Requirements*.

    For further details, see the appropriate sections under *Additional Document Requirements*.



- For foreclosures initiated in the name of MERS (allowed prior to July 22, 2011):
  - If property went to sale, MERS was not left in title on sale documentation (unless in a state where this was temporarily allowed).
  - If title was deeded to MERS temporarily, immediately send for Recordation the subsequent deed that removes MERS from title once the sale is complete.

- For iRegistration loans:
  - No MIN, SIS Phone Number, or other reference to MERS placed on documents.

### Foreclosure Data Validations for MERS® System

- Foreclosure status transacted on the MERS® System matches foreclosure documentation.
- MIN status updated to **Deactivation-Assigned from MERS for Default or Bankruptcy**, for MOM or Non-MOM loans, no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the decision to initiate foreclosure.
- Pending option in the MERS® System matches documentation.
- For a MIN in a Pending status, change its status to **Foreclosure Complete** or **Foreclosure Reinstated** no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the completion of foreclosure or the reinstatement of the loan.

## QA Plan Requirements - Bankruptcy

The QA standards, document requirements, and data validations under the MERS® System QA Plan for bankruptcies are covered under the following sections:

- *Bankruptcy QA Standards*
- *Bankruptcy Document Requirements*
- *Bankruptcy Data Validations for MERS® System*

### Bankruptcy QA Standards

- If a borrower files bankruptcy and the Servicer chooses **not** to file a Proof of Claim or Motion for Relief from Stay and MERS remains Mortgagee, the MIN must remain in an active status on the MERS® System.

> Note: Once an Assignment from MERS is sent for Recordation and the MIN status is set to **Deactivation-Assigned from MERS for Default or Bankruptcy**, no further update to the MIN is required by the Member.



- If a borrower files bankruptcy and the Servicer chooses to file a Proof of Claim or Motion for Relief from Stay, then:
  - The Servicer must ensure that prior to filing an Assignment from MERS is prepared, executed by a MERS Signing Officer, and then promptly sent, in recordable form, for *Recordation* at its expense.
  - Change the MIN status to **Deactivation-Assigned from MERS for Default or Bankruptcy** for MOM and Non-MOM loans no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the Member's decision to file the Proof of Claim or Motion for Relief from Stay.

## *Bankruptcy Document Requirements*

- Member supplies proof that an Assignment from MERS was executed and sent for *Recordation* before bankruptcy was initiated.
- Member supplies proof that bankruptcy was initiated (Proof of Claim or Motion for Relief from Stay).
- If a borrower files bankruptcy and the Servicer chooses to file a Proof of Claim or Motion for Relief from Stay, then the Servicer must ensure that, prior to the filing an Assignment from MERS is prepared, executed by a MERS Signing Officer, and then promptly sent, in recordable form, for Recordation at its expense.
- Assignment from MERS:
  - Contains the correct MIN placed in a visible location on the first page of the Assignment.
  - Contains the SIS Phone Number placed correctly on the Assignment.
  - Contains the correct address for MERS if required by the applicable jurisdiction.
  - Conforms to the Signing Officer Requirements. For details, refer to *Signing Officer Requirements*.

For further details, see the appropriate sections under *Additional Document Requirements*.

## *Bankruptcy Data Validations for MERS® System*

- Bankruptcy status transacted on the MERS® System matches bankruptcy documentation.
- Pending option in the MERS® system matches documentation.
- MIN status updated to **Deactivation-Assigned from MERS for Default or Bankruptcy** on MOM or Non-MOM loans no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the Member's decision to file the Proof of Claim or Motion for Relief from Stay.



- If a borrower files bankruptcy and the Servicer chooses **not** to file a Proof of Claim or Motion for Relief from Stay and MERS remains the Mortgagee, the MIN remains in an active status on the MERS® System.

## Procedure: Foreclosure and Bankruptcy

1. The Investor determines whether foreclosure proceedings are conducted in the name of the Servicer, or a different party designated by the Investor, or if a Proof of Claim or Motion for Relief from Stay will be filed.
2. If MERS is the Mortgagee, the Member (Servicer, Subservicer, Investor, or Vendor), through its Signing Officer, executes an *Assignment from MERS* before initiating the foreclosure, filing a Proof of Claim, or filing a Motion for Relief from Stay and promptly sends it for *Recordation*.
3. For a MERS Loan, the *Servicing Member* deactivates the MIN on the MERS® System no later than seven (7) calendar days after the event or action occurs, in the Member's *System of Record*, that represents the decision to initiate foreclosure or file a Proof of Claim or Motion for Relief from Stay using the **Deactivate-Assigned from MERS for Default or Bankruptcy** transaction.
4. For an iRegistration loan, if the Member will track the foreclosure on the MERS® System, the Servicing Member reports the foreclosure activity using the **Foreclosure Pending (Option 3), iRegistration** transaction and then:
   - Reinstates the loan if the default is cured using the **Reinstated or modified (option 3), iRegistration** transaction.
   - Deactivates the MIN using the **Foreclosure Complete** transaction when the foreclosure is complete.
5. For foreclosures initiated prior to July 2011:
   - If the MIN is in a **Foreclosure Pending (option 2)** status, the Servicer deactivates it on the MERS® System once the loan has been liquidated on the Member's System of Record using the **Foreclosure Complete** transaction.
   - If the default is cured, the Servicer updates the MIN on the MERS® System to reflect the reinstatement/modification using the **Reinstated or Modified (option 2)** transaction.
6. The Servicing Member may insert a Property Preservation Company Org ID, or the Property Preservation Company may insert itself, on the MIN even if it has a status of **Deactivation-Assigned from MERS for Default or Bankruptcy** or **Foreclosure Complete**.

## Reports

The following reports are generated during the foreclosure process. For a detailed description of each report, see the *MERS® System Reports Handbook*:



- *Foreclosure Verification (DA)*

- *Foreclosure Reject (DF)*

- *Past Due Foreclosure Terminations (DI)*

- *Deactivation Summary (DD)*

- *MIN Milestone Report for Associated Members (VA)*

# Paid in Full

# (Includes Short Sales, Deeds in Lieu, and Charge Offs not associated with a foreclosure completion)

The **Paid in Full** transaction is used to deactivate a MIN on the MERS® System when the Servicer accepts payoff funds for the loan and/or records a Lien Release. This also includes short sales, deeds-in-lieu, and potentially charge-offs not associated with a foreclosure completion. For example:

- If you write off the last $100 of a loan and release the lien, deactivate the MIN as **Paid in Full**.

- If you accept a Deed in Lieu of Foreclosure, deactivate the MIN as **Paid in Full**. MERS' interest in the lien must be released in the public land records. Depending upon the circumstances and the applicable law, when accepting a Deed in Lieu of Foreclosure it may also be necessary to execute and record a Lien Release. You should consult your legal counsel to ensure that the proper steps are taken to release MERS' interest.

- If a MOM Security Instrument is erroneously sent for *Recordation* on a loan that did not close, the lien must be released and the MIN deactivated as **Paid in Full**.

- If a Member decides to charge off a MERS Loan, the Member is responsible for consulting its legal counsel and then taking the proper steps to release MERS' interest. Until these steps are complete, the MIN must remain active on the MERS® System.

When the Servicer deactivates a MIN, its status changes to inactive, and the current date is set as the deactivation date. A MIN deactivated as **Paid in Full** cannot be reactivated, but the deactivation can be reversed if performed in error; see *Deactivation Reversals*.

Note: a **Paid in Full** deactivation also can be cascaded to the MERS® System from the MERS® eRegistry when the eNote is paid off. This transaction will appear as "Paid Off – eReg" on reports, milestones, and audit history.

## *Impact*

This process affects the following Members:



- Servicers
- Subservicers
- Investors
- Associated Members

## QA Plan Requirements - Paid in Full

The QA standards, document requirements, and data validations under the MERS® System QA Plan for Paid in Full deactivations are covered under the following sections:

- *Paid in Full QA Standards*
- *Paid in Full Document Requirements*
- *Paid in Full Data Validations for MERS® System*

### Paid in Full QA Standards

- For MOM and Non-MOM loans:
    - If the lien release is being signed by MERS, prepare the lien release document with MERS as Mortgagee for signature by a Signing Officer.
    - Ensure that the MIN and SIS Phone Number are placed correctly on the document, unless that placement does not comply with a local jurisdiction's recording requirements. In all cases, the jurisdiction's requirements take precedence over the MERS® System requirements. For details, refer to *Document Requirements - MERS Loans*.
    - Execute and promptly send for *Recordation* the lien release document in accordance with MERS® System, state and Investor guidelines.
- For iRegistration loans:
    - Do not include the MIN, SIS Phone Number, MERS address, or other reference to MERS on any document recorded in the public land records while the loan is an iRegistration, unless MERS was once the Mortgagee.
- For all loans, change the MIN status to **Paid in Full** and enter the Servicer Liquidation Date on the MERS® System no later than seven (7) calendar days after the payoff of the loan on the Member's *System of Record*.

### Paid in Full Document Requirements

- For MOM and non-MOM loans:
    - Approved MERS as Mortgagee language used on the Lien Release.
    - Correct MIN placed in a visible location on the first page of the document.



- SIS Phone Number placed correctly on the document.
- Correct address for MERS placed on the Lien Release if required by the applicable jurisdiction.
- On a Deed of Trust, do not appoint MERS as trustee. Generally, for a deed of trust, it is the trustee and not the beneficiary, who will reconvey the property back to the borrower(s) upon payment in full. MERS, as beneficiary, should not substitute itself as the trustee for the purpose of reconveying the property. MERS may substitute another party as the trustee and that new trustee may then execute a reconveyance.
- Executed Lien Release promptly sent for Recordation.
- If the Lien Release is signed by MERS, verify that it conforms to the *Signing Officer Requirements*.

- For iRegistration loans:
  - No MIN, SIS Phone Number, or other reference to MERS placed on any document recorded in the public land records while the loan is an iRegistration, unless MERS was once the Mortgagee.

For further details, see the appropriate sections under *Additional Document Requirements*.

If the loan is a co-op, these validations are performed on the UCC-3 instead of the Lien Release.

## Paid in Full Data Validations for MERS® System

- The MIN status is updated to **Paid in Full** on the MERS® System no later than seven (7) calendar days after the payoff of the loan on the Member's *System of Record*.
- The **Paid in Full** deactivation is reversed on the MERS® System, if performed in error, no later than seven (7) calendar days after discovering the error.

# Procedure: Paid in Full

Only the *Servicing Member* of a loan can enter a Paid in Full deactivation.

1. The Servicing Member receives payment in full.
2. The Servicing Member processes a deactivation on the MERS® System indicating the loan has been **Paid in Full**.
3. The **Paid in Full** deactivation appears on the MIN-level milestones.
4. The Servicing Member prepares and records the lien release.

   For MOM and Non-MOM loans, MERS must be named as the current Mortgagee on the lien release documents, and the MIN and SIS Phone Number must be included on the documents as described in the *Paid in Full QA Standards*.



5. If applicable, the Member is also responsible for notifying the MERS® System that a mortgage previously reported as **Paid in Full** has not been paid in full by performing a reversal on the MERS® System.
6. If MERSCORP Holdings is notified that a Lien Release has not been executed in compliance with the Procedures, it will provide written notice of such failure as follows:
   - To the Member shown on the MERS® System as the Servicing Member, in order to provide the Member(s) an opportunity to promptly cure the issue.
   - To the Investor, if the Servicing Member is unavailable or non-responsive.

   If the Member(s) fail to take such action or give MERSCORP Holdings written notice that the MERS Loan should not be released, then the *MERS Entities*, upon evidence that the lien should be released, reserve the right to release the lien. The Member(s) shall be subject to out-of-pocket costs in connection with the Lien Release and penalties as specified in the Rules.

## Reports

The **Paid in Full** process uses the following reports. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Paid in Full Verification (DK)*
- *Payoff Reject (DP)*
- *Deactivation Summary (DD)*
- *MIN Milestone Report for Associated Members (VA)*

# Transfer to Non-MERS Status

The **Transfer to Non-MERS Status** transaction is used to deactivate a loan in the following scenarios:

- A loan is sold to a Servicer who is not a MERS® System Member.
- A loan with MERS as the Mortgagee is assigned out of MERS.
- An iRegistration loan (*Flow Loan Registration* or *Seasoned Loan Registration*) that will no longer be tracked on the MERS® System. If an iRegistration was initially registered as a Flow Loan Registration, the **Transfer to non-MERS Status** transaction must be used to deactivate the loan; a seasoned iRegistration may be optionally deactivated using the **Registration Reversal** transaction.
- A junior lien is extinguished by the foreclosure of a first lien (e.g., the lien is extinguished but you still intend to collect on the now unsecured note; because the lien



is extinguished, even though no assignment is recorded, the loan must be deactivated on the MERS® System). Enter 9999999 for the New Servicer Org ID.

- A junior lien is extinguished by a lien stripping action in bankruptcy. Even though no assignment is recorded, the loan must be deactivated on the MERS® System. Enter 9999999 for the New Servicer Org ID.

- A Member resigns from the MERS® System.

- MERSCORP Holdings terminates the membership of a Member in the MERS® System.

For loans where MERS is the Mortgagee and an Assignment from MERS is required, the Servicer must ensure that an Assignment from MERS to the new Servicer or Investor is prepared, executed by a MERS Signing Officer, and then promptly sent, in recordable form, for *Recordation* at its own expense.

## Impact

This process affects the following Members:

- Servicers
- Subservicers
- Investors
- Associated Members

## QA Plan Requirements - Transfer to Non-MERS Status

The QA standards, document requirements, and data validations under the MERS® System QA Plan for the **Transfer to Non-MERS Status** deactivation are covered under the following sections:

- *Transfer to Non-MERS Status QA Standards*
- *Transfer to Non-MERS Status Document Requirements*
- *Transfer to Non-MERS Status Data Validations for MERS® System*

### Transfer to Non-MERS Status QA Standards

- If an Assignment from MERS is required as part of the **Transfer to Non-MERS Status** deactivation:
  - Prepare the document that transfers the interest in the Security Instrument from MERS to another entity (i.e., Assignment from MERS).



- Ensure that the MIN and SIS Phone Number are placed correctly on the assignment, unless that placement does not comply with a local jurisdiction's recording requirements. In all cases, the jurisdiction's requirements take precedence over the MERS® System requirements. For details, refer to *Document Requirements - MERS Loans*.
- Ensure that the document is executed and promptly sent for *Recordation*.

- Change the MIN status on the MERS® System to **Transfer to Non-MERS Status** no later than seven (7) calendar days after the event or action, in the Member's *System of Record*, that corresponds to the appropriate deactivation reason listed in the *Transfer to Non-MERS Status* section.

Note: If a junior lien is extinguished by the foreclosure of the first lien, or by a lien stripping action in bankruptcy, and the MIN for the junior lien is deactivated using the **Transfer to Non-MERS Status** transaction, an Assignment from MERS is not required for the junior lien.

## Transfer to Non-MERS Status Document Requirements

- Approved MERS as Mortgagee language used.
- Correct MIN placed in a visible location on the first page of the document.
- SIS Phone Number placed correctly on the document.
- Correct address for MERS placed on the Assignment from MERS if required by the applicable jurisdiction.
- The Assignment from MERS conforms to the *Signing Officer Requirements*.
- The Assignment from MERS is executed no later than seven (7) calendar days after the event or action in the Member's System of Record that caused the deactivation and promptly sent for Recordation.

For further details, refer to the *Assignment from MERS* section of the *Additional Document Requirements* chapter.

If the loan is a co-op, these validations are performed on the UCC-3 instead of the Assignment from MERS.

## Transfer to Non-MERS Status Data Validations for MERS® System

- The MIN status is updated to **Transfer to Non-MERS Status** on the MERS® System no later than seven (7) calendar days after the event or action in the Member's System of Record that caused the deactivation.
- The **Transfer to Non-MERS Status** deactivation is reversed on the MERS® System, if performed in error, no later than seven (7) calendar days after discovering the error.



## Transfer of Servicing and/or Beneficial Rights to a Non-Member

Many of the scenarios that involve the transfer of Servicing and/or Beneficial rights to a non- Member involve the **Transfer to Non-MERS Status** transaction. Refer to the following scenarios for guidance:

- To transfer **Servicing** rights only to a non-Member:
  1. Prepare and execute the Assignment from MERS and send it for *Recordation*.
  2. Perform a **Transfer to Non-MERS Status** transaction to deactivate the MIN.
- To transfer **Beneficial** rights only to a non-Member that does NOT require an Assignment from MERS:
  1. Perform a TOB Option 2 transaction to Org ID 1000002 (Undisclosed Investor) to transfer the Beneficial rights.
- To transfer **Beneficial** rights only to a non-Member that DOES require an Assignment from MERS:
  1. Prepare and execute the Assignment from MERS and send it for Recordation.
  2. Perform a TOB Option 2 transaction to Org ID 1000002 to transfer the Beneficial rights.
  3. Perform a **Transfer to Non-MERS Status** transaction to deactivate the MIN.
- To transfer **Servicing** rights to a non-Member and **Beneficial** rights to a Member:
  1. Prepare and execute the Assignment from MERS and send it for Recordation.
  2. Perform a TOB Option 2 transaction to the Member's Org ID to transfer the Beneficial rights.
  3. Perform a **Transfer to Non-MERS Status** transaction to deactivate the MIN.
- To transfer **Servicing** and **Beneficial** rights to non-Members:
  1. Prepare and execute the Assignment from MERS and send it for Recordation.
  2. Perform a TOB Option 2 transaction to Org ID 1000002 to transfer the Beneficial rights.
  3. Perform a **Transfer to Non-MERS Status** transaction to deactivate the MIN.

## Procedure: Transfer to Non-MERS Status

Only the Servicing Member of a loan can submit a Transfer to Non-MERS Status deactivation. The Investor can initiate this transaction through instructions to MERSCORP Holdings Offices.

1. The Servicing Member processes a deactivation on the MERS® System by selecting the **Transfer to Non-MERS Status** option and entering the following information:



- Current Servicer Org ID
- New Servicer Org ID (9999999)

2. The **Transfer to Non-MERS Status** deactivation appears on the MIN-level milestones.
3. The Servicing Member prepares, at its own expense, the *Assignment from MERS*, which includes the correct placement of the MIN and SIS Phone Number.
4. The Servicing Member sends the executed assignment for *Recordation*.
5. If the loan is later assigned to MERS, it can be re-registered (see *Re-registration after Deactivation*). If the loan is later assigned to a MERS® System Member that wants to track it on the MERS® System, it can be re-registered as an iRegistration (see *iRegistration after Deactivation*).

## Reports

The **Transfer to Non-MERS Status** process uses the following reports. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Transfer to Non-MERS Status Verification (DL)*
- *Transfer to Non-MERS Status Reject (DQ)*
- *Deactivation Summary (DD)*
- *MIN Milestone Report for Associated Members (VA)*



# Deactivation Reversals

## Overview

If a MIN is deactivated in error, the *Servicing Member* must reverse the Deactivation transaction using the Deactivation Reversal transaction.

The deactivation should not be reversed if an assignment has been sent or recorded removing MERS as the Mortgagee. However, such a loan may be re-registered if it is assigned back to MERS; see *Re-registration after Deactivation*.

The deactivation also should not be reversed on the MERS® System if it was cascaded from the MERS® eRegistry. You would need to reverse the deactivation on the MERS® eRegistry, cascading the deactivation reversal to the MERS® System.

The MERS® System prevents a Deactivation Reversal transaction from processing if any Rightsholder on the MIN is either under *Lockout* or has a Member status of **Inactive**.

The reversal process involves:

- Verify the loan information is current and accurate
- Process the reversal

If information on the MIN is incorrect or out of date, the Servicer must correct it in MIN Information after processing the reversal.

## Impact

The reversal process potentially impacts the following Members:

- Servicers
- Subservicers
- Investors
- Associated Members

## QA Plan Requirements - Deactivation Reversals

If a deactivation is performed in error, reverse it on the MERS® System no later than seven (7) calendar days after discovering the error.

## Procedure: Deactivation Reversals

1. Verify that the deactivation can be reversed.
2. Access Reversals, then Deactivation, in MERS® OnLine.
3. Enter the MIN.



4.  Submit the reversal transaction.

5.  If any corrections need to be made to the loan information, make the changes in MIN Information.



# Modification Agreements

## Overview

Members are not required to report Modification Agreement information on the MERS® System except for Consolidation Extension and Modification Agreements (CEMAs) and Construction loans. However, when a *MERS Loan* is modified, the Member must correctly place the MIN and SIS Phone Number on any Modification Agreement that the local jurisdiction requires to be recorded and then promptly send the executed document for *Recordation*.

## Impact

The Modification Agreement process affects the following Members:

- Servicers
- Subservicers
- Originators
- Third-party Originators
- Investors
- Associated Members

## QA Plan Requirements - Modification Agreements

Under the MERS® System QA Plan, Modification Agreements are subject to the standards, requirements, and validations as the applicable loan type (i.e., MOM, Non-MOM, or iRegistration) in addition for the following:

- Members are not required to report Modification Agreements on the MERS® System except for CEMA and construction loans.
- For CEMA and construction loans, you must enter the information relating to the Modification Agreement on the MERS® System (**Mod Agree Note Date** and **Mod Agree Note Amount**) no later than seven (7) calendar days after its effective date, or the Registration Date if later.
- When a MERS Loan is modified, you must correctly place the MIN and SIS Phone Number on any Modification Agreement that the local jurisdiction requires to be recorded and then promptly send the executed document for *Recordation*.



# Procedure: Modification Agreements

When the existing loan is registered on the MERS® System:

1. The Servicer prepares the Modification Agreement and other applicable documents. For a MERS Loan, this includes the correct placement of the existing MIN and SIS Phone Number on any document that the local jurisdiction requires to be recorded in the public land records.

2. The Servicer executes the prepared documents and then promptly sends the executed documents that must be recorded for *Recordation*.

When assigning a loan to MERS:

1. The existing loan is assigned to MERS and given a MIN.

2. The Lender/Servicer prepares the Assignment to MERS, Modification Agreement, and other applicable documents, which includes the correct placement of the new MIN and SIS Phone Number on any document that must be recorded in the public land records.

3. The Lender/Servicer executes the prepared documents and then promptly sends the executed documents that must be recorded for Recordation.

4. The Lender/Servicer registers the MIN using the Note Date and Amount from the original loan.

# Reports

The following reports are generated during the modification process. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *MIN Milestone Report for Associated Members (VA)*



# Consolidation, Extension, and Modification Agreement (CEMA)

## Overview

If state law requires a borrower to pay taxes only on additional funding of an existing loan or a new loan, the borrower and lender may choose a Consolidation, Extension, and Modification Agreement (CEMA) or Modification, Extension, and Consolidation Agreement (MECA) to consolidate or extend the term of an existing loan with or without additional funding to save the borrower from paying taxes associated with refinancing.

On the MERS® System, a CEMA or MECA is processed either as a deactivation and a new registration, or as a MIN update, depending on whether the consolidating Lender and the current Servicer are the same entity.

The processing of a CEMA or MECA has two parties: the current Servicer (the party that currently services the existing mortgage loan) and the new consolidating lender (the party providing the end financing). The two parties may be the same or different entities.

## Impact

The CEMA process affects the following Members:

- Servicers
- Subservicers
- Originators
- Third-party Originators
- Investor
- Associated Members

## QA Plan Requirements - CEMA

Under the MERS® System QA Plan, CEMA loans are subject to the standards, requirements, and validations of the corresponding loan type (i.e., MOM, Non-MOM, or iRegistration).

You must also enter the Modification Agreement information relating to the CEMA on the MERS® System no later than seven (7) calendar days after its effective date, or the Registration Date if later.



# Procedure: CEMA - Current Servicer and New Lender Are Different Entities

When the existing loan is currently registered on the MERS® System, and the current Servicer and the Consolidating Lender are different:

1. The current Servicer deactivates the existing MIN using the **Paid in Full** transaction.
2. If the new loan is a MERS Loan, the consolidating Lender generates a new MIN and places it and the SIS Phone Number on the Modification Agreement and any other document that will be recorded. The MIN and SIS Phone Number should not be placed on any iRegistration documents.
3. The consolidating Lender executes the prepared documents and then promptly sends those documents that will be recorded for *Recordation*.
4. The Lender or new Servicer registers the new loan on the MERS® System, adhering to the following additional instructions:
   - On the *Loan* page, enter the original note date of the loan in the **Note Date** field and the original loan amount in the **Note Amount** field.
   - On the *Modification Agreement* page, enter the note date of Modification Agreement in the **Mod Agree Note Date** field and the amount in the **Mod Agree Note Amount** field.

**OR (if both parties agree):**

1. The current Servicer transfers the existing loan to the consolidating lender, and reports the transfer on the MERS® System.
2. The new Servicer confirms the transfer on the MERS® System.
3. For a MERS Loan, the new Servicer prepares the Modification Agreement and other applicable documents, which includes the correct placement of the existing MIN and SIS Phone Number on any document that will be recorded. The MIN and SIS Phone Number must not be placed on any iRegistration documents.
4. The new Servicer executes the prepared documents and then promptly sends those documents that will be recorded for Recordation.
5. The new Servicer enters the Modification Agreement information, including Modification Note Date and Modification Agreement Note Amount, on the MERS® System.

# Procedure: CEMA - Current Servicer and New Lender Are the Same Entity

When the existing loan is currently registered on the MERS® System, and the current Servicer and new Lender are the same entity:



1. For a MERS Loan, the consolidating Lender/Servicer prepares the Modification Agreement and other documents, which includes the correct placement of the existing MIN and SIS Phone Number on any document that will be recorded. The MIN and SIS Phone Number should not be placed on any iRegistration documents.
2. The consolidating Lender/Servicer executes the prepared documents and then promptly sends those documents that will be recorded for Recordation.
3. The consolidating Lender/Servicer updates the existing MIN by entering the note date of the Modification Agreement in the **Mod Agree Note Date** field and the amount in the **Mod Agree Note Amount** field.

When assigning an existing CEMA *Mortgage* to MERS:

1. The consolidating Lender/Servicer prepares the *Assignment to MERS*, which includes the correct placement of the MIN and SIS Phone Number on the assignment.
2. The consolidating Lender/Servicer executes the prepared Assignment to MERS and then promptly sends the executed assignment for Recordation.
3. The consolidating Lender/Servicer prepares the Modification Agreement and other applicable documents, which includes the correct placement of the MIN and SIS Phone Number on any document that will be recorded.
4. The consolidating Lender/Servicer executes the prepared documents and then promptly sends those documents that will be recorded for Recordation.
5. The consolidating Lender/Servicer registers the MIN on the MERS® System no later than seven (7) calendar days after the Assignment Date, adhering to the following additional instructions:
   - On the *Loan* page, enter the original note date of the existing loan in the **Note Date** field and the original loan amount in the **Note Amount** field.
   - On the *Modification Agreement* page, enter the note date of the Modification Agreement in the **Mod Agree Note Date** field and the amount in the **Mod Agree Note Amount** field.

# Reports

The following reports are generated during the CEMA process. For details, see the *MERS® System Reports Handbook*:

- *Deactivation Summary (DD)*
- *MIN Milestone Report for Associated Members (VA)*
- *Maintenance Verification (MA)*



# Assumption of Mortgage

## Overview

A mortgage debt is assumed (see *Assumption*) when the following occurs:

- A new borrower assumes the outstanding mortgage debt.
- A new borrower is added to the existing loan obligation.
- An existing borrower is removed from the loan obligation

The Servicing Member is responsible for entering the new borrower information on the system.

When entering a mortgage assumption, you need:

- MIN
- New borrower name(s)
- New borrower SSN(s)

Original borrower(s) information is needed to execute a lien release and remains in the system for the life of the loan. When an assumption occurs, the new borrowers become the current borrowers. Interim borrower(s) are not tracked.

The assumption date is not captured on the MERS® System. The date the assumption information is entered on the MERS® System will be reflected in the MIN-level milestones.

## Impact

The Assumption of Security Instrument process affects the following Members:

- Servicers
- Subservicers
- Investors
- Associated Members

## QA Plan Requirements - Mortgage Assumption

Under the MERS® System QA Plan, Mortgage Assumptions are subject to the standards, requirements, and validations of the corresponding loan type (i.e., MOM, Non-MOM, or iRegistration) except as follows:

- The Assumption transaction must be completed on the MERS® System no later than seven (7) calendar days after its effective date, or the Registration Date if later.



- If a Member's *System of Record* stores Original Borrower information after an Assumption occurs, the Member must reconcile this data on the MERS® System.
- If a Member's System of Record does not store Original Borrower information, the Member is not required to reconcile this data on the MERS® System.

# Procedure: Assumption

1. Select the Assumption function from the MERS® OnLine main menu
2. Enter the MIN for the mortgage being assumed
3. If there is no information for the original borrower, the MERS® System copies the current borrower information into the original borrower fields

   Note: Only information regarding the original borrower and the current borrower is stored. Interim borrowers are not tracked.

4. Enter borrower information, for all borrowers remaining after the assumption, exactly as it appears on your System of Record:
   - Borrower Name:
     - Corporate Name
       (Business, Trust, or other non-individual)

     **OR**

     - First name
     - Middle name
     - Last name
     - Name Suffix

     Note: One Primary Borrower and one Co-Borrower may be entered on the Assumption page. Use the Borrower Details option on the MIN Information menu in MERS® OnLine to add additional Co-Borrowers once a loan is registered, or use the MIN Information Update batch transaction (Trans Code 103).

   - Social security number (required for Primary Borrower) or Tax ID (required for corporate borrower). Must be a valid Social Security number except as follows:
     - **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:** Used for a foreign national with no SSN or Tax ID.
     - **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:** A temporary placeholder used while a Member is performing an investigation as part of the Borrower Disputes process or when a borrower contacts the Member directly to initiate the dispute.
     - **No other placeholder values are permitted for SSN or Tax ID.**
5. Set the *Owner Occupied* flag.
6. The assumption appears on the MIN-level milestones.



# Reports

The following Assumption of Mortgage reports are available on the MERS® System. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *Assumption Verification (AA)*
- *Assumption Rejects/Warnings (AB)*
- *MIN Milestone Report for Associated Members (VA)*



# Property Preservation

## Overview

Servicers use property preservation companies to maintain and manage properties. Other Members and MERS® Link Subscribers use the MERS® System to find and contact the Property Preservation Company and/or contact for a property. Each Member can identify one or more Property Preservation contacts for their organization, and up to four Property Preservation Companies as Associated Members on each MIN. Some municipalities have agreed to use MERS® Link to access these contacts in lieu of requiring Members to maintain property preservation contact information on multiple local databases.

Members with a Property Preservation Company Line of Business may insert or delete their Org ID as Property Preservation Company on any MIN on which they have a Property Preservation Company Relationship with the Servicing Member. Property Preservation Company Org IDs may be updated when the MIN is active or when it is in a status of **Deactivation-Assigned from MERS for Default or Bankruptcy** or **Foreclosure Complete**.

Whenever the Servicer on a MIN is changed (e.g., by TOS, TOS/TOB Combo, **Transfer to Non-MERS Status**) all Property Preservation Company Org IDs are removed from the MIN.

Once reflected on the MIN as an Associated Member, the Property Preservation Company receives all Associated Member reports, has view-only access to loan details, and appears in the MERS® OnLine and MERS® Link MIN Summaries for that MIN.

Property Preservation contacts appear on the Member Summary available from the Org ID hyperlink available on the MERS® Link MIN Summary and the MERS® OnLine MIN Summary for Non-Rights holders.

## Impact

Property Preservation processing affects the following Members:

- Servicers
- Subservicers
- MERS® Link Subscribers
- Municipalities

## Procedure: Property Preservation

1. The Servicing Member and Property Preservation Company each create one or more Property Preservation contacts using the Member Information Contacts page in



MERS® OnLine.

2. The Property Preservation contacts are displayed on the MERS® Link Member Summary, and on the MERS® OnLine Member Summary, for each Member.
3. The Servicing Member may create a Relationship with a Property Preservation Company, using the Member Information Relationships page in MERS® OnLine, to allow that company to insert or remove itself as a Property Preservation Company on that Member's loans.
4. Any Member can specify up to four Property Preservation Company Org IDs in their Registration Default Settings so they will be included by default as Associated Members on all loans registered in MERS® OnLine.
5. The Servicing Member may insert a Property Preservation Company on its loans regardless of whether a relationship has been set up, as long as the loan is in **Active**, **Deactivation-Assigned from MERS for Default or Bankruptcy**, or **Foreclosure Complete** status.
6. The Property Preservation Company may insert or remove itself on any loan for a Servicing Member for which they are reflected in a Property Preservation Company relationship if the loan is in **Active**, **Deactivation-Assigned from MERS for Default or Bankruptcy**, or **Foreclosure Complete** status.
7. Once reflected on the loan, a Property Preservation Company may view all information for that loan except Social Security numbers and Tax Identification numbers.
8. The Property Preservation Company appears in the MERS® Link and MERS® OnLine MIN Summaries for the loan, with an Org ID hyperlink to the Property Preservation company's Member Summary on the MERS® Link MIN Summary and the MERS® OnLine MIN Summary for Non-Rightsholders.
9. The Servicing Member may update Property Preservation Company named on MIN in **Active**, **Deactivation-Assigned from MERS for Default or Bankruptcy**, or **Foreclosure Complete** status.
10. The Property Preservation Company receives all Associated Member reports for each MIN on which it is reflected as a Property Preservation Company, and receives the *Maintenance Verification (MA) Report* if it inserts or removes itself on a MIN.

# Reports

The following reports are available for Property Preservation Companies. For a detailed description of each report, see the *MERS® System Reports Handbook*:

- *MIN Milestone Report for Associated Members (VA)*
- *Change Notification* (*VB)*
- *Maintenance Verification (MA)*



# Reporting

## Overview

The MERS® System provides scheduled monthly reports, daily activity-based mismatch and confirmation reports, and on-request reports. The reports reflect the previous days' processing and are not real-time, ad hoc reports. A report for a given day includes transactions from the Flat-file or EDI X12 interfaces that were submitted up until 10:00 PM ET and transactions from MERS® OnLine and the XML interface that were submitted up until 11:00 PM ET.

The MERS® System reports are available for a limited time after they are generated. For details, refer to *Availability of MERS® System Reports*. A Member should have in place either a formal procedure to manually retrieve its reports from MERS® OnLine, or an automated process to retrieve its reports from the MERS® System SFTP server, before its reports are archived.

Although MERSCORP Holdings and MERS make these reports available to you, neither company is a consumer reporting agency and should not be treated as one by MERS® System Members or others. The information in these reports either: (i) has no bearing on a consumer’s credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living or, (ii) in any event, is prohibited from being used for any of the purposes that would make the communication of such information to a third party a "consumer report" as that term is defined in the FCRA.

If you do not use an automated process to retrieve your MERS® System reports, we suggest that you implement a procedure for downloading them at least weekly and storing them until they are no longer needed or until after reconciliation of the data with your internal systems.

The MERS® System provides a standard set of reports that you can access electronically.

- Tab-delimited text files can be imported into software applications your company supports for further manipulation. See the *MERS® Integration Handbook Volume II* for the header information.
- PDF files can be viewed or printed using Adobe Reader.

You can view on-line or print your formatted reports from MERS® OnLine.

Reports can also be retrieved using the Secure File Transfer Protocol (SFTP). The MERS® System places report files in each Member’s directory at the conclusion of each processing cycle, which can then be retrieved. See the *MERS® Integration Handbook Volume II* for detailed instructions.

If you have written a program to retrieve the report data files generated by the MERS® System, a consolidated report data file for selected daily transactions is available. This will



allow you to develop one common program to process this file, and eliminate the need for a separate program for each report data file. To verify that your automated process has been successful, and to assist in recovery if your automated process is interrupted, the MERS® System also produces the *List of Reports Produced.*

As your business grows, and more MINs are registered, your reports will increase in size. Many of the reports generated by the MERS® System are mandatory, while others are optional. As each company has its own reconciliation and loan accountability process, you may determine that your organization does not need certain optional reports. The MERS® System provides the ability to select which optional reports you receive. Custom reports are also available.

More specific instructions can be found in the *MERS® OnLine User Guide*, or the *Optional Reports Quick Reference Guide*, available on our *Member website*.

Users wishing to download documents from the MERS Members Only website will need to have appropriate credentials, consisting of your Org ID and MERS® OnLine User ID and Password, to access the information.

Contact the *Help Desk* to request logon credentials for the website or for additional information.

## Availability of MERS® System Reports

Once generated, the MERS® System reports are available to a Member for a limited time after the report date and then archived as shown below:

| Report Format | Report Type | Days Available |
|---|---|---|
| PDF | Individual report | 10 |
| | ZIP archive of individual report | 30 |
| | ZIP archive of combined reports | 30 |
| Text | Individual report | 10 |
| | ZIP archive of individual report | 10 |
| | ZIP archive of combined reports | 10 |

Contact the *Help Desk* to retrieve any archived report but note that there is a fee for this service, which is covered in the *MERS® System Fee Schedule* as a value-added service.

## Impact

The Reporting process affects the following Members:

- Servicers
- Subservicers
- Originators



- Third-party Originators

- Interim funding organizations

- Investors

- Custodians

- Associated Members

- MERSCORP Holdings, Inc. Offices

# QA Plan Requirements - MERS® System Reports

The QA standards and reconciliation requirements under the MERS® System QA Plan for the MERS® System Reports are covered under the following sections:

- *MERS® System Reports QA Standards*

- *Reconciling MINs on the RH and RI Reports*

## *MERS® System Reports QA Standards*

A Member must check the *Reports* menu of MERS® OnLine daily for any new reports.

Additionally, your organization must have procedures in place that are designed to provide reasonable assurance that all reject and warning reports are researched and cleared and any new or remaining items are tracked.

Reports may include, but are not limited to:

- *Registration Verification (PF, RA, RF)*

- *Registration Rejects and Warnings (PG, RB, RG, RL, AB, MB)*

- *Overdue Transfer of Servicing Rights (SE)*

- *Overdue Transfer of Beneficial Rights (BC)*

- *Physical Transfer of Beneficial Rights (BB)*

- *Expired Transfer of Beneficial Rights (BD)*

- *Physical Transfer of Servicing Rights (SC)*

- *Expired Transfer of Servicing Rights (SD)*

- *Transfer of Servicing Rights Rejects (SF)*

- *Transfer of Beneficial Rights Rejects (BF)*

- *Monthly Billing Statement (summary and MIN level) (LD, LE)*

- *MINs for the Same Primary Borrower SSN, Property, and First Lien Daily (RH)*



- *MINs for the Same Primary Borrower SSN, Property, and First Lien Monthly (RI)*
- *County Unknown Warning (QM)*
- *MINs without Originating Organization (QE)*
- *Lite Member Aged MIN (QV)*

Tools such as the Portfolio Analysis Report or Member Reconciliation Extract Reports are available to reconcile registrations, transfers, paid in full MINs, foreclosures and transfers to non-MERS status deactivations, and to validate data integrity.

For a full listing of MERS® System Reports, refer to the *Reports Handbook*.

## Reconciling MINs on the RH and RI Reports

The RH (daily) and RI (monthly) reports are mandatory reports that list active and pre-closing MINs with the same current Primary Borrower SSN, property, and first lien information. Servicers and Subservicers that receive these reports are responsible for reconciling them in accordance with this procedure. The full report names are listed below:

- RH: Registered MINs for the Same Primary Borrower SSN, Property and First Lien – Daily
- RI: Registered MINs for the Same Primary Borrower, Property, and First Lien – Monthly

Note: Duplicate MINs do not appear on the reports until five calendar days after a MIN is first identified as a duplicate to provide Members an opportunity to deactivate the previous MIN when a refinance occurs.

The RH report is generated daily, reports activity from the previous cycle, and is non-cumulative.

The RI report is generated on the last Saturday of each month and is cumulative; MINs continue to appear on the RI report until the duplicate information is updated on the appropriate MIN, or the duplicate MIN is deactivated or reversed.

The following steps detail the process of reconciling the RI report:

1. At the end of each month, an email is sent from ri@mersinc.org to those Members for which an RI report was generated to alert the Member to review the report.
2. The *Servicing Member* of the associated MIN should ensure that two first liens were not originated for the same borrower and property combination.
3. If a loan on the report was refinanced, or there was a duplicate MIN registration, the Servicing Member deactivates or reverses the appropriate MIN.
4. If a loan on the report incorrectly lists your Org ID as the Servicing Member, create the appropriate transaction to reflect the transfer of servicing to the correct Member.



5. To obtain contact information for an active Member, refer to the *Member Summary* in the MERS® System (*Main Menu > Member Summary*). Send an email to *ri@mersinc.org* to obtain additional contact information for a Member.
6. If a Member is resigned or is out of business, send an email to *ri@mersinc.org* identifying the MIN(s) at issue. Provide the necessary documentation to substantiate your request (typically a copy of the recorded mortgage and/or release).
7. If the Member servicing the associated MIN is unresponsive or if you have additional questions, contact *ri@mersinc.org*.

Servicers and Subservicers should also perform a daily reconciliation of the MINs listed on the RH report. Both the RH and RI reports report all matching MINs.

# Procedure: Retrieving Reports

To retrieve reports in MERS® OnLine:

1. Select Reports from the MERS® OnLine main menu
2. Select the day for which you want to view a report.
3. Select the particular report you want to view.
4. View, print, or save the report
5. Review the report and reconcile with your internal systems.
6. Correct mismatches, warnings, and rejects.
7. Resolve and resubmit rejected transactions to the MERS® System.

---

Note: MERSCORP Holdings prices transactions on the last business day of the month. The two-character report mnemonic for the *Monthly Billing Transaction Report* is LD.

---

You can also use a system-to-system method to retrieve your reports. See the *MERS® Integration Handbook Volume II* for information on using other methods to retrieve report files.

- Per the schedule in *Availability of MERS® System Reports*, reports are available for download only as a ZIP archive after a period of time. To view a report in a ZIP archive, download the archive, unzip it, and double-click the file to view the report.
- Per the schedule in *Availability of MERS® System Reports*, reports are archived after a period of time. Contact the *Help Desk* to retrieve an archived report, but there is a fee for this service.

# Procedure: Requesting a Portfolio Analysis Report

The *Portfolio Analysis Report* is an on-demand report that shows extensive information about the MINs requested, and enables you to select parameters to restrict the search



criteria. You can request this report via the MERS® OnLine application, from the Reports menu.

The *Portfolio Analysis Report* is available free of charge for the first two report requests per month. Additional reports are available for a fee. When you request a report through MERS® OnLine, it will display the number of reports your organization has requested in the current month. It will alert you if you've reached the limit of free reports and will be charged for subsequent reports in that month.

If you request a subsequent report, but the previous report has not yet generated, a Pending Request message will display listing the date the report is scheduled to run. You can proceed with your request to generate another report or cancel it.

When requesting the *Portfolio Analysis Report*, you are provided with the following options:

- Report Schedule capability allows you to choose when the report will be generated. Below are the available frequency options:
    - Every Month-end – last processing day of the month
    - Every Quarter-end – last processing day of the quarter
    - On Request – the date you want the report to be generated. This date, however, cannot be in the past or greater than sixty days from the current date, and must be a valid MERS® System processing date.
- Note and Registration Date Ranges
    - For Request Portfolio Analysis Reports, you can enter data in the Note from and through date fields, and the Registration from and through date fields to designate a specific range.
- Report Body (content)
    - You can request the data on the report to be shown in Summary or Detailed format. If neither option is chosen, the default setting is Detail.

      When selecting detail criteria, you have the ability to include only default fields, or choose other fields to include on the report. The report confirmation page will show the specific fields you have selected.
- Report Medium
    - You have the option to receive your Portfolio Analysis Report in report form or a data file or both. At least one option must be chosen when requesting your report.
    - Select MINs

      To select the MINs to be included on the report, you will indicate the appropriate Line of Business (LOB). For example, you may want to show all MINs for which you are the Servicer. The LOBs you can choose from are limited to those already selected on your Member Information on the MERS® System.



- Group MINs
  - The MINs on the report will be grouped by the Line of Business you select on the "Group the Selected MINs by" field. Building on the above example, you can group the MINs for which you are Servicer by Investor. So you'd have a group of Freddie Mac MINs, then a group of Fannie Mae MINs, etc. You can also select which Organizations you want included on your report.
- Report Sort Criteria
  - When the Report Detail option is selected, you must choose to have the data further sorted either by MIN within a Member's group of MINs or by Pool/Investor number within a Member.
- MIN Status and MIN MOM Values
  - You can select MINs with a MOM value of "MOM" or "Non-MOM" or "iRegistration" or "Any". "Any" will select MOM, Non-MOM, and iRegistration MINs. On the report, MIN status is displayed as I for iRegistration, Y for MOM and N for Non-MOM.
  - You can also select MINs with any MIN status or limit the report to MINs with certain MIN statuses (e.g. **Active**, **Paid in Full**, **Pre-Closing**, etc.).

# Reports

The following reports are associated with this procedure. For a detailed description of these reports, see the *MERS® System Reports Handbook*:

- *Detail Portfolio Analysis (OB)*
- *Summary Portfolio Analysis (OC)*



# MERSCORP Holdings Mail Services

## Overview

As *Mortgagee*, MERS frequently receives mail from organizations that search the public land records to identify the Mortgagee(s) with an interest in property. It is also possible, but unlikely, that for the same reason, MERS could receive funds intended for current Servicers or Subservicers. To address these situations and ensure that correspondence is promptly routed to the correct destination, MERSCORP Holdings has established a mail facility as part of its operation.

The MERSCORP Holdings Mail Center makes reasonable efforts to properly identify *Urgent Mail* and forwards it to the designated *Servicing Member* as reflected on the MERS® System, within two (2) business days of receipt; *Non-Urgent Mail* is forwarded within 5 days. Mail received for a MIN is forwarded to the Member listed as the Servicer on the MERS® System, unless a Subservicer is listed, in which case the mail is forwarded to the Subservicer. In the event the Servicer and Subservicer are no longer active Members, the Help Desk forwards the imaged mail to the Investor's GAL email address.

**MERS should never receive, and will not forward, mail or service of process for iRegistration loans unless the loan was previously a MERS Loan.**

The MERSCORP Holdings Mail Center and Customer Service areas are responsible for the receipt, handling, and scanning of physical mail documents into electronic images. All mail, whether in the form of paper or funds, is indexed to the appropriate MIN and images are routed electronically to the current Servicing Member for that MIN. The Member's GAL email address is used to route the images to the appropriate MERS® System Member. The Member is responsible for notifying the Help Desk if its GAL email address changes, and for forwarding documents to the new Servicer if a loan has been sold but the TOS transaction reflecting the transfer on the MERS® System is not yet complete.

All communication, mail images, and broadcast messages generated by the Help Desk are sent to the Member's GAL email address. Ensure that personnel assigned to manage your GAL mailbox are given the appropriate password and trained to handle and distribute the communications received. You can also create email rules to automatically redistribute email to the appropriate people or departments in your organization.

The MERS mail address should not be given directly to organizations that normally direct mail to the Servicing Member. (For example, hazard insurance companies and taxing authorities.) All types of mail currently received and handled by Servicers continue to be the Servicer's responsibility.

---

Note: Members must not use the MERS mail address as the return address for documents sent for *Recordation*.

---

Contact the *Help Desk* whenever your document handling information changes.

## Impact

Document imaging and retrieval affects the following Members:



- Servicers
- Subservicers
- Investors
- MERSCORP Holdings, Inc. Offices

# QA Plan Requirements - Service of Process Mail

The QA standards under the MERS® System QA Plan for Service of Process mail are as follows:

- Maintain a valid *Global Address List* ("GAL") email address for official MERS® communications, including the receipt of Service of Process, to be monitored daily.
- Review and respond to Service of Process documents forwarded by the Help Desk.
- Notify MERSCORP Holdings within 28 days of receipt of a Rule 14 Service of Process document to acknowledge receipt of the document and either (1) provide contact information for your internal contact and outside counsel if retained or (2) inform MERS of your determination not to contest the foreclosure or answer the lawsuit.

# Procedure: MERSCORP Holdings Mail Services

1. The MERSCORP Holdings Mail Center receives mail throughout the day and processes it as follows:
   a) Incoming mail is opened and prepared for scanning.
   b) Each piece of mail is assigned a tracking number and scanned.
   c) Once scanned, each digital image is reviewed to ensure its clarity and legibility.
   d) The digital images are transmitted to the Help Desk.
   e) The original documents are filed in a temporary, on-site storage area.
2. The Help Desk receives the digital images and attempts to identify the Servicing Member associated with each piece of mail based on information in the mail and/or by using the MERS® System.
3. If the imaged mail is matched to a *MERS Loan*, the Help Desk:
   - Sends the digitized mail to the Subservicer of a MIN if one is named, or to the Servicer otherwise, using the Member's GAL email address.
   - If a MIN has no Subservicer, and the Servicer is either a *Resigning Member* or *Resigned Member*, the Help Desk forwards the imaged mail to the Investor's GAL email address.
   - The Help Desk records the date and time of this action in its tracking system.
4. If the imaged mail cannot be matched to a MERS Loan, the Help Desk:



- Creates a record to track that piece of unidentified mail.
- Contacts the sender of the mail for further identifying information.

5. The list of unidentified mail records is uploaded daily to the Member website. Each record includes: Case Number, Borrower Name, Address, and other identifying information (Lot, Block, Parcel, etc.).
6. Members review the unidentified mail list to determine if any items pertain to one of their borrowers or properties.
7. If a Member is able to claim an unidentified mail record, the employee reviewing the unidentified mail clicks the **Case #** link to send an email to the *Help Desk* that includes the following subject line: **Unidentified Mail Case Number xxxxxxxx**. Please include your organization's Org ID in the email message.
8. If the Servicer remains unidentified, the Help Desk searches the public land records. An External Research fee, as specified in the *MERS® System Fee Schedule*, is charged on a per-loan basis. If the loan belongs to a Resigning Member, this fee is charged to the active Member associated with the loan and/or requesting the research.
9. For items successfully routed to the current Servicing Member, the Help Desk also handles the disposition of the original mail document. Original mortgage documents and funds are forwarded to the Subservicer of a MIN if one is named, or to the Servicer otherwise.

Note: Members can choose to have original mortgage documents delivered by regular mail or by overnight delivery at the Member's expense.

- For original mortgage documents, the Help Desk accesses the Member's profile on the MERS® System to determine how to forward the documents. Once forwarded to the Member, the Help Desk updates its tracking system to indicate how and when the documents were sent.
  - The Regular Mailing Address is used for regular mail.
  - If the Member has specified overnight delivery, the Overnight Mailing Address and Overnight Account information are used.
- For funds, the Help Desk logs the receipt date, forwards the remittance plus any accompanying attachments to the Servicing Member by overnight delivery, and documents to whom the funds were sent.
- All other unclaimed paper mail is stored in its physical hard copy form for a period of 30 calendar days. At that point, all paper mail is destroyed.



# MERSCORP Holdings Help Desk

## Overview

The Help Desk serves as a point of contact for MERS® System Members in support of the following:

- Functional questions about the MERS® System.
- Technical support.
- MERS® System connectivity.
- Changes to a Member's *GAL* email address.

Other highlights of the Help Desk include:

- Toll-free access to the Help Desk, 1-888-680-MERS (6377), 8 a.m. to 10 p.m. Eastern Time, Monday through Friday.
- After hours technical support available for emergency technical issues.
- Broadcast bulletins regarding connectivity or system issues posted for MERS® System Members by email and OnLine broadcast message.
- Real-time tracking system used for all open inquiries and issues to ensure timely resolution.
- Online MERS® ServicerID (*www.mers-servicerid.org*) and phone-based Servicer Identification System (SIS) at 1-888-679-MERS (6377) are available to the *General Public* and Members to provide Servicer contact information and Investor name for a loan. The faxback feature on SIS can confirm Servicer contact information and Investor name in writing.
- MERS® Link, a browser-based application that provides you information regarding the current Servicer of a mortgage registered on the MERS® System.
- *XML Inquiry* and *Batch Inquiry* transactions provide information on loans matching search criteria entered using a system-to-system interface.
- Processing of system enhancement requests submitted from Members via the "Enhancement Request" option available on *www.mersonline.org* and *members.mersinc.org*.



## Impact

The Customer Service/Help Desk impacts the following Members:

- Members
- MERSCORP Holdings Offices

## Procedure: Contacting the Help Desk

- A Member contacts the Help Desk via phone 1-888-680-MERS (6377) or *email*.
- A Help Desk representative handles the Member's inquiry.
- A record is opened in the tracking system
- One of the following occurs:
  - If the item is a general inquiry or training support issue and does not impact additional users or processing, the Help Desk representative resolves the problem or responds to the Member's request, updates the tracking record, and no further action is necessary.
  - If the Help Desk representative determines that further action is required:
    - The Help Desk representative coordinates the resolution of the problem with the appropriate MERSCORP Holdings area(s) and monitors the progress.
    - An interim status is provided to the Member at a predetermined frequency based on the following service levels.

### *Initiate Problem Resolution*

| Description | Service Level |
| --- | --- |
| **Severity 1**—Significant problem affecting multiple users | Immediately |
| **Severity 2**—Significant problem affecting a single user | Within 2 hours |
| **Severity 3**—Problem has reasonable circumvention; user can continue processing with minimal loss of efficiency or functionality | Within 48 hours, except for scheduled holidays |
| **Severity 4**—User inquiry or problem that does not affect the user | Within 5 days |

| Description | Service Level |
| --- | --- |
| Application Support—Severity 1 | 4 hours |
| Application Support—Severity 2 | 8 hours |
| Other problems—Severity 1 | 24 hours |
| Other problems—Severity 2 | 48 hours |



- The Help Desk representative confirms with the Member that the issue is resolved.
- The Help Desk representative verifies that all actions taken have been documented and closes the record in the tracking system.

# Procedure: Receiving Official Communications from MERSCORP Holdings

MERSCORP Holdings sends various types of messages to our Members via email, including Service of Process requests. It is critical that these messages reach the correct people and departments in your organization.

## Global Address List (GAL) Email Address

MERSCORP Holdings strongly advises Members to establish a dedicated email address on their corporate email system to receive our official communications. This email address is known as your MERS® System *GAL* email address.

Your organization's GAL email address should be monitored daily for new messages. Multiple individuals should have access to your GAL email address to insure that incoming messages are monitored daily.

Your GAL email address is added to MERSCORP Holdings' email infrastructure during new Member *Integration*. To change your organization's GAL email address on our system, email the *Help Desk* and include your Org ID and correct GAL email address.

## Additional Contacts for Member Messages

Member communications originating from the MERSCORP Holdings corporate office are generally sent to both your MERS® System GAL email address and the email addresses of the following Contact Types for your Org ID:

- Compliance Officer
- Customer Service - Primary
- Executive Sponsor
- Legal
- Operational - Primary
- Operational - Secondary
- QA Officer
- Technical



The email addresses for your MERS® System contacts must be issued by your organization on its corporate email system for the purpose of business correspondence; personal email addresses are not permitted.

These email addresses are pulled from the MERS® System on the day that a message is scheduled for publication to ensure that the list is accurate.

## *Email Subject Line Conventions for Messages*

Email messages from MERSCORP Holdings and MERS are generally sent to Members in a periodic digest titled the **MERS® Update**. The MERS® Update is sent to all active Members except Third Party Originators (TPO) and MERS® eRegistry Brokers; these Members do not access the MERS® System.

Each edition of the MERS® Update starts with a list of headlines that enables recipients to quickly determine which articles are of interest to them. The MERS® Update is published every other week and is also uploaded to the *Member website*. The subject line of the **MERS® Update** begins with its name and includes its publication date.

Critical or time-sensitive information is sent immediately to Members as individual announcements and may be republished in a subsequent edition of the MERS® Update. The following table contains the list of subject line conventions used in these messages:

| Subject Line Starts as… | Message Includes |
|---|---|
| Legal Notices: | Legal matters not connected with Mail Documents, Policy Changes, or Policy Bulletins, and not requiring urgent action |
| Member Alert: | Urgent business information, Help Desk or system problems, inability to reach MERS contacts, etc. |
| Member Notice: | New products, developments, document providers, forms; corporate office closings; etc. |
| Member Notice: Policy Bulletin | Procedures changes outside of a release; Policy Bulletins not related to Rule Changes, or Membership Agreement changes |
| Member Notice: System | System information outside of a release |
| MERS® Update: MM DD, YYYY | Periodic digest that provides Members with the latest information from us in one message. |
| Member Notice: Reports | Late reports, corrected reports, etc. |
| Policy Change: | Proposed and final changes to Membership Agreement, Rules; Policy Bulletins related to these changes |
| Release: MERS® System | Information about MERS System releases, including draft procedure changes and system changes required |
| Release: Commercial | Information about MERS Commercial releases, including draft procedure changes and system changes required |
| Release: MERS® eRegistry | Information about MERS eRegistry releases, including draft procedure changes and system changes required |



| Subject Line Starts as… | Message Includes |
|---|---|
| Training Opportunity: | Web Seminars, Legal Seminars, Regional Workshops, etc. |

The following table contains the list of subject line conventions used to forward mail received by MERSCORP Holdings to the current *Servicing Member* of a MIN; these messages are always sent individually and not through the MERS® Update:

| Subject Line Starts as… | Message Includes |
|---|---|
| Mail Document Type: Adversaries | Documents concerning an adversary proceeding |
| Mail Document Type: Bankruptcy | Any bankruptcy document not related to an adversary proceeding |
| Mail Document Type: Bills & Invoices | Any document requesting or demanding an actual dollar amount |
| Mail Document Type: City/County Code Lawsuits | Any complaint or lawsuit concerning a code violation |
| Mail Document Type: Eminent Domain | Documents concerning an eminent domain action |
| Mail Document Type: Foreclosure | Documents concerning a foreclosure, including tax foreclosures, mechanic's lien foreclosures, and homeowner's association foreclosures |
| Mail Document Type: Funds | All funds received |
| Mail Document Type: Government Documents | Documents sent by a government entity or official. Most often a letter, notice or memorandum of inquiry. |
| Mail Document Type: Lawsuit | Any document concerning a lawsuit, including foreclosure counterclaims and cross-claims |
| Mail Document Type: Notices & Requests | Notices not included in another category, and requests not naming a dollar amount |
| Mail Document Type: Recordable Docs | Any original recorded document, and all mobile home title documents |
| Mail Document Type: Rejected Discharge of Mtg | Recordable documents rejected by local recorder or clerk |
| Mail Document Type: Req for Discharge of Mtg | Any letter or notice concerning a delayed lien release |
| Mail Document Type: Subpoenas | All subpoenas |
| Mail Document Type: Title Policy | Any document concerning title insurance (unless lawsuit related) |

In addition, for mail-related messages subject to Rule 14 requirements, the subject line of the message contains the phrase "Rule 14".

Members can use these subject line conventions to create rules to forward messages sent to their GAL email address to the appropriate personnel in their organization.



Additionally, MERS® System users that receive our communications can use these subject line conventions to create rules to filter messages from MERSCORP Holdings as needed.

# Procedure: MERS® ServicerID

- A MERS® System Member or someone from the *General Public* accesses MERS® ServicerID at *www.mers-servicerid.org*.
- The user chooses to search by MIN, borrower and/or property information, or FHA/VA/MI certificate.
- One of four (4) scenarios occurs:
  - If no loan matches the search criteria, the system indicates no loans matched the criteria entered.
  - If the MIN/SSN is on file and **active**, the system provides the name, city, and state of the current Servicer along with the phone number listed in the Corporate Address section of the *Member's Profile*. If the Member's Profile includes a URL, the Servicer's name is displayed as a link to this URL.

    Note: If a Member's Profile is configured to use the Servicer/Subservicer Alternate Address section, this contact information is used instead of the information in the Corporate Address section.
  - If the loan is an **iRegistration**, the system displays a disclaimer indicating the loan is registered on the MERS® System for informational purposes only, and MERS is not the Mortgagee on this loan.
  - If the MIN/SSN is on file but **deactivated**, the system provides the name, city, state, and phone number of the last known Servicer.
- The borrower may be able to access the name, city, and state of the current Investor (if disclosed) by providing more information. If the Investor Org ID is **1000002** (i.e., Undisclosed Investor), the borrower is instructed to contact the Servicer for the name of the Investor.

# Procedure: Servicer Identification System (SIS)

- A MERS® System Member or someone from the General Public calls the Servicer Identification System (SIS) at 1-888-679-MERS (6377).
- The SIS prompts the caller to enter a MIN or the Social Security number (SSN) of the Primary Borrower and property ZIP code (optional).
- One of four (4) scenarios occurs:
  - If the MIN or SSN entered by the caller cannot be located, the system indicates the MIN or SSN is not on file.



- If the MIN/SSN is on file and **active**, the system provides the name, city, and state of the current Servicer along with the phone number listed in the Corporate Address section of the Member's Profile.

  Note: If a Member's Profile is configured to use the Servicer/Subservicer Alternate Address section, this contact information is used instead of the information in the Corporate Address section.

- If the loan is an iRegistration, the system includes a disclaimer indicating the loan is registered on the MERS® System for informational purposes only, and MERS is not the Mortgagee on this loan.
- If the MIN/SSN is on file but **deactivated**, the system provides the name, city, state, and phone number of the last known Servicer.

- The borrower may be able to access the name of the current Investor (if disclosed) by providing more information. If the Investor Org ID is **1000002** (i.e., Undisclosed Investor), the borrower is instructed to contact the Servicer for the name of the Investor.
- If the caller chooses the faxback option, he or she is prompted to enter the 10-digit fax number. Prospective Members can also obtain general MERS® System membership information through this faxback feature.
- The SIS sends the Servicer name, address and phone number to the caller by fax using the number entered by the caller.

# Procedure: MERS® Link

- A MERS® System Member or MERS® Link Subscriber logs on to *MERS® Link* using their Org ID, User ID, and password.
- MERS® Link prompts the user to enter one or more identifying characteristics on a loan.
- One of two results occurs:
  - If the information entered by the user does not match any loan **on file**, the system indicates that the MIN is not on file.
  - If the information entered by the user does match a loan **on file**, the system provides a loan summary page including Servicer, Investor (unless the Investor has chosen not to disclose their contact information in proprietary applications) and Property Preservation Company information.



# Procedure: XML Inquiry

XML Inquiry is available both during and outside normal processing hours, except during scheduled maintenance windows. You may send up to 50 requests per minute; for larger volumes, see *Batch Inquiry* on the next page.

- A MERS® System Member sends an XML Inquiry Request to the MERS® System, requesting status or summary information for a specific MIN, property, or borrower.
- The MERS® System returns a synchronous response containing the requested information for up to 20 loans matching those search criteria. If more than 20 loans match the search criteria, information for the 20 loans registered most recently is returned, with an indicator that more than 20 loans matched the criteria in the request.
  - For a status request, the response contains, for each MIN:
    - MIN
    - Status (active, inactive, or Pre-Closing)
    - MOM Indicator (Y for MOM loan, N for Non-MOM or iRegistration)
    - iRegistration Indicator (Y for iRegistration, N for MOM or Non-MOM)
    - Owner Occupied indicator
    - Servicer Org ID and Name
    - Subservicer Org ID and Name, if present
    - Investor Org ID and Name, unless the requester is not associated with the loan and the Investor has chosen not to disclose their contact information in proprietary applications
    - Property Preservation Company Org ID and Name, if present
  - For a summary request, the response contains the same information included on the MIN Summary page in MERS® OnLine; specific fields included depend on whether the requesting Member is associated with the MIN.

For more information about the XML MIN Inquiry transaction, see *MERS® Integration Handbook Volume II.*

# Procedure: Batch Inquiry

- A MERS® System Member sends a Batch Inquiry via flat file to the MERS® System, requesting status or summary information for one or more specific MINs, properties, or borrowers.



- The MERS® System returns a flat file containing the requested information matching those search criteria.
  - For a status request, the response file contains the following fields for each MIN:
    - MIN
    - Status (active, inactive, or Pre-Closing)
    - MOM Indicator (Y for MOM loan, N for Non-MOM, or I for iRegistration)
    - Owner Occupied indicator
    - Servicer Org ID and Name
    - Subservicer Org ID and Name, if present
    - Investor Org ID and Name, unless the requester is not associated with the loan and the Investor has chosen not to disclose their contact information in proprietary applications
  - For a summary request, the response file contains the same information included on the MIN Summary page in MERS® OnLine; specific fields included depend on whether the requesting Member is associated with the MIN.

For more information about the Batch Inquiry transaction, including the current parameters for maximum requests in the same file, see *MERS® Integration Handbook Volume II*.



# Corporate Resolution Management System (CRMS)

## Overview

An essential aspect of the MERS® business model is the issuance of *MERS Corporate Resolutions* (each a "Corporate Resolution") to Members that service MERS Loans, appointing designated officers of those Members as *MERS Signing Officers* (each a "Signing Officer") and granting those Signing Officers limited authority to act in the name of MERS. The authorities granted to a Member's Signing Officers are generally limited to the loans registered on the MERS® System to the Org ID of the Member or, if applicable, its *Affiliate Org ID(s)*.

Members that utilize third-party vendors or law firms (each an "SAA Vendor") for the purpose of executing documents such as assignments and lien releases may request a *Signing Authority Agreement* ("SAA") so that signing authority may be granted by MERS to the SAA Vendor authorizing certain of its employees to act in the name of MERS in relation to loans registered to the Member on the MERS® System. In the CRMS, a request for an SAA is identified as, and facilitated via, an *SAA Relationship*. For details, refer to *Signing Authority Agreements*.

MERSCORP Holdings, the service provider for MERS, has established the *CRMS*, a web-based application, to facilitate the processing of Member requests for Corporate Resolutions, and the appointment of identified Member officers as Signing Officers. The business functions supported by the CRMS include the following:

- Identification of a Member's Signing Officers

- Certification of Signing Officers through the online Certification Exam

- Submission of Member requests for new and updated Corporate Resolutions

- Submission of Member requests for SAAs

- Download of a Member's Corporate Resolutions issued via the CRMS

- Completion of the Quarterly Attestation requirement

- Download of the image of the MERS corporate seal

New Members that will be servicing or subservicing MERS Loans are granted access to the CRMS during the MERS® System Integration process by a MERSCORP Holdings BIR.



## CRMS User Roles

The CRMS is a role-based application that contains six (6) pre-defined roles. A user may be assigned to one or more roles. A user's current role determines the functions and information available to that user. The table below describes the roles in the CRMS:

| Role | Description |
|---|---|
| CRMS Manager | The CRMS Manager ("CM") is the role assigned to the individual who is primarily responsible for managing an Org ID or SAA Relationship. Each Org ID and SAA Relationship is required to have a CM. A second CM is optional. The initial CM is specified by the Member during the MERS® System Integration process and is created by MERSCORP Holdings when the Org ID is established in the CRMS. The initial CM for an SAA Relationship is the CM that requested the SAA. |
| CM Admin | The CM Admin ("CMA") is an optional role that is assigned to individuals who help manage an Org ID or SAA Relationship, but the CMA cannot perform certain critical tasks like submitting a request for a Corporate Resolution or completing the Quarterly Attestation |
| Signing Officer | The Signing Officer ("SO") is the role assigned to the individuals who have been selected for certification and appointment as Signing Officers. |
| View Only Contact | The View Only Contact ("VOC") is an optional role that is assigned to individuals who need to view information associated with an Org ID or SAA Relationship, but do not need to not make any changes or submit requests. |
| Member Signer | The Member Signer ("MS") is the role that is assigned to individuals who need to sign an SAA for the Member that is a party to it. An MS is only required for an Org ID that needs to establish an SAA Relationship. |
| Vendor Signer | The Vendor Signer ("VS") is the role that is assigned to individuals who need to sign an SAA for the SAA Vendor that is a party to it. A VS is only required for an Org ID that needs to establish an SAA Relationship. |

Note: Any action taken by either a CM or a CMA in the management of an Org ID or SAA Relationship is considered by MERSCORP Holdings to be authorized by the Member.

# Impact

These processes potentially impact all Members that service or subservice loans or who will otherwise need to execute any document in the name of MERS.

# QA Plan Requirements - CRMS

The QA standards and validations under the MERS® System QA Plan for the CRMS are covered under the following sections:

- *CRMS QA Standards*
- *CRMS QA Validations*



## CRMS QA Standards

- At least monthly, Members must review their Corporate Resolution and attached list of Signing Officers to ensure that each is current and accurate. This is an internal check and is separate and apart from the Quarterly Attestation that Members are required to perform in the CRMS.
- At least quarterly, Members must complete the Quarterly Attestation for each Org ID and SAA Relationship that they manage in the CRMS.

## CRMS QA Validations

- The Member must confirm that all Signing Officers appearing on the list attached to its current Corporate Resolution are officers of the Member.
- If the Member was qualified for the Rule 3 exception then the Member must confirm that all Signing Officers appearing on the list attached to its current Corporate Resolution are employees of the Member who each hold a position that is equivalent to that of an officer (i.e. officer-equivalents).
- The Member must confirm that all Signing Officers appearing on the list attached to its current Corporate Resolution have passed the Certification Exam and their resulting certification has not expired, which means that the SO's Certification status in the CRMS is *Testing* or *Test Passed*.
- The Member must confirm that the email address provided in the CRMS for each Signing Officer appearing on the list attached to its current Corporate Resolution is an email address issued to the Signing Officer by the Member for the purpose of business correspondence, is not a personal email address, and is one that is unique to the Signing Officer, meaning it cannot be a shared inbox or distribution list.
- The Member must confirm that all information entered in the CRMS for each Signing Officer is current and accurate.
- The Member must confirm that all Signing Officers appearing on the list attached to its current Corporate Resolution issued under any SAA Relationship are officers of the SAA Vendor or, if the SAA Vendor is a law firm, licensed attorneys in good standing with a state bar who are employed by the law firm.
- The Member must confirm that the list of Signing Officers attached to its current Corporate Resolution issued under an SAA Relationship is current and accurate and that all Signing Officers have passed the Certification Exam and their resulting certification has not expired.



# Procedure: Creating the Initial Request for a Corporate Resolution

When an Org ID is established in the CRMS, it has a status of *New*, which indicates that the initial request for a Corporate Resolution was not yet created**.** At this time, the CRMS sends a welcome email to the CM that contains the link to the CRMS and the CM's login credentials (user name and password). The CM may then access the CRMS.

Rule 3 of the MERS® System Rules of Membership ("Rules") requires that only officers of a Member may be appointed as Signing Officers. Members that are unable to comply with the Rule 3 requirement due to their organization not having any officers, must request an exception to the requirement before they may be issued a Corporate Resolution appointing Signing Officers. The request for a Rule 3 Exception is submitted via the CRMS.

Note: Most MERS® System Members do not qualify for the Rule 3 Exception.

The CM creates the initial request for a Corporate Resolution as follows:

1. The CM logs into the CRMS and navigates to the *Corporate Resolution* tab.
2. If the Member has officers:
    - The CM creates the initial request for a Corporate Resolution, which sets the status of the Org ID to *Draft*.
    - The CM or CMA may now add SOs to the pending SO list for the request. For details, refer to *Creating the Pending SO List for a Request for a Corporate Resolution*.
    - When the pending SO list is complete, the CM submits the request. For details, refer to *Submitting a Request for a Corporate Resolution*.
3. If the Member has no officers and wishes to be considered for a Rule 3 Exception:
    - The CM submits the request for a Rule 3 Exception.
    - The CRMS routes the request to the MERSCORP Holdings Law Department ("Counsel") for review and sets the status of the Org ID to *Draft*.
    - While the request is under review, the CM can prepare the initial request for a Corporate Resolution, which includes adding SOs to the pending SO list and instructing them to complete the Certification process. However, the CM cannot submit the request until Counsel completes its review and approves or rejects the request.
    - Counsel asks that the CM provide documentation to support his/her claim that the Member has no officers. Documentation may include, but is not limited to, incorporating documents, internal board resolutions, or organizational charts.
    - If Counsel determines that the Member has officers, and therefore does not qualify for the Rule 3 Exception, the request is rejected. The CRMS sends a confirmation



email to the Member, which instructs the CM to remove any SOs who are not officers of the Member before submitting the initial request for a Corporate Resolution.

- If Counsel determines that the Member has no officers, and therefore qualifies for the Rule 3 Exception, the request is approved. The CRMS sends a confirmation email to the Member, which instructs the CM on how to proceed with the initial request for a Corporate Resolution.

# Procedure: Creating the Pending SO List for a Request for a Corporate Resolution

**Important:** Once an individual is added to the CRMS as an SO, he/she is a candidate to be appointed as a Signing Officer; he/she does not become a Signing Officer simply by being added to the pending SO list. An individual only becomes authorized to act in the name of MERS once a Corporate Resolution is issued by MERS that appoints him/her as a Signing Officer.

The CM or CMA creates the pending SO list, which includes the SOs that the Member will submit to MERS for appointment as Signing Officers as follows:

1. The CM or CMA logs into the CRMS and navigates to the *Manage Users* tab.
2. The CM or CMA creates a record for each SO.

Note: A Signing Officer may be associated with multiple Corporate Resolutions across several Org IDs and/or SAA Relationships. The CRMS identifies an existing user based on his/her email address. To add an existing user to a Corporate Resolution request, a CM or CMA enters the user's email address, and the CRMS retrieves the user for the CM or CMA to add him/her to the pending SO list on the request.

The following fields are required for each user in the CRMS:

| Field | Description |
|---|---|
| Email Address | This is not printed on the Corporate Resolution, and must be an email address that was issued to the Signing Officer by the Member for the purpose of business correspondence; personal email addresses are not permitted. Also, the email address must be unique to the Signing Officer, meaning it cannot be a shared inbox or distribution list. |
| First Name | This is printed on the Corporate Resolution, and must exactly match the first name printed on any document signed by the Signing Officer. First initial is an acceptable alternative to first name only if a full middle name is provided, in which case the name printed on a document signed by the Signing Officer must include first initial, middle name and last name; only printing the first initial and last name on a document is not permitted. |



| Field | Description |
|---|---|
| Middle Name | This is printed on the Corporate Resolution. A full middle name or middle initial may be entered, but a middle initial is acceptable only if a full first name is provided for the Signing Officer. Where a full first name is provided, the middle name or middle initial need not appear printed on a document signed by the Signing Officer. If the Signing Officer's middle name or middle initial does appear printed on the document, then it too must exactly match what is printed on the Corporate Resolution. |
| No Middle Name | If the Signing Officer does not have a middle name, do not complete the Middle Name field and instead select the No Middle Name checkbox. |
| Last Name | This is printed on the Corporate Resolution, and must exactly match the last name printed on any document signed by the Signing Officer. |
| Job Title | This is not printed on the Corporate Resolution. Enter the title that the Signing Officer holds at the Member which qualifies him/her for appointment as a Signing Officer. This is not the title that the Signing Officer holds as an officer of MERS (e.g. Assistant Secretary) unless it is also his/her title as an officer of your organization. If your organization was qualified for the Rule 3 Exception then this title must be the title that the individual holds as an officer-equivalent of your organization. |
| Role | This is the user's role in the CRMS, which determines the functions and information available to the user. The SO role is only available for selection in the drop-down menu when an Org ID or SAA Relationship has a status of *Draft*, which means that a request for a Corporate Resolution has been started, but not yet submitted. |

3. Once a user has been created, the CRMS sends a welcome email to the new user that contains the link to the CRMS and the user's login credentials.

4. When the pending SO list is complete, the CM submits the request for a Corporate Resolution. For details, refer to *Submitting a Request for a Corporate Resolution*.

# Procedure: Submitting a Request for a Corporate Resolution

**Important:** The *Corporate Resolution* tab in the CRMS is not your Corporate Resolution, and the Signing Officers table is not your list of Signing Officers. Adding, modifying, or removing SOs in the CRMS does not immediately result in an updated Corporate Resolution. The CRMS is used to create a request for a Corporate Resolution and then submit that request to MERS. A Corporate Resolution appointing Signing Officers is only issued once MERS approves a Member's request. The approved Corporate Resolution is available in the CRMS as a PDF file, and the list of Signing Officers is attached to the approved Corporate Resolution.



When the pending SO list is complete, the CM may submit the request for a Corporate Resolution. Once submitted, a request remains in a status of *Submission Pending* until all SOs complete the Certification process, at which time the CRMS routes the request to MERS for review. The following steps outline this process:

1. The CM logs into the CRMS and navigates to the *Corporate Resolution* tab.
2. The CM verifies that the pending SO list is accurate and complete.
3. The CM submits the request for a Corporate Resolution.

   **Important:** Prior to submitting the request, the CM must attest that each SO is an officer of the Member organization. The CM must remove any SO that is not an officer of the Member organization prior to submitting the request.

4. The CM or CMA notifies the SOs to complete the Certification process, which includes studying the MERS Signing Officer Primer and passing the Certification Exam.
   - The request remains in a pending status until all SOs have either passed the Certification Exam or failed the Certification Exam three (3) consecutive times, thereby becoming permanently ineligible to serve as a Signing Officer.
   - The CM or CMA can see which SOs have not yet passed the Certification Exam and notify them to take the Exam using the ***Remind*** function in the CRMS.
5. Once all SOs have completed the Certification process, the CRMS routes the request to MERS for review.
6. Once the CRMS routes the request to MERS for review, MERS will approve or reject it within three (3) business days:
   - While the Member's request for a Corporate Resolution is pending approval or rejection by MERS:
     - The Member's existing Corporate Resolution, if one was previously issued by MERS and has not been revoked, remains in effect. The Signing Officers appearing on the list attached to such Corporate Resolution remain authorized to act in the name of MERS, provided their certification has not expired.
     - Any SO who does not appear on the list attached to the Member's existing Corporate Resolution is not authorized to act in the name of MERS.
   - If MERS approves the request, the CRMS sends an email to the Member, which confirms that MERS approved the request and issued a Corporate Resolution appointing Signing Officers. The Corporate Resolution is available in the CRMS.
   - If MERS rejects the request, the CRMS sends an email to the Member, which indicates that the request was rejected and provides the basis for the rejection.



# Procedure: Signing Officer Certification

Each individual proposed by a Member for appointment as a Signing Officer must be added to the CRMS as an SO and then complete the Certification process, which consists of reading the current *MERS Signing Officer Primer* ("*Primer*"), completing the Signing Officer attestation, and passing the Certification Exam.

Note: In addition to the *Rules* and *Procedures*, a Signing Officer must comply with the instructions provided by the *Primer* when exercising his/her authority as a Signing Officer.

To pass the Certification Exam, the SO must correctly answer at least eight (8) out of ten (10) randomly selected questions about MERS and the role and responsibilities of a Signing Officer. The Certification Exam tests on the contents of the *Primer*.

Once an SO is created, the CRMS sends a welcome email to the SO that provides the link to the CRMS and the SO's login credentials (user name and password). The SO may then login to the CRMS to take the Certification Exam. The following steps outline the Certification process:

1. The SO logs into the CRMS using his/her login credentials.
2. The SO changes his/her temporary password to a value that conforms to the CRMS password requirements.
3. The SO downloads the *Primer* and reads it.
4. Prior to taking the Certification Exam, the SO must complete the Signing Officer Attestation. For details, refer to *Completing the Signing Officer Attestation*.
5. When the attestation is complete, the SO takes the Certification Exam. For details, refer to *Taking the Certification Exam*.
6. The request for a Corporate Resolution remains in a pending status until all SOs complete the Certification process. Each Monday, the CRMS sends an email for each Org ID or SAA Relationship with a pending request, which states that there are SOs who have not yet passed the Certification Exam.
7. Once all SOs on the request have completed the Certification process, the CRMS routes the request to MERS for review.
8. Once the CRMS routes the request to MERS for review, MERS will approve or reject it within three (3) business days:
   - If MERS approves the request, the CRMS sends an email to the Member, which confirms that MERS approved the request and issued a Corporate Resolution appointing Signing Officers. The Corporate Resolution is available in the CRMS.
   - If MERS rejects the request, the CRMS sends an email to the Member, which indicates that the request was rejected and provides the basis for the rejection.



## Completing the Signing Officer Attestation

As part of the Certification and Recertification processes, an SO must provide an attestation concerning the requirements of being a Signing Officer.

1. Prior to taking the Certification Exam, the CRMS displays the Signing Officer attestation to the SO.
2. The SO reads the attestation requirements and then must attest that he/she:
   - Has read and understands the *Primer* and the *Rules*,
   - Is either (i) an officer of his/her organization, (ii) an officer-equivalent, if the Member qualified for the Rule 3 Exception, or (iii) a licensed attorney in good standing with a state bar and employed by the Member if the Member is a law firm that has entered into an SAA Relationship with another Member,
   - Is using a work email address assigned to only him/her by his/her employer,
   - Will abide by the *Rules* and *Procedures*, and
   - Understands that he/she becomes permanently ineligible to serve as a Signing Officer if he/she fails the Certification Exam three (3) consecutive times.
3. If the SO cannot attest to the requirements in the attestation, he/she must not attest and should close the window.
4. If the SO cannot attest because he/she is not an officer of the Member organization, or an officer-equivalent for Member's qualified for the Rule 3 Exception, he/she must inform the CM, and the CM must remove the SO role from that individual's user account in the CRMS.
5. If the SO attests, the Certification Exam begins. For details, refer to *Taking the Certification Exam*.

## Taking the Certification Exam

When the SO completes the Signing Officer Attestation, the Certification Exam begins.

1. The SO reads question one and selects an answer.
2. The SO repeats step one (1) for the remaining nine (9) questions.
3. Once all ten (10) questions are answered, the CRMS displays a summary page to the SO that contains the Certification Exam questions and his/her selected responses.
4. The SO reviews his/her responses and can make any necessary correction prior to submitting them as final.
5. The SO submits his/her final responses.



6. The CRMS displays the SO's results.
7. If the SO passed the Certification Exam, the CRMS:
   - Sets the Certification status of the SO to *Test Passed*. The SO's certification is valid until the end of the next annual Recertification period, which occurs in the month of October. For details, refer to *Annual Signing Officer Recertification*.
   - Sends the SO a confirmation email that confirms he/she passed the Certification Exam.

Note: An SO's certification applies to all Corporate Resolutions on which he/she is named a Signing Officer, under any Org ID or SAA Relationship.

8. If the SO failed the Certification Exam one (1) or two (2) consecutive times, the CRMS displays the Certification Exam results along with a message that states he/she may take the Certification Exam again on the next calendar day.
9. If the SO failed the Certification Exam three (3) consecutive times, the CRMS:
   - Displays a message that states the SO is permanently ineligible to serve as a Signing Officer.
   - Updates the Certification status of the SO to *Ineligible* and blocks the user's access to the CRMS as an SO. If the user has access to other roles, he/she may continue to access the CRMS using them.
   - For an SO who became ineligible during the Certification process, the CRMS:
     - Removes the ineligible SO from any pending request for a Corporate Resolution.
     - Sends a confirmation email to the Member and the SO, which states that he/she is permanently ineligible to serve as a Signing Officer.
   - For an SO who became ineligible during the Recertification process, the CRMS:
     - Removes the ineligible SO from any pending request for a Corporate Resolution.
     - Creates a request for an updated Corporate Resolution without the ineligible SO, for any current Corporate Resolution naming him/her, and submits it to MERS for approval or rejection.
     - Sends a confirmation email to the Member and the SO, which states that his/her authority to act as a Signing Officer is revoked, and confirms that the CRMS has submitted a request for an updated Corporate Resolution that does not include the ineligible SO to MERS for review.



# Procedure: Annual Signing Officer Recertification

Each Signing Officer must complete an annual Recertification process in October to retain his/her authority to act in the name of MERS. Recertification, like Certification, consists of reading the current *Primer*, completing the Signing Officer attestation, and passing the Certification Exam.

The CRMS notifies each SO of his/her annual Recertification requirement via email thirty-one (31), fifteen (15), and seven (7) calendar days prior to the expiration of his/her certification. Each Monday during the Recertification window, the CRMS also sends an email to the CM of any Org ID or SAA Relationship with an SO who has not yet passed the Certification Exam; the CM or CMA can use the ***Remind*** function in the CRMS to send a reminder email to these SOs.

The following steps outline the Recertification process:

1. On October 1 of each year, the CRMS changes the Certification status of all SOs with a status of *Test Passed* to *Testing* and sends an email to each SO, which states that his/her certification will expire on October 31 unless he/she takes and passes the Certification Exam.
2. Each SO logs into the CRMS, downloads the *Primer* and reads it.
3. Prior to taking the Certification Exam, the SO must complete the Signing Officer Attestation. For details, refer to *Completing the Signing Officer Attestation*.
4. When the attestation is complete, the SO takes the Certification Exam. For details, refer to *Taking the Certification Exam*.
5. On November 1, at 12:00:00 am, the Recertification window closes, and the CRMS performs the following actions:
    - Sets the Certification status of any SO who did not recertify to *Expired*. As a result of the expiration, the SO's authority to act in the name of MERS as a Signing Officer is revoked.
    - Creates a request for an updated Corporate Resolution, for each affected Org ID or SAA Relationship, to reflect the removal of any expired SOs, and submits the request to MERS for review.
    - Sends a confirmation email to the Member and the expired SO, which states that his/her authority to act as a Signing Officer is revoked, and the CRMS submitted a request for an updated Corporate Resolution that does not name the expired SO as a Signing Officer to MERS for review.

---

Note: If an SO with a Certification status of *Expired* subsequently recertifies by passing the Certification Exam, the CM may request a Corporate Resolution appointing him/her as a Signing Officer, but he/she is not authorized as a Signing Officer until the request is approved, and the Corporate Resolution appointing him/her as a Signing Officer is issued by MERS.

---



# Procedure: Quarterly Attestation Requirement

Four (4) times annually, a Member is required, through the actions of a CM, to complete the Quarterly Attestation requirement for each Org ID and SAA Relationship for which an active Corporate Resolution is issued.

A CM can complete the Quarterly Attestation requirement at any time in the CRMS by submitting either of the following:

- An attestation that the list of Signing Officers attached to the current Corporate Resolution is accurate and up-to-date
- A request for a new Corporate Resolution that contains an accurate and up-to-date pending SO list

The CRMS tracks when the Quarterly Attestation requirement is due for an Org ID or SAA Relationship and provides a one (1) month window for the CM to complete it. The Quarterly Attestation window begins three (3) months after the CM has taken the last action that satisfies the requirement.

**Example:** If you fulfill the Quarterly Attestation by submitting an attestation in February, the next Quarterly Attestation will be due in May. If you subsequently submit a request for an updated Corporate Resolution in April, the next Quarterly Attestation will be due three (3) months later in July. Each new attestation or Corporate Resolution request resets the three (3) month Quarterly Attestation timer for an Org ID or SAA Relationship.

Note: For Members with multiple Org IDs or SAA Relationships, the Quarterly Attestation requirement may be due in different months depending on the actions taken by a CM in each Org ID or SAA Relationship.

The process to satisfy the Quarterly Attestation requirement is outlined below:

1. The CM accesses the CRMS on a monthly basis to satisfy the *QA Plan Requirements for the CRMS*.
2. When the Quarterly Attestation requirement is due for an Org ID or SAA Relationship, the CRMS displays visual alerts to the CM but it does not generate email reminder notifications to the CM.
3. The CM opens the PDF version of the current Corporate Resolution, and reviews the names on the list of Signing Officers.
   - If the list of Signing Officers is accurate and up-to-date, the CM submits his/her attestation in the CRMS; this completes the Quarterly Attestation requirement for the Org ID or SAA Relationship.
   - If the list of Signing Officers is not accurate and up-to-date, the CM creates a request for a Corporate Resolution, updates the pending SO list to make it accurate and up-to-date, and submits the request to MERS for review; this completes the Quarterly Attestation requirement for the Org ID or SAA Relationship.



# Procedure: Managing User Information in the CRMS

The CM(s) is responsible for maintaining name, email address, and job title information for all users in the CRMS, and for ensuring that the Corporate Resolution remains current, including the list of Signing Officers.

## *Password Changes and Resets*

Each user in the CRMS is responsible for maintaining his/her password. No person other than the user can change his/her password, and no one can view a password in the CRMS. The Help Desk cannot manually change passwords.

A user can change his/her password at any time while logged into the CRMS. If a user does not remember his/her password, he/she can reset it using the **Forgot my Password** link on the *Login* page. The password requirements for the CRMS are listed on the *Change Password* window.

If a user fails to gain access to the CRMS in three (3), consecutive login attempts, he/she is locked out. The user must contact his/her CM or CMA to unlock the user account.

If an Org ID or SAA Relationship has a single CM, and he/she is locked out, the CM must contact the *Help Desk* for assistance.

## *Requesting the Appointment of Additional Signing Officers*

If a Member wishes to request the appointment of additional Signing Officers, the CM must create a request for a Corporate Resolution, add the new SO(s) to the pending SO list, and submit the request. Once the SOs complete the Certification process, the CRMS routes the request to MERS for review. The following steps outline this process:

1. The CM logs into the CRMS.
2. The CM creates a request for a Corporate Resolution using the current SO list as the baseline for the pending SO list.
3. The CM or CMA adds the new SOs to the pending SO list. For details, refer to *Creating the Pending SO List for a Request for a Corporate Resolution*.
4. Once the pending SO list is complete, the CM submits the request. For details, refer to *Submitting a Request for a Corporate Resolution*.

## *Removing a Signing Officer from a Corporate Resolution*

If a Signing Officer's certification expires, his/her Certification status as an SO becomes *Expired*; if he/she becomes ineligible to serve as a Signing Officer, his/her Certification status becomes *Ineligible*. When an SO's Certification status becomes *Expired* or *Ineligible,* the CRMS automatically removes him/her from the SO list of any Org ID or



SAA Relationship, and submits a request for an updated Corporate Resolution that does not include him/her, to reflect that he/she is no longer authorized to act as a Signing Officer. The CRMS also notifies the Member and the SO that the individual's authority as a Signing Officer is revoked.

If a Signing Officer leaves the Member organization, ceases to be an officer, or moves on to another role, the CM or CMA must manually remove him/her as an SO, and the CM must submit a request for an updated Corporate Resolution as follows:

1. The CM logs into the CRMS.
2. The CM creates a request for a Corporate Resolution using the current SO list as the baseline for the pending SO list associated with the request.
3. The CM or CMA removes the SO from the pending SO list.
4. Once the pending SO list is complete, the CM submits the request. For details, refer to *Submitting a Request for a Corporate Resolution*.

   Note: Once the request is submitted, if all remaining SOs are certified, the CRMS will route the request directly to MERS for review.

5. The CM removes the SO from any other Corporate Resolutions as needed.

## Updating a Signing Officer's Information

If the name, email address, or job title of a Signing Officer changes, the CM or CMA must update his/her user account in the CRMS. When a Signing Officer's name has changed, the CM must also submit a request for a Corporate Resolution to reflect the name change. The following steps outline this process:

1. The CM or CMA logs into the CRMS, locates the individual's user account, and updates it to make it accurate and current.

   Note: If the user's email address was changed, a confirmation email is sent to both the old and new email addresses.

2. If the user's name was changed, the CM must submit a request for an updated Corporate Resolution. For details, refer to *Submitting a Request for a Corporate Resolution*.

## Updating the CRMS Manager

The initial CM may add an additional CM user to an Org ID or SAA Relationship.

- For a new CRMS user, the existing CM creates the new user and assigns the CM role.
- For an existing CRMS user, the existing CM adds the role of CM to the user's record.



Once two (2) CMs are associated with an Org ID or SAA Relationship, either CM may be deleted by the other, but one (1) CM must always exist.

After the CM is updated, the CRMS:

- Sends an email to any new CM that welcomes him/her to the CRMS and provides the CM with his/her login credentials.
- Sends an email to any removed CM that confirms he/she no longer has administrative access to the CRMS for that Org ID or SAA Relationship.

## Procedure: Signing Authority Agreement (SAA)

SAAs are contracts signed by MERS, MERSCORP Holdings, a Member and an SAA Vendor, pursuant to which MERS may issue a Corporate Resolution to the SAA Vendor, appointing certain of its employees as Signing Officers and granting them authority to take certain actions in relation to loans registered on the MERS® System to the Org ID of the Member or, if applicable, its Affiliate Org ID(s). If the SAA Vendor is a vendor organization, such as a title company or document preparation vendor, then only officers of the SAA Vendor are eligible for appointment as Signing Officers. If the SAA Vendor is a law firm then only licensed attorneys in good standing with a state bar who are employed by the SAA Vendor are eligible for appointment as Signing Officers. Signing Officers appointed pursuant to an SAA must certify and recertify in the same manner as other Signing Officers. An SAA is identified on the *Welcome* page in the CRMS as an **SAA Relationship** and is listed directly under the Member's Org ID.

Only a CM can submit a request for an SAA. The request cannot be submitted by the SAA Vendor. An SAA Vendor must be a MERS® System Member.

### *Submitting a Request for an SAA*

The CM submits a request for an SAA as follows:

1. The CM logs into the CRMS, accesses the appropriate Org ID, and submits a request for a new SAA from the *SAA* tab, which includes adding the MS and VS users who will review and then approve or reject the SAA. By approving an SAA, the MS and VS electronically executes it.

   Note: While an SAA is awaiting approval, the CM can prepare the initial request for a Corporate Resolution under the SAA Relationship, which includes adding the SOs to the pending SO list and instructing them to complete the Certification process. However, the CM cannot submit the request until the SAA is executed by all parties.



2. The CRMS sends separate emails to the MS and VS notifying each that the draft SAA is awaiting his/her review. The email includes the link to the CRMS and the user's login credentials.

   Note: The MS and VS must each be an officer of his/her organization with authority to bind the Member or SAA Vendor to the terms of the SAA.

3. The MS and VS each login to the CRMS, review the draft SAA, and determine whether his/her organization should enter into the agreement:
   - If either the MS or VS rejects the draft SAA, a reason for the rejection must be provided, which is included in a notification email to the CM.
   - If both the MS and VS electronically execute the draft SAA by approving it, the CRMS routes the SAA request to MERS and MERSCORP Holdings for review, and sends a confirmation email to the Member.
4. Once the CRMS routes the request to MERS and MERSCORP Holdings for review.
   - If MERS and MERSCORP Holdings approve the SAA request, it is fully-executed. The CRMS sends a confirmation email to the Member, and the SAA is available to the Member in the CRMS.
   - If MERS or MERSCORP Holdings rejects the request, the CRMS sends a confirmation email to the Member, which includes the basis for the rejection.
   - If MERS and MERSCORP Holdings both approve the SAA, the CM may submit the initial request for a Corporate Resolution under the SAA Relationship.

## *Terminating an SAA Relationship*

A CM can terminate an SAA Relationship in the CRMS as follows:

1. The CM logs into the CRMS, and accesses the SAA Relationship from the *Welcome* page.
2. The CM navigates to the *Corporate Resolution* tab, clicks ***Terminate SAA***, reads the confirmation message to understand the implications of terminating the SAA, and clicks ***OK*** to proceed.
   - The SAA is terminated, and any Corporate Resolution issued pursuant to it is revoked.
   - The CRMS updates the status of the SAA Relationship to *Revoked* and denies the Member access to it.
   - The CRMS sends an email to the Member to confirm the SAA's termination and its consequences.



# Procedure: Status Changes in the CRMS

## Submitting a Request to Deactivate an Org ID the CRMS

The Member's CM can submit a request to deactivate the Member's Org ID in the CRMS. If that request is approved by MERS:

- Any Corporate Resolution issued to the Member for that Org ID is revoked.
- The CRMS updates the status of the Org ID to *Deactivated* and denies the Member access to it. This deactivation does not impact the Member's access to the MERS® System.
- Any SAA Relationship associated with the Org ID **is not** affected. Access to the SAA Relationship is permitted and any Corporate Resolution issued under it remains in effect.
- The CRMS sends a confirmation email to the Member and any affected Signing Officers, which confirms the deactivation and its consequences.

## Resignation and Termination of Membership in CRMS

The resignation or termination of a Member's MERS® System membership results in the following:

- The CRMS updates the status of the Member's Org ID to *Resigned* or *Terminated*, as appropriate and access to that Org ID is denied for all users associated with it.
- Any Corporate Resolution issued to the Member is revoked.
- The CRMS updates the status of any SAA Relationship to which the Member is either the Member or the SAA Vendor to *Revoked* and access to that SAA Relationship is denied for all users associated with it.
- Any SAA the Member is a party to is terminated and any Corporate Resolution issued pursuant to such SAA is revoked.
- The CRMS sends a confirmation email to the Member and any affected Signing Officers, which confirms the resignation/termination and its consequences.

## Reactivation after Resigned Status

When an Org ID with a status of *Resigned* is reactivated in the CRMS, its status is set to *New*.

1. The CRMS sends a welcome email to the CM that contains the link to the CRMS and the CM's login credentials.



2. The CM must create and submit a request for a Corporate Resolution. No previously appointed Signing Officer is authorized to act in the name of MERS until a current Corporate Resolution naming him/her as a Signing Officer is issued by MERS.

3. If any SO remains certified at the time of reactivation, the SO's Certification status appears as *Test Passed*; otherwise the SO must complete the Certification process.

# Procedure: MERS Corporate Seals

MERS and MERSCORP Holdings do not require that a MERS Corporate Seal be affixed to all documents signed by Signing Officers. However, if applicable laws, rules or regulations require that a seal be affixed to a document, and a Signing Officer is signing that document as an officer of MERS, then the MERS Corporate Seal should be affixed because it is MERS that is acting through its officer.

A JPG image of the MERS Corporate Seal is available for download from the Announcements section of the CRMS and should be used when ordering a MERS Corporate Seal through your office supply vendor.

If a Member or SAA Vendor no longer needs a MERS Corporate Seal in its possession, the Seal should be destroyed in accordance with best practices or returned to MERSCORP Holdings for proper disposal.

# Reports

The following reports are available in the CRMS:

- *Corporate Resolution History*
- *Quarterly Attestation History*
- *Certification History*
- *User Roles*



# Additional Document Requirements

**Important:** In all cases, where there is a conflict between the requirements of an applicable jurisdiction and the MERS® System requirements, the jurisdictional requirements take precedence.

## Requirements for all Recordable MERS Documents

- MERS must be referenced in one of the following ways:
  - Mortgage Electronic Registration Systems, Inc.
  - Mortgage Electronic Registration Systems, Inc., as nominee for *[Lender]*, its successors and assigns

    Note: The placeholder *[Lender]* in the statement above must be replaced with the appropriate Member name as follows:
    - MOM Loan: The original lender as shown on the MOM Security Instrument.
    - Non-MOM Loan: The name of the lender for which MERS is a nominee at the time MERS is taking action (e.g. assigning the mortgage or releasing the lien).
- If MERS is referred to as a **nominee** in the document then the language “its successors and assigns” must be included in the reference to MERS as shown above.
- MERS should not be referred to as any of the following:
  - *Servicer*
  - *Lender*
  - *Beneficial owner*
  - *Investor*
  - *Trustee*
  - *Note owner*
- Appropriate references to MERS may include the following:
  - *Mortgagee* (if the Security Instrument is a mortgage)
  - *Beneficiary* (if the Security Instrument is a deed of trust)
  - *Grantee* (if the Security Instrument is a security deed)
  - *Holder*
  - *Lienholder*
- For the states of Washington, Oregon, and Montana, MERS should only be referenced as the nominee for the Lender on deeds of trust, or subsequent documents, appearing in the chain of title.



- When assigning mortgage liens from MERS, or for other recordable documents, the following language must be used in the body of the assignment or document:

  *Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for [original lender], beneficiary of the security instrument, its successors and assigns.*

- When assigning mortgage liens to MERS, the following language must be used in the body of the assignment:

  *Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for [current lender], beneficiary of the security instrument, its successors and assigns.*
  *MERS is appointed as the nominee for the Beneficiary to exercise the rights, duties and obligations of the Beneficiary as Beneficiary may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part the Security Instrument, foreclosing or directing the trustee to institute foreclosure of the Security Instrument, or taking such other actions as Beneficiary may deem necessary or appropriate under the Security Instrument. The Beneficiary designates MERS as the nominee for the Beneficiary and any notice required by applicable law or the Security Instrument to be served on the Beneficiary must also be served on MERS as the designated nominee for Beneficiary.*

Additionally, Fannie Mae and Freddie Mac have published a *Mortgage Electronic Registration Systems, Inc. Rider ("MERS Rider")* (Form 3158) to modify the standard security instruments used in these states.

- If required by the applicable jurisdiction or the MERS® System QA Standards, include the correct address for MERS. The correct address to use for MERS on recordable documents varies by state as follows:
  - All states *except* New York, Pennsylvania, Indiana and Mississippi:

    P.O. Box 2026, Flint, MI 48501-2026
  - The states of New York, Pennsylvania, Indiana and Mississippi:

    1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026

Note: For UCC financing statements (UCC-1, UCC-3), the PO Box address is the correct address for MERS in all states.

- The SIS Phone Number must be referenced as one of the following:
  - (888) 679-6377
  - (888) 679-MERS
- For documents that require the signature of a Signing Officer, the document and Signing Officer must adhere to the requirements set out in Signing Officer Requirements.



- If required by law, or otherwise, to apply a seal to a document signed by MERS, the MERS corporate seal must be used.

## Signing Officer Requirements

- The name of the Signing Officer printed on the document must match the Signing Officer's name as it appears on the Corporate Resolution issued to that Member or to one of its SAA Vendors pursuant to a Signing Authority Agreement.
- The Signing Officer must be authorized to act in the name of MERS at the time the document was executed, pursuant to appointment by the current Corporate Resolution issued to that Member or one of its Vendors pursuant to a Signing Authority Agreement. Please note that when a new Corporate Resolution is issued to a Member or SAA Vendor, it replaces any Corporate Resolution previously issued to that Member or SAA Vendor, including the list of authorized Signing Officers.

  Example: A Member was issued a Corporate Resolution on 1/1/13 and another on 2/1/13. A loan document was executed on 3/1/13. The Corporate Resolution issued on 2/1/13 was effective when the loan document was executed.
- The name printed on the document should exactly match (first and last name; middle name does not need to appear on the document, but if it does, then it must exactly match) the name appearing on the appropriate Corporate Resolution. If only a first initial was provided for the Signing Officer on the applicable Corporate Resolution (due to the Signing Officer’s full middle name being provided as an alternative, e.g. F. Scott Fitzgerald) then the name printed on the document must include first initial, middle name and last name; only printing the first initial and last name on the document is not permitted (e.g. F. Fitzgerald).
- The signature of the Signing Officer need not match exactly, but it should be consistent with the printed name on the document.
- The title appearing with a Signing Officer’s signature must be one of the following:
  - Assistant Secretary
  - Assistant Vice President
  - Vice President



- The Signing Officer must be an officer of the Member organization or third-party SAA Vendor to which the Corporate Resolution was issued, at the time the document was executed.
  - The only permitted exception to this requirement is for licensed attorneys (who are in good standing with a state bar) that were appointed as Signing Officers (pursuant to a Signing Authority Agreement) with a third-party law firm.
  - Documents confirming the Signing Officer's status as an officer of the Member or its SAA Vendor, or as a licensed attorney employed by a third-party law firm, may include, but are not limited to, internal corporate resolutions, charters, board consents, and affidavits from a different corporate officer.

# Date Discrepancies

- A MERS document should not have an effective date that is different from the date on which the document was actually signed.

# Assignment from MERS

- MERS should only be reflected as assigning the Mortgage/Deed of Trust/Security Deed.
- MERS should not be reflected as assigning the note/indebtedness/promissory note/debt. The following are examples of language that should not be included in a MERS assignment:
  - Together with the note/promissory note/indebtedness
  - And the note/promissory note/indebtedness
  - Along with the note/promissory note/indebtedness
  - Assigns the note/promissory note/indebtedness
  - Transfers the note/promissory note/indebtedness
- Do not use the word "sells" to describe the action being taken by MERS as assignor.
- Permissible language to describe the action being taken by MERS includes "assigns", "transfers" or "conveys".
- MERS holds legal title, not the beneficial interest:
  - Do not include language in the assignment that indicates MERS is assigning the/its beneficial interest.
  - Permissible language in an assignment would be to indicate MERS is assigning its interest in the Security Instrument (i.e. mortgage, deed of trust, security deed) or that MERS is assigning the Security Instrument (i.e. mortgage, deed of trust, security deed).



- The address for MERS is not required unless required by the applicable jurisdiction.
- The Assignment should be signed by a Signing Officer.

# Assignment to MERS

- If a Mortgage is assigned to MERS, ensure that MERS is appropriately described in the Assignment, and that it conforms to the standards for Non-MOM loans.
- The Assignment to MERS should not include language indicating that the note/indebtedness/promissory note/debt is being assigned to MERS. The following are examples of language that should not be included in an Assignment to MERS:
  - Together with the note/promissory note/indebtedness
  - And the note/promissory note/indebtedness
  - Along with the note/promissory note/indebtedness
  - Assigns the note/promissory note/indebtedness
  - Transfers the note/promissory note/indebtedness
- Do not use the word “sells” to describe the action being taken by the assignor unto MERS, the assignee.
- Permissible language to describe the action being taken by the assignor unto MERS, the assignee, includes "assigns", "transfers" or "conveys".
- MERS holds legal title, not the beneficial interest:
  - Do not include language in the assignment that indicates MERS is being assigned the beneficial interest.
  - Permissible language in an assignment would be to indicate MERS is being assigned the assignor’s interest in the Security Instrument (i.e. mortgage, deed of trust, security deed) or that the assignor is assigning the Security Instrument (i.e. mortgage, deed of trust, security deed) to MERS.
- The correct address for MERS is required on the Assignment to MERS.

# Document Requirements for MERS Loans

MERSCORP Holdings does not mandate specific language changes to mortgage loan documents. However, the following three requirements must be satisfied for MOM and Non-MOM loans:

1. **Legal Title:** Legal title to the mortgage lien or the lien of other security agreements must be vested in Mortgage Electronic Registration Systems, Inc., a Delaware stock corporation with an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS (6377).



2. **MIN:** The 18-digit mortgage identification number ("MIN") required for each loan registered on the MERS® System must be placed in a visible location on the cover page (or first page if there is no cover page) of each of the following documents: (a) mortgage or deed of trust, (b) any other Security Instrument, (c) assignment of Security Instrument to or from MERS, (d) lien release or reconveyance and (e) any other instrument recorded in the public land records in which MERS has a legal interest.

3. **SIS Phone Number:** For loan documents with a "Definitions" section, include the SIS Phone Number in the definition of "Mortgage Electronic Registration Systems, Inc.". For other loan documents, place the SIS in a visible area of the document, unless that placement does not comply with the local jurisdiction's recording requirements.

**Important:** In all cases, the local jurisdiction's recording requirements take precedence over MERS® System requirements.

Placement of the MIN on other loan documentation is optional for the Lender.

## *MIN and SIS Phone Number Placement Requirements*

| Document | Process | Requirement |
|---|---|---|
| Note | Mortgage granted to MERS at origination | Check with individual Investors for specific delivery requirements. |
| Mortgage | Mortgage granted to MERS at origination | The MIN and SIS Phone Number (888-679-MERS) are required on the Security Instrument for MOM loans. |
| Deed (e.g., Deed of Trust, Security Deed) | Mortgage granted to MERS at origination | The MIN and SIS Phone Number are required on the Security Instrument for MOM loans. |
| Assignment to MERS | Mortgage assigned to MERS post origination | The MIN and the SIS Phone Number are required on the *Assignment to MERS* for non-MOM loans. |
| Assignment from MERS | Mortgage assigned from MERS | The MIN and the SIS Phone Number are required on the *Assignment from MERS* for MERS Loans. |
| Lien Release | Payment in full of Mortgage loan | The MIN and the SIS Phone Number are required on the lien release for MERS Loans. |
| Assumption | Change in Borrower | The MIN and the SIS Phone Number are required on any assumption recorded in the public land records for MERS Loans. |
| Modification | Change in loan terms or Security Instrument | The MIN and the SIS Phone Number are required on any modification of loan terms or Security Instrument recorded in the land records for MERS Loans. |
| Subordination | Subordination to additional | The MIN and the SIS Phone Number are |



| Document | Process | Requirement |
|---|---|---|
| Agreement | loan | required on any subordination agreement recorded in the public land records for MERS Loans. |
| Substitution of Trustee | Substitute a different Trustee on a Deed of Trust | The MIN and SIS Phone Number are required on the Substitution of Trustee for MERS Loans. |
| UCC-1 | Co-op Mortgage assigned to MERS at origination | The MIN and SIS Phone Number are required on the UCC-1 for MOM loans. |
| UCC-3 | Co-op Mortgage assigned to MERS post origination | The MIN and SIS Phone Number are required on the UCC-3 for non-MOM loans. |
| UCC-3 | Co-op Mortgage assigned from MERS | |
| UCC-3 | UCC-3 agreement for co-op Mortgage terminated | The MIN and SIS Phone Number are required on the UCC-3 for MERS Loans. |
| iRegistration Documents | All processes | No MIN, SIS Phone Number, MERS language, or MERS address should appear on any document recorded in the public land records while the loan is an iRegistration, unless MERS was once the Mortgagee. |

Note: For blanket assignments, the corresponding MIN must appear with each Security Instrument covered by the blanket assignment.

# Sample Changes - Naming MERS as Mortgagee on a Security Instrument

MERSCORP Holdings does not generally render legal advice to Lenders. The following material is provided to give Lenders guidance on the changes that may be appropriate to achieve our requirements. Specific state or local recording laws, and agency or Investor requirements, may require other changes to the documents. Lenders and their counsel are free to make other changes that they believe are necessary or appropriate to conform their documents to the requirements of the MERS® System.

The 18-digit MIN must be visible on the Security Instrument. Place the MIN to the right of the form title, but not within the top recording margin or on the right margin.

The specific language required to name MERS as Mortgagee and the correct placement of this language in a document may vary from state to state. Below is just a generic sample of what changes may need to be made. Please check with your documentation preparation vendor for state specific forms.

### *In the Definitions section:*

*MERS as mortgagee/beneficiary/grantee language; e.g.*



"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the [mortgagee /beneficiary/ grantee] under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS (6377).

### *In the granting clause:*

*MERS noted as mortgagee/beneficiary/grantee solely as nominee for lender and lender's successors and assigns; e.g.*

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby [mortgage,] grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in

*or*

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in

*Add Borrower consent sentence; e.g.*

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## *Sample Documents*

The following sample documents are available on the Members website (*MERS® Products > MERS® System > Reference Materials > Sample Documents*):

---

Note: The sample documents below do not represent MERSCORP Holdings' requirements for document preparation; they are illustrative examples that demonstrate how our requirements may be implemented. For example, the address for MERS is included in the sample Lien Release, but this is not one of our Lien Releases requirements.

---

- *Sample MOM Deed of Trust*
- *Sample MOM Mortgage*

MERS

- *Sample Assignment of Mortgage **to** MERS*
- *Sample Assignment of Mortgage **from** MERS*
- *Sample Lien Release*
- *Sample Loan Modification Agreement*
- *Sample Consolidation, Extension and Modification Agreement*
- *Sample California Assignment MERS to MERS*
- *Sample Subordination Agreement*
- *Sample Subordination of Lien*
- *Mortgagee's Affidavit* ("MIN Affidavit")
- For Co-ops:
  - *UCC-1 Naming MERS as the Original Secured Party*
  - *UCC-3 Assigning Security Interests **to** MERS*
  - *UCC-3 Assigning Security Interests **from** MERS*
  - *UCC-3 Termination Agreement*



# Glossary

| Term | Definition |
|---|---|
| ***Acquisition Date*** | The date of acquisition recognized in the books and records of the Purchaser. |
| ***Affiliate Org ID*** | An additional Org ID issued to a *Primary Member* pursuant to a *Primary/ Secondary Relationship Agreement*. An Affiliate Org ID shall not be used to identify a distinct legal entity . Rather, an Affiliate Org ID may be used by a Primary Member to identify a department, line of business or internal division of such Primary Member |
| ***Agency*** | An agency of the federal government involved in the mortgage industry. The three main agencies are Fannie Mae, Freddie Mac, and Ginnie Mae. |
| ***Agency ID*** | A number assigned by a government agency to uniquely identify a mortgage company. The Agency ID field identifies the organization that sold the loan to the Agency. Once populated with the correct value, the Agency ID should not be updated unless the loan is transferred to another Agency *Investor*. During an Option 1 TOB transaction, the new Investor updates the value of the Agency ID field to identify the Member that sold the loan. |
| ***ANSI Place Code*** | A standardized set of numeric codes issued by the American National Standards Institute (ANSI) that consists of all the census designated places and incorporated places for all states, as well as county subdivisions in states with strong minor civil divisions. |
| ***Assignment*** | A transfer to another of any property, real or personal, or of any rights or estates in said property. |
| ***Assignment Date*** | The date that an Assignment to MERS or an Assignment from MERS is executed. |
| ***Assignment from MERS*** | A legal instrument/document that transfers the interest held by MERS in a Mortgage from MERS to another entity. |
| ***Assignment to MERS*** | A legal instrument/document that transfers the interest held by an entity in a Mortgage from that entity to MERS. |
| ***Associated Member*** | A MERS® System Member that has been granted inquiry only access to loan information by the *Servicing Member* of a mortgage loan registered on the MERS® System. |
| ***Assumption*** | Taking over by one party of an obligation that was originally incurred by another. In the MERS® System, this results in replacement of the Primary Borrower and all Co-Borrowers. |
| ***Batch*** | A group of one of more MINs identified to be included in a Transfer of Beneficial (*TOB*) or Servicing Rights (*TOS*) transaction. |
| ***Batch File*** | An asynchronous, *System-to-System* interface for a Member to submit transactions to the MERS® System. |
| ***Batch Inquiry*** | Transaction used to look up information on loans matching search criteria entered using a flat file format. |
| ***Broker*** | A Line of Business assigned to a Member that acts as an agent to bring together borrowers and lenders in a mortgage loan transaction. |
| ***Bulk Transfer*** | The process of transferring the *Servicing Rights* of multiple loans on the |



| Term | Definition |
|---|---|
| | MERS® System in a one-time transaction. |
| ***Business Integration Resource (BIR)*** | The MERSCORP Holdings employee who helps a Member to incorporate the MERS® System into its business processes. |
| ***CEMA*** | Consolidation, Extension, and Modification Agreement. Also known as MECA (Modification, Extension, and Consolidation Agreement) |
| ***Check Digit*** | The final digit of the 18-digit Mortgage Identification Number (*MIN*), which is calculated using the MOD 10 Weight 2 algorithm. |
| ***Co-Borrower*** | The person listed as the primary borrower for a loan on the Member's *System of Record* is identified as the *Primary Borrower* on the MERS® System. Each additional borrower listed on the Member's System of Record is identified as a Co-Borrower on the MERS® System. |
| ***Companies*** | A reference to both *MERSCORP Holdings* and *MERS*. |
| ***Compliance Officer*** | Optional MERS® System contact who is responsible for regulatory internal requirements for the Member. |
| ***Collateral Agent*** | A Line of Business assigned to a Member that holds collateral on behalf of a lender as security for performance of a borrower's obligations under a loan agreement. |
| ***Confirmation*** | The transaction used by an Investor, Servicer, or Subservicer to indicate if a pending transfer transaction should be accepted or rejected. |
| ***Conversion*** | The process by which an iRegistration loan is converted to a Non-MOM loan if it is assigned to MERS. Uses the Registration transaction. |
| ***Corporate Resolution Management System (CRMS)*** | A web-based application (owned and operated by MERSCORP Holdings) used by Members to request Corporate Resolutions appointing Signing Officers and to manage the certification of Signing Officers. |
| ***County Recorder*** | A Line of Business assigned to a Member that is a local government department that maintains the public records and documents related to the ownership of real estate for a county. |
| ***CRMS Manager (CM)*** | The Member contact responsible for managing and administering the CRMS for the Member. The CM is required to be an employee of the Member. |
| ***Customer Service - Primary*** | Mandatory MERS® System contact who handles public requests for information about loans registered on the MERS® System. |
| ***Customer Service - Secondary*** | Optional MERS® System contact who acts as the back-up for the Member's Primary Customer Service contact. |
| ***Deactivation*** | The process of making a loan inactive on the MERS® System including in conjunction with the Resignation or Termination of Membership.<br>A loan is deactivated if the debt no longer exists, or the loan is assigned out of MERS. The following deactivation transactions are available:<br>• Paid in Full (includes payoff, deed in lieu, short sale, etc.)<br>• Transfer to non-MERS Status<br>• Involuntary transfer/default by Servicer<br>• Involuntary transfer/default by Subservicer<br>• Foreclosure Complete<br>• Deactivate-Assigned from MERS for Default or Bankruptcy |



| Term | Definition |
|---|---|
| ***Deactivation Reversal*** | The transaction used to reactivate a MIN for the same borrower, property, and lien type that was deactivated in error. MINs deactivated as **Paid in Full** or **Foreclosure Complete** cannot be reactivated via *re-registration*; if deactivated in error, reverse these transactions using the appropriate Deactivation Reversal transaction. |
| ***Document Custodian*** | A Line of Business assigned to a Member that holds and administers documents related to mortgage loans for an Investor. |
| ***Document Preparation Provider*** | A Line of Business assigned to a Member that provides document preparation services. |
| ***DTD*** | Document Type Definition. A file that defines the "markup language" that will be used to describe the data. It defines and names the elements that can be used in the document, the order in which the elements can appear, the element attributes that can be used, and other document features. |
| ***EDI*** | Electronic Data Interchange. The *System-to-System* exchange of business transactions between one or more business partners in a standard format. |
| ***Effective Transfer Date*** | The date, as defined in the Purchase and Sale Agreement, upon which the transfer of servicing rights and/or beneficial ownership occurs for a loan included in a TOB, TOS, or TOS/TOB Combo transaction. For a transfer of servicing, this is the date that the new Servicer begins to service the loans on its System of Record. |
| ***eNote*** | A Transferable Record as defined by *ESIGN* or *UETA*, whichever is applicable. |
| ***eRegistry Contact*** | MERS® System contact who is responsible for responding to MERS® eRegistry questions on behalf of the Member. Only required for MERS® eRegistry Members. |
| ***ESIGN*** | Electronic Signatures in Global and National Commerce Act.<br>A federal statute that establishes the legal validity and enforceability of electronic signatures, contracts, and other records in interstate and foreign commerce transactions, if not superseded by certain state laws otherwise authorizing such activities. |
| ***ETA*** | Electronic Tracking Agreement. An agreement that is used when a mortgage Originator pledges mortgages to a warehouse lender as collateral through a line of credit or other financing arrangement. |
| ***Executive Sponsor*** | Mandatory MERS® System contact who is a senior executive responsible for the MERS® System operations in the Member organization. The Executive Sponsor acts as the liaison between a Member and the MERS Entities and should have full authority to act on behalf of the Member in connection with the MERS® System and the Member's dealings with MERSCORP Holdings and MERS. |
| ***FHLB/FRB*** | A Line of Business assigned to a Member that is one of the Federal Home Loan Bank cooperatives. |
| ***FIPS Code*** | The code assigned by the Federal Information Processing Standards (FIPS) Publications issued by the National Institute of Standards and Technology (NIST) to represent a county or other entity treated as an equivalent legal and/or statistical subdivision of the 50 states, District of Columbia, and the possessions and freely associated areas of the United States. |



| Term | Definition |
|---|---|
| ***Flat File Format*** | The optional, proprietary System-to-System interface for transacting with the MERS® System. Members that are not X12 capable can use this format. The Flat File format is the recommended interface for submitting System-to-System transactions to the MERS® System. |
| ***Flow Loan Registration*** | A loan registered on the MERS® System within 270 or fewer calendar days of the Note Date. |
| ***Flow Transfer*** | A transfer transaction with a Transfer Date that is 270 or fewer calendar days after the *Note Date*. There is no fee for this transaction or limitation on the number of times a MIN can be included in Flow Transactions. |
| ***Foreclosure Status*** | The current status of a MIN in foreclosure as reported by the Member. The following foreclosure statuses are currently available for use on the MERS® System:<br>• Statuses that deactivate a MIN:<br>  o Deactivation-Assigned from MERS for Default or Bankruptcy<br>  o Foreclosure Complete<br>• Statuses that leave a MIN in an Active status:<br>  o Foreclosure pending (option 3), iRegistration<br>  o Reinstated or modified (option 3), iRegistration<br>  o Reinstated or modified (option 2) - only available as an update to a loan with a MIN status of Foreclosure pending (option 2).<br>The following statuses are no longer available but may have been previously assigned to a MIN:<br>• Foreclosure pending (option 2), retained on the MERS® System<br>• Reinstated or modified (option 1), assigned back to MERS<br>• Reinstated or modified (option 1), not assigned back to MERS-deactivate<br>• Reinstated or modified (option 1), not assigned back to MERS-iRegistration |
| ***Funding Date*** | The date the borrower becomes obligated for the debt and interest starts to accrue. In some states, this may be different from the date the borrower signs the note, or the date the note is drawn. Any data in the Funding Date field is automatically removed from a MIN sixty days after registration. The removal of the Funding Date is reported on the Member's *Maintenance Verification (MA) Report* and documented in a MIN audit record. |
| ***General Member*** | For lenders that typically service loans. General memberships are available in four different tiers based on annual volume of loan originations or servicing (whichever is greater). |
| ***General Public*** | Refers to any non-Member that requests information. |
| ***Global Address List (GAL) email*** | The email address provided by the Member for Service of Process and other official MERS® System communications. It should be an email address on the Member's corporate system that is dedicated to our communications and must be monitored daily by the Member. To change this email address, the Member must contact the Help Desk. |
| ***Governing Documents*** | The *MERS® System Rules of Membership*, the *Membership Application*, and the *Procedures Manual*, which collectively constitute the Membership Agreement between the Member and the *Companies*. |



| Term | Definition |
|---|---|
| ***Government Housing Agency*** | A Line of Business assigned to a Member that is a state or federal housing agency. |
| ***Guarantor - Ginnie Mae*** | Guarantees Investors the timely payment of principal and interest on mortgage backed securities backed by federally insured or guaranteed loans. Appears in the Investor field although Ginnie Mae is neither the owner of the beneficial interest in the loan nor the securitization Trustee. |
| ***Help Desk*** | Provides support for the MERS® systems and procedures, via telephone and email, to MERS® System Members. |
| ***Integration*** | The process by which a Member completes procedural changes, training, and system testing of transactions prior to being live in the MERS® System. |
| ***Interim Funder*** | An organization with an interim financial interest in a loan prior to the sale of the loan to the permanent Investor. |
| ***Interim Funder Interest*** | The financial interest on a loan that an organization has prior to the sale of the loan to the permanent Investor. Examples of organizations are warehouse lenders, Wall Street firms, and other parties that extend interim funding to Originators. |
| ***Intracompany Transfer*** | A servicing transfer transaction on the MERS® System between two Org IDs associated pursuant to a *Primary/Secondary Relationship Agreement*. |
| ***Intracompany Transfer Fee*** | The fee charged to a Member for an Intracompany Transfer. |
| ***Investor*** | The owner of the legal, beneficial, or equitable indebtedness secured by a Mortgage or deed of trust, or owner's designee. |
| ***iRegistration*** | Loan registered on the MERS® System for tracking purposes only, where MERS is not the *Mortgagee*. |
| ***Legal Contact*** | Mandatory MERS® System contact who is responsible for coordinating communication between the MERSCORP Holdings Law department and the Member's legal counsel regarding litigation and other legal issues. |
| ***Lender*** | The payee on the Note. |
| ***Lien Release*** | An instrument/document releasing the security interest created by a Mortgage and recorded in the applicable public land records. This includes but is not limited to discharges, satisfactions and reconveyances. |
| ***Line of Business (LOB)*** | The types of business in which a Member is active on the MERS® System. These are listed in the Member's *Member Profile*. |
| ***Lite Member*** | A lender that has signed a MERS® System Member Agreement solely so that it can sell loans with MERS as the Mortgagee and Nominee for the lender on the Security Instrument to other MERS® System Members. Lite Members sell all loans "servicing-released" within 120 days of the Note Date. |
| ***Lockout*** | Process whereby, and status with which, a Member's access to the MERS® System is temporarily denied, including, but not limited to, preventing any new registrations and documenting transfers of ownership or servicing rights within the MERS® System (does not block legal transfers of ownership and servicing rights).<br>Lockout does not affect any signing authority granted by MERS to the Member or to third-parties acting on the Member's behalf. Lockout also |



| Term | Definition |
|---|---|
| | does not affect the Member's access to the CRMS. |
| ***Mail Room Contact*** | Optional MERS® System contact who is responsible for handling mail received by the MERSCORP Holdings Mail Center for your organization. |
| ***Master Servicer*** | A Line of Business assigned to a Member that services mortgage loans pooled in a mortgage-backed security. |
| ***Member*** | A legal entity that has signed and submitted a Membership Application to MERSCORP Holdings Inc., received an Organization Identification Number(s), and been approved for integration, and whose membership has not been terminated or resigned; provided, however, that a Third Party Originator (TPO) Member is not required to enter into Integration. |
| ***Member Profile*** | Information about a Member that is required at the time of initial integration with the MERS® System. The Member Profile indicates the Member's MERS® System process preferences, billing, and other relevant information. |
| ***Membership Agreement*** | The contract between the Member and the *Companies* to abide by the terms and conditions of the *Governing Documents*. If a MERS® System Member elects to become a Member of the MERS® eRegistry, that entity is also bound by the terms of the MERS® eRegistry Addendum. |
| ***Membership Application*** | The document used to apply for membership in the MERS® System as a Residential, Lite, Patron, or Third Party Originator (TPO) Member. MERSCORP Holdings has sole discretion in determining the type of membership and level of access to the MERS® System permitted to each Member. |
| ***MERS*** | Acronym for Mortgage Electronic Registration Systems, Inc., a Delaware corporation and wholly-owned subsidiary of MERSCORP Holdings. |
| ***MERS Corporate Resolution ("Corporate Resolution")*** | A resolution of MERS granting specifically-identified persons limited authority to take certain actions in the name of MERS as enumerated in the resolution. |
| ***MERS Entities*** | Refers to both MERSCORP Holdings and MERS |
| ***MERS Loan*** | A mortgage loan for which MERS is the mortgagee, beneficiary, grantee, nominee of the lender, or other secured party. |
| ***MERS Signing Officer ("Signing Officer")*** | An individual appointed by MERS through the issuance of a Corporate Resolution and granted limited authority to take certain actions in the name of MERS as enumerated in the Corporate Resolution. Signing Officers were formerly known as MERS "Certifying Officers." |
| ***MERS®*** | The trade name used by MERSCORP Holdings and MERS regarding products and/or services relating to MERS's role as Mortgagee. |
| ***MERS® eDelivery*** | A secure method for distributing eMortgage packages from one MERS® eRegistry Member to another, using the existing MERS® eRegistry infrastructure and transaction security requirements. |
| ***MERS® eRegistry*** | A legal system of record that identifies the owner (Controller) and custodian (Location) of the authoritative copy for registered eNotes. |
| ***MERS® Integration Contact*** | Person responsible for managing the implementation and integration of the MERS® System process into the Member's operations. Receives Integration Surveys, and initial administrative access to the CRMS. |



| Term | Definition |
|---|---|
| ***MERS® InvestorID*** | An initiative to provide more transparency regarding residential mortgage loans. |
| ***MERS® Link*** | Browser-based access to the MERS® System to retrieve information about the current Servicer of a mortgage registered on the MERS® System. If supported by the Servicer, it may provide a link to the Servicer's website for Customer Service information. MERS® Link also can be accessed via the American Land Title Association (ALTA) website or by subscription. |
| ***MERS® OnLine*** | The browser-based interface to the MERS® System that Members use to access and update registered Mortgage loans. |
| ***MERS® ServicerID*** | Online system that allows an individual or a Member, who can verify certain information related to a loan on the MERS® System, to obtain contact information for the current Servicer, and optionally Investor, of the loan. URL: *mers-servicerid.org*. |
| ***MERS® System*** | The national, electronic registry owned and operated by MERSCORP Holdings, which tracks changes in Mortgage servicing rights and beneficial ownership interests in loans secured by residential real estate. |
| ***MERS® System Penalty Schedule*** | The schedule of certain monetary penalties related to (i) violations of the *Governing Documents*, (ii) errors, delays or other conduct materially detrimental to the operation of MERSCORP Holdings, MERS, the MERS® System or other Members, or (iii) improper use of the MERS® System. |
| ***MERS® System Pricing Schedule*** | The schedule of *Pricing* for the MERS® System. |
| ***MERS® System Procedures Manual ("Procedures")*** | The Procedures describe how business processes in mortgage banking are affected by the Rules, policies, and procedures of the MERS® System, and details the requirements of the MERS® System Quality Assurance program. |
| ***MERS® System Rules of Membership ("Rules")*** | The Rules define the legal framework for the relationship between the Member and the MERS Entities. The Rules, along with the Procedures and the Membership Application, comprise the *Governing Documents* of the MERS® System, which together constitute the *Membership Agreement* between the Member, the MERS Entities, and the MERS® System. |
| ***MERSCORP Holdings*** | Means MERSCORP Holdings, Inc. (formerly known as MERSCORP, Inc.), a Delaware corporation that owns and operates the MERS® System, MERS® eRegistry, and the Corporate Resolution Management System (CRMS). MERSCORP Holdings is the parent company and the service provider to MERS. |
| ***Milestone*** | A significant event for a MIN on the MERS® System like a Registration, Transfer or Reversal transaction. The list of Milestones for a given MIN is available on the Milestone page for Primary and Associated Members only. Additionally, the *MIN Milestones (VA) report* is generated for Associated Members when a Milestone transaction takes place on a MIN. Milestones reflect the internal operation of the MERS® System and should not be provided to non-Members. MIN Milestones can be an important resource for Members who need to reconcile the history of a MIN. |
| ***MIN*** | Acronym for **Mortgage Identification Number**. The MIN is a unique 18-digit number that is permanently assigned to a Mortgage registered on the MERS® System. The MIN is composed of a Member's 7-digit *Org ID*, a |



| Term | Definition |
| --- | --- |
| | 10-digit *Sequence Number*, and a *Check Digit*. |
| ***MIN Archival*** | The process that removes MINs that have been deactivated on the MERS® System. Limited information is still available on the MIN. |
| ***MIN Status*** | The field reflecting the reason for current status of a loan on the MERS® System as reported by the Member. |
| ***MOM*** | A loan secured by a **MERS as Original Mortgagee** Security Instrument. The language written into a MOM Security Instrument establishes MERS as the Mortgagee and Nominee for the Lender, its successors and assigns. |
| ***Mortgage*** | An interest in or a lien against property created by written instrument providing security for the repayment of a debt and/or the performance of a duty. References herein include deed(s) of trust, mortgages and security deeds, and any other form of *Security Instrument* under applicable law. |
| ***Mortgage Insurance Co.*** | A Line of Business assigned to a Member that issues insurance policies that protect lenders and Investors against potential loss in the event of borrower default on a mortgage loan. |
| ***Mortgagee*** | The party that takes, holds, or receives a pledge of an interest in or lien against property as security for the payment of debt; the pledge is evidenced by a Mortgage and recorded in the applicable public land records. References herein to "Mortgagee" include the named beneficiary or nominee of the lender under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law. |
| ***My MERS®*** | The MERS® OnLine functionality that allows Members to create a list of frequently used Org IDs. |
| ***Nominee*** | A person or entity designated to act for another as representative in a limited sense; the agency relationship specifically expressed in the terms of the Fannie Mae / Freddie Mac Uniform Security Instruments identifying MERS as Original Mortgagee (MOM). |
| ***Non-MOM*** | A loan secured by a Mortgage that names MERS as Mortgagee through an *Assignment to MERS*. Non-MOM loans include iRegistration loans subsequently converted to a Non-MOM. |
| ***Non-Urgent Mail*** | The postal or electronic mail received at the MERSCORP Holdings mail processing center with sufficient information to identify the MIN(s) registered on the MERS® System, that is forwarded to Member(s) within five (5) calendar days.<br>Non-Urgent Mail includes: Bills and Invoices (e.g., homeowners' association dues and condominium assessments), Notices and Requests, Recordable Documents, Title Policy, etc. |
| ***Note*** | The paper or electronic evidence of indebtedness in a mortgage loan. |
| ***Note Date*** | The date on the Note. In some states, the date the borrower signs the note, or the date the note is drawn, may or may not be the actual date on which interest begins to accrue (see *Funding Date*). |
| ***Note Holder*** | The person or entity: (i) who is entitled to enforce the Note under Article 3 of the Uniform Commercial Code, as enacted by the applicable jurisdiction, including the person or entity who controls an electronic Note under the |



| Term | Definition |
|---|---|
| | federal Electronic Signatures in Global and National Commerce Act and/or Uniform Electronic Transactions Act, as enacted by the applicable jurisdiction and (ii) who is authorized to enforce the Note by the Note Owner if the Note Holder is not the Note Owner. |
| ***Note Owner*** | The person or entity with legal title to a Note (or electronic Note). |
| ***Operational - Primary*** | Mandatory MERS® System contact who is responsible for overseeing or conducting the day-to-day MERS® System functions for the Member and keeping its Member Information, including Contacts, current. This contact appears in the Member Summary available from the Member Search feature on our Member website, MERS® OnLine, and MERS® Link. |
| ***Operational - Secondary*** | Optional MERS® System contact who acts as the back-up for the Member's Primary Operational contact. |
| ***Option 1 (beneficial rights)*** | The lender/seller of the beneficial interest initiates the transfer of beneficial rights outside of MERS (e.g., using MIDANET or MORNET). The Investor sends confirmation of the transfer to MERS through an X12 transaction. Once the X12 file is submitted, it cannot be canceled. Interim funding interests are released automatically when the X12 transaction is processed by the MERS® System. |
| ***Option 1 MIN Cycling*** | The automated transaction that reprocesses MINs that have been rejected due to reason of non-registration, when delivery has been attempted to an Option 1 Investor. The cycle and reprocess occurs for ten (10) calendar days from the *Effective Transfer Date*. |
| ***Option 1 TOS (Default by Servicer)*** | An Option 1 Investor may use this transaction to reflect a transfer of servicing on that Investor's loans to another MERS® System Member Servicer due to default by the previous MERS® System Member Servicer. This transaction is billed to the Investor, and leaves the loan active on the MERS® System. |
| ***Option 2 (beneficial rights)*** | In the Option 2 process, the current Investor, Servicer, or Subservicer creates a beneficial rights transfer transaction. Then the new Investor confirms the transfer. Interim Funder interests must be released separately. |
| ***Organization Identification Number (Org ID)*** | A 7-digit number uniquely identifying a Member or an Affiliate Org ID on the MERS® System. |
| ***Original Borrower*** | The entity listed as the borrower on the original Note. May be different from the current borrower on a loan if the loan has been assumed. |
| ***Original Note Holder*** | The loan Originator, if not a MERS® System Member. Displayed as Originating Organization. Either the Original Note Holder or Originating Org ID is required for all Non-MOM loans with a Note Date after March 31, 2012. |
| ***Originating Org ID*** | The Org ID of the Member that originated the loan. This organization's Org ID and Name are displayed as **Originating Organization**. This field is required for all MOM loans with a Note Date after March 31, 2012, because only MERS® System Members are allowed to originate MOM loans as of that date. |
| ***Originating*** | The original Lender on the Note.<br>• If the Originator is a MERS® System Member, that Member's Org ID is |



| Term | Definition |
|---|---|
| ***Organization*** | entered in the Originating Org ID field, and its Org ID and Name are displayed for Originating Organization.<br>• If the Originator is not a MERS® System Member, the Originator's name is entered in the Original Note Holder field and displayed for Originating Organization. For MOM loans with a Note Date after March 31, 2012, the Originating Organization must be a MERS® System Member. |
| ***Owner Occupied*** | A field on the MERS® System which indicates if a property is occupied by its owner at Origination. The Servicing Member may, at its discretion, update the value of the Owner Occupied field to reflect the current owner occupancy status of the property. Each Member is responsible for ensuring that their internal policies for determining whether a property is owner occupied are reflected on the MERS® System. |
| ***Passive Investor*** | An **Option 2 Investor** that is a MERS® System Member but does not actively confirm transfers to or from it on the MERS® System. |
| ***Patron Member*** | For vendors and other organizations (e.g., Warehouse Lenders, Investors, Trustees, etc.) that work with *MERS Loans* but do not typically register them. |
| ***Physical Transfer Date*** | The date that the loans are transferred in the MERS® System database. This date will be the same as the transfer date unless the buyer does not confirm the transfer on time. |
| ***Pool Number*** | The number assigned to a grouping of loans by an Agency Investor; required for certain Agency securitizations. |
| ***Post-Closing*** | Transaction used to activate a loan previously registered as a Pre-Closing on the MERS® System when the loan closes. |
| ***Pre-Closing*** | Loan registered on the MERS® System before the Note Date with a status of Pre-Closing (not active). May be registered as an active iRegistration, MOM, or Non-MOM when the loan closes, but a Pre-Closing may not be updated or included in any other transaction except Registration Reversal. |
| ***Primary Borrower*** | The person listed as the primary borrower for a loan on the Member's *System of Record* is identified as the Primary Borrower on the MERS® System. Each additional borrower listed on the Member's System of Record is identified as a *Co-Borrower* on the MERS® System. |
| ***Primary Member*** | The Member designated as the Primary Member on a Primary/Secondary Relationship Agreement. |
| ***Primary/Secondary Relationship Agreement (PSRA)*** | An agreement establishing a relationship between a *Primary Member* and a *Secondary Member*(s) and/or Affiliate Org ID(s) on the MERS® System and creating certain obligations and benefits based on such relationship. |
| ***Property Preservation Company*** | A MERS® System Member with which a Servicing Member contracts to maintain a property. |
| ***Property Preservation Contact*** | Optional MERS® System contact who is responsible for handling property preservation for your organization. Appears on Member Summary in MERS® OnLine and MERS® Link for MERS® System Members and MERS® Link Subscribers to contact regarding property maintenance issues. |
| ***Quality Assurance*** | Mandatory MERS® System contact who is responsible for the Member's |



| Term | Definition |
|---|---|
| ***Officer*** | MERS® System Quality Assurance program. |
| ***Recordation*** | The act of recording an executed Security Instrument, Assignment of the Security Instrument, and/or other document in the applicable public land records. |
| ***Registrar*** | A third party to whom a Member has contracted certain business activities such that the Registrar is the initiator of the business activity that gives rise to a transaction on the MERS® System on behalf of the Member. |
| ***Registration*** | The transaction used to enter the required information into the MERS® System to report that a loan exists that is secured by a Mortgage with MERS as the Mortgagee, or to report an iRegistration. |
| ***Registration Reversal*** | Transaction used to reverse a MIN Registration. Once a MIN Registration is reversed, it does not appear in MERS® Link or MERS® ServicerID. |
| ***Resignation*** | The process by which a membership is withdrawn from the MERS® System, pursuant to Rule 1 of the MERS® System Rules of Membership. |
| ***Resignation of Membership Requirements*** | The tasks that a Member must fulfill to resign its membership from the MERS® System as defined by the Rules of Membership, the Procedures, and any other any other reasonable conditions that MERSCORP Holdings may set for the Deactivation of a Member's loans on the MERS® System. |
| ***Resigned Member*** | A Member whose membership has been withdrawn from the MERS® System pursuant to Rule 1 of the MERS® System Rules of Membership. |
| ***Resigning Member*** | A Member that has begun, but not completed, Resignation. A Resigning Member may still appear as a rights-holder on active loans registered on the MERS® System. |
| ***Sale Date (servicing rights)*** | In a servicing transfer, the date on which the contractual servicing rights are transferred from seller to buyer. This date is stipulated in the Purchase and Sale Agreement. |
| ***Seasoned Loan Registration*** | A loan registered on the MERS® System more than 270 calendar days after the Note Date. |
| ***Seasoned Transfer*** | A transfer transaction with a Transfer Date that is more than 270 calendar days after the Note Date. The appropriate seasoned loan transfer fee (Intracompany Transfer Fee or Seasoned Servicing Transfer Fee) is charged to the Member that initiates the transfer. |
| ***Seasoned Servicing Transfer Fee*** | The fee charged to a Member for a seasoned servicing transfer transaction. |
| ***Secondary Member*** | The Member designated as the Secondary Member on a *Primary/Secondary Relationship Agreement*. |
| ***Security Instrument (SI)*** | A legal instrument/document creating an interest in or lien against property as collateral to protect or secure against non-payment of a debt; a mortgage, deed of trust, security deed, or any such other instrument. See *Mortgage*. |
| ***Sequence Number*** | The 10-digit number assigned by the MERS® System Member to uniquely identify a loan. The 10 digits of the sequence number comprise the 8th through 17th digits of the 18-digit MIN. |
| ***Servicer*** | The entity that possesses the contractual right to collect payments from a debtor and otherwise service a loan for an Investor. In some cases, the Servicer may contract with a *Subservicer*. However, the Servicer continues |



| Term | Definition |
|---|---|
| | to be responsible for compliance with the Procedures with respect to the loans serviced.<br>For a *MERS Loan* to remain active in the MERS® System, the designated Servicer must be a Member. The transfer of contractual servicing rights to a non-Member requires the Deactivation of the mortgage loan on the MERS® System in accordance with the *Governing Documents*. |
| ***Servicing Member*** | The MERS® System Member currently responsible for the servicing of a loan. The Servicing Member is either the Servicer, if no Subservicer is named, or the Subservicer, if a Subservicer is named. |
| ***Servicer Identification System (SIS)*** | Phone-based system that allows an individual or a Member, who can verify certain information related to a loan on the MERS® System, to obtain contact information for the current Servicer of the loan. |
| ***Servicing Rights*** | The ownership rights of the current Servicer for servicing loans. |
| ***Servicing Rights Transfer*** | The transfer of the servicing rights in a loan. Members are required to report these transfers on the MERS® System. |
| ***SFTP*** | Acronym for **Secured** File Transfer Protocol. Members generally connect to the MERS® System environment using SFTP through a VPN tunnel to submit transactions via the Flat-file interface and/or retrieve reports.<br>**Note:** The MERS® System will stop accepting FTP connections in July 2015; thereafter only SFTP connections will be accepted. |
| ***Signing Authority Agreement ("SAA")*** | An agreement among MERSCORP Holdings, MERS, a Member and the Member's SAA Vendor or law firm, entered into for the purpose of granting MERS signing authority to the vendor or law firm so that it may sign documents in the name of MERS relating to loans registered on the MERS® System to the Member. The Member's vendor or law firm must have its own MERS® System membership. |
| ***SAA Relationship*** | Analogous to an Org ID in the CRMS. It represents the relationship among MERSCORP Holdings, MERS, the Member and the Member's vendor or law firm. The Member's CM manages the SAA Relationship in the CRMS. |
| ***SIS Phone Number*** | Servicer Identification System phone number: 888-679-MERS (6377) |
| ***Standard EDI Format*** | Accredited Standards Committee X12 standard. |
| ***Subservicer*** | The entity with whom the *Servicer* has contracted to perform certain servicing functions on behalf of the Servicer. The Subservicer is not the legal owner of servicing rights.<br>MERSCORP Holdings does not require that a Servicer list the Subservicer of a loan on the MERS® System. The field is available for use at the Servicer's discretion. If a Subservicer appears for a loan in the MERS® System, any mail or service of process received for that loan will be forwarded to the Subservicer instead of the Servicer. |
| ***System Administrator - Primary*** | Mandatory MERS® System contact who is responsible for setting up a unique User ID for each person at your company that needs access to MERS® OnLine or the Member website, maintaining your organization's User IDs and Roles, and resetting passwords.<br>The Help Desk refers user security requests for your organization to this contact. |



| Term | Definition |
| --- | --- |
| ***System Administrator - Secondary*** | Optional MERS® System contact who acts as the back-up for the Member's Primary System Administrator. |
| ***System of Record*** | The authoritative data source that a Member uses to store the data for its loans. A Member's System of Record feeds data to the MERS® System. The data on the MERS® System must match the corresponding data on the Member's System of Record. Two (2) common examples of a System of Record in the Mortgage industry are a Loan Origination System (LOS) and Loan Servicing System (LSS). The MERS® System is ***not*** a System of Record. |
| ***System-to-System*** | A method of transmitting data directly from a Member's or Vendor's system to the MERS® System. Currently, the Flat File, XML, and EDI X12 interfaces are supported. |
| ***Technical Contact*** | MERS® System contact who is responsible for ensuring that the Member's internal system(s) is compatible with the MERS® System. Only required for Members using a system-to-system interface. |
| ***Termination of Membership*** | The process, as set out in Rule 7 of the MERS® System Rules of Membership, by which MERSCORP Holdings terminates a Member's MERS® System membership. |
| ***Third-Party Originator (TPO) Member*** | A Membership type for table-funded Lenders that originate MOM loans. The Investor that table funds or purchases loans from a TPO Member at the closing table performs the transactions associated with the loans on the MERS® System. As a result, TPO Members do not have access to the MERS® System and are exempt from the Quality Assurance Standards for data on the MERS® System. |
| ***Title Company*** | A Line of Business assigned to a Member that performs title research and title curative services. |
| ***TOB*** | A MERS® System transaction used to report a transfer of beneficial rights in a loan. |
| ***TOS*** | A MERS® System transaction used to report a transfer of servicing rights in a loan. See *Servicing Rights Transfer*. |
| ***TOS Option 1 (default by servicer)*** | Transaction used on the MERS® System by an Option 1 Investor to report a transfer of servicing rights in a loan due to a default by the Servicer. |
| ***TOS/TOB Combo*** | Transaction used on the MERS® System to report a simultaneous transfer of beneficial rights and servicing rights to an Option 2 Investor. Both *Flow* and *Seasoned* loans may be included in this transfer. |
| ***Transfer Cancellation Date*** | The date the transfer transaction is canceled on the MERS® System if all MIN confirmations and rejections are not received. |
| ***Transfer Creation Date*** | The date that the Investor or Servicing Member creates the transfer transaction on the MERS® System. |
| ***Transfer Date (beneficial rights)*** | The date on which the beneficial ownership of a loan is transferred from one Investor to another. In most cases this will be concurrent with the funding date by the new Investor. |
| ***Transfer Date (servicing rights )*** | Per the terms of the applicable Purchase and Sale Agreement, the date on which the responsibility for servicing the loans passes from seller to buyer. |



| Term | Definition |
|---|---|
| ***Transfer to Non-MERS Status*** | Transaction used on the MERS® System to deactivate a MIN when:<br>• The servicing rights to the loan were transferred to a non-Member and an Assignment from MERS was executed and sent for Recordation.<br>• An iRegistration (*Flow Loan Registration* or *Seasoned Loan Registration*) will no longer be tracked on the MERS® System. If an iRegistration was initially registered as a Flow Loan Registration, the **Transfer to non-MERS Status** transaction must be used to deactivate the MIN.<br>• The lien has been stripped or extinguished by a bankruptcy or foreclosure. |
| ***Trust*** | A collection of mortgage loans, held by a Trustee, which are "pooled" together and sold in a rated mortgage-backed securities transaction.<br>For non-Agency securitizations, place the name designated for the Trust in the prospectus in the Securitization field. |
| ***UETA*** | Uniform Electronic Transaction Act. A uniform form of statute that various states have enacted to establish the legal validity and enforceability of electronic signatures, contracts, and other records within the enforcing state; when enacted by a state, it may take the place of the provisions of *ESIGN*. |
| ***Update*** | A change to information outside of a previously defined business process (corrections, updates to previously null fields, etc.). |
| ***Urgent Mail*** | The postal or electronic mail received at the MERSCORP Holdings mail processing center with sufficient information to identify the MIN(s) registered on the MERS® System that is forwarded to Member(s) within two (2) business days. Urgent mail includes the following:<br>• Adversary Complaints<br>• City/County Code Violations<br>• Foreclosure Documents<br>• Funds<br>• Government Correspondence<br>• Lawsuits<br>• Requests for Discharge of Mortgage<br>• Subpoenas |
| ***Vendor*** | A MERS® System Member that performs various transactions on the MERS® System on behalf of another Member pursuant to a contractual agreement between the Member and Vendor. |
| ***Vendor/Servicer Provider*** | A Line of Business assigned to a Member that performs various transactions on the MERS® System on behalf of other Members. |
| ***Warehouse/Gestation Lender*** | Associated Member with an interim financial interest on a loan prior to the sale of the loan to the permanent Investor. Their interest in each loan is released automatically when servicing is transferred. The Warehouse/Gestation Lender has view only access to the loan on the MERS® System. |
| ***X12 Format*** | A predefined, non-proprietary layout at a transaction set level. This is an acceptable method for submitting System-to-System transactions to the MERS® System. |



| Term | Definition |
|---|---|
| ***XML Format*** | Acronym for **Extensible Markup Language** which, in the context of the Procedures, defines the set of rules for encoding System-to-System transactions to or from the MERS® System. The XML interface provides Members a synchronous interface to the MERS® System. |
| ***XML Inquiry*** | Transaction used to look up information on a MIN that matches the search criteria specified in the XML Inquiry request. |
| ***XML Registration*** | Transaction used to register a loan on the MERS® System via XML. |

**Revision History:**

Procedures Manual:

| Revision Date | Details |
|---|---|
| 8/31/15 | Final Procedures for Release 29.0. |
| 6/19/15, 7/15/15 | Initial and second drafts for Release 29.0. |
| 5/18/15 | Final Procedures for Release 28.0. |
| 3/12/15, 4/13/15 | Initial and second drafts for Release 28.0. |
| 2/23/15 | Final Procedures for Release 27.0. |
| 12/15/14, 1/14/15 | Initial and second drafts for Release 27.0. |
| 08/12/14, 09/15/14 | Initial and second draft for Release 26.5 to remove Agency ID from data reconciliation. |
| 7/28/14 | Final Procedures for Release 26.0. |
| 5/27/14, 6/30/14 | Initial and second drafts for Release 26.0. |
| 5/19/14 | Final Procedures for Release 25.5.1 |
| 04/14/14 | Version change for Release 25.5. No changes to procedural content. |
| 03/14/14, 04/15/14 | Initial and second drafts for Release 25.5.1 to support CRMS 4.0 and integrate the QA Standards into the content of the Procedures. |
| 01/27/14 | Final Procedures for Release 25. |
| 11/18/13, 12/20/13 | Initial and second drafts for Release 25.0. |
| 11/08/13 | Release 24.5.1 with revisions to support CRMS 4.0 removed. |
| 8/30/13, 10/1/13 | Initial and second drafts for Release 24.5.1 (to support CRMS 4.0). |
| 5/15/13, 6/21/13 | Initial and second drafts for Release 24.0. |
| 03/18/13 | Release 23.5.1: Final version to conform the Procedures to the Rules of Membership. Includes edits to the initial draft published for Member comment on 01/18/13. |
| 01/18/13 | Release 23.01: Revisions to conform the Procedures to the Rules of Membership effective 3/18/13 (see draft for changes). |
| 10/03/2012 | Revised for Release 23.0 (see draft for changes) |
| 8/10/12 | Revised for Release 22.0.1 to incorporate Quality Assurance Procedures Manual, added 2012 Quality Assurance Requirements (22.0.1) and CRMS |



| Revision Date | Details |
|---|---|
|  | Procedures. Effective Date for implementation: October 10, 2012. |

Quality Assurance Procedures Manual:

| Revision Date | Details |
|---|---|
| 7/16/2012 | Revised for Release 22.0.1 (see draft for changes) |
| 6/4/2012 | Revised for Release 22.0 (see draft for changes) |
| 2/27/12 | Revised for Release 21.0 (see draft for changes) |
| 10/12/11 | Revised for Annual Report requirements changes |
| 9/6/11 | Revised for Release 20.0 |
| 7/25/11 | Revised for Rule 8 changes |
| 6/20/11 | Revised for Releases 20.0 and 21.0 |
| 6/14/10 | Revised for Release 19.0 (see draft for changes) |
| 6/9/09 | Revised for Release 18.0 (see draft for changes) |
| 12/8/08 | Revised for Release 17.0 (see draft for changes) |
| 6/16/08 | Revised for Release 16.0 (see draft for changes) |
| 12/9/07 | Revised for Release 15.0 (see draft for changes) |
| 6/4/07 | Revised for Release 14.0 (see draft for changes) |
| 6/5/06 | Revised for Release 12.0 (see draft for changes) |