UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DREAMBUILDER INVESTMENTS, LLC,   Case No.: 19-cv-08937 (ER)

                Plaintiff,

    - against –

MERSCORP HOLDINGS, INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF JOSEPH J. PATRY IN SUPPORT OF DEFENDANT MERSCORP HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT

    I, Joseph J. Patry, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury as follows.

    1.    I am a Senior Counsel at MERSCORP Holdings, Inc. ("MERSCORP" or "Defendant"). I make this Declaration pursuant to Rule 56 of the Federal Rules of Civil Procedure in support of MERSCORP's Motion for Summary Judgment dismissing Dreambuilder Investments, LLC's ("DBI") Complaint and granting summary judgment on MERSCORP's counterclaims. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to such facts under oath.

    2.    I submit this affidavit based both upon my personal knowledge and on my review of MERSCORP's business records made in the ordinary course of business. It is the regular course of business for MERSCORP to make such records, and these records are made at the time of the fact, transaction, occurrence or event described therein, or within a reasonable time thereafter. All

individuals maintaining MERSCORP's business records are under a business duty to maintain accurate records.

3. MERSCORP owns and operates the MERS® System, a national electronic database which tracks changes in servicing rights and beneficial ownership interests for loans registered in the database, as reported to MERSCORP by MERS® System Members.

4. MERSCORP's subsidiary, Mortgage Electronic Registration Systems, Inc. ("MERS") holds security instruments recorded in the land records for loans which are registered on the MERS® System and for which a MERS® System Member is the servicer and investor of the subject loan.

## DBI's MERS® System MEMBERSHIP

5. DBI applied to become a MERS® System Member in 2007. A true and correct copy of the application is annexed hereto as **Exhibit A.**

6. Upon executing the MERS® System Membership Application, DBI agreed to become bound by the MERS® System Rules of Membership ("MERS® Rules") and the MERS® System Procedures Manual, as amended from time to time (the "Governing Documents"). A true and correct copy of the MERS® System Rules of Membership in effect as of September 1, 2015 is annexed hereto as **Exhibit B.** A true and correct copy of the Procedures Manual in effect as of August 31, 2015 is annexed hereto as **Exhibit C.**

7. Pursuant to the MERS® Rules, each Member, such as DBI, shall register a MERS Loan (a "MERS Loan" is a loan for which MERS is the mortgagee of record). Exhibit B, Rule 2, Section 2. "For a MERS Loan to remain active on the MERS® System, the designated servicer must be a Member. The transfer of contractual servicing rights to a non-Member with respect to a mortgage loan registered on the MERS® System shall require the Deactivation of such mortgage

loan from the MERS® System in accordance with the Governing Documents." *Id*. at Rule 2, Section 3.

8. Pursuant to the MERS® System Procedures Manual, MERS® System Members are required to abide by the MERS® System Quality Assurance ("QA") Standards, which include, *inter alia*: (1) ensuring that MERS is accurately recorded in the public land records as Mortgagee after loan origination or Assignment to MERS; (2) the loan information is accurately registered on the MERS® System after origination; (3) the MERS® System Member causes assignments from MERS to be recorded when a non-MERS® System Member becomes the investor or servicer of a loan registered on the MERS® System and the MERS® System is updated accordingly, (4) loans which are paid off are released of record, and (5) security instruments held by MERS and any documents executed by MERS (including assignments, lien releases, etc.) meet the MERS® System Procedures Manual Document Requirements, including that a Mortgage Identification Number ("MIN") is listed on the document, as well as other information. *See* **Exhibit C**, pg 32-47.

9. Further, pursuant to the MERS® System Procedures Manual, MERS® System Members are, *inter alia*, required to: comply with MERSCORP's Quality Assurance ("QA") Plan (which lists the QA standards, requirements, and validations for which a Member that performs transactions on the MERS® System is responsible); comply with MERSCORP's Annual Reporting process that confirms the controls that a Member has in place for their system-to-system reconciliation, reject/warning processing, and adherence to their MERS® System QA Plan; reconcile all required and conditional fields on the MERS® System with their System of Record; and comply with MERSCORP's QA compliance monitoring. *See* **Exhibit C**, pgs 32-47.

3

**DBI Breached the Governing Documents**

10. Since DBI became a MERS® System Member in 2007, DBI reported to MERSCORP via the MERS® System that it was the servicer and/or investor on 7,102 mortgage loans.

11. However, DBI repeatedly failed to comply with its MERS® System Membership obligations, including its requirement to submit annual quality assurance plans and to submit to biannual data reviews.

12. Further, DBI and its vendor (acting at the direction of DBI) executed numerous documents (e.g. lien releases and assignments) without following the requirements for MERS signing authority. MERSCORP learned that DBI directed employees of its vendor to execute documents in MERS's name, even though MERS and MERSCORP had terminated the vendor's authority to sign in MERS's name.

**MERSCORP Notified DBI of Its Breaches of the Governing Documents and Provided It with Numerous Opportunities to Cure the Breaches**

13. DBI committed multiple violations of the Governing Documents which DBI failed to cure within the applicable time periods.

14. On January 9, 2015, MERSCORP sent DBI an Initial Rule Violation Notice for failing to comply with a notice of biennial data review as required by the MERS® System Procedures Manual. DBI failed to respond to this notice. A true and correct copy of the January 9, 2015 letter is annexed hereto as **Exhibit D**.

15. On January 15, 2015, MERSCORP sent DBI an Initial Rule Violation Notice that DBI had violated the Quality Assurance Policy section of the MERS® System Procedures Manual by failing to submit an Annual Report of the MERS® System Quality Assurance Standards. *See* **Exhibit G.**

4

16. On February 25, 2015, MERSCORP sent DBI a notice that MERSCORP had confirmed that DBI's response to MERSCORP's January 9, 2015 notice was insufficient and that MERSCORP was imposing a penalty for DBI's failure to comply with a biennial data review. A true and correct copy of the February 25, 2015 letter is annexed hereto as **Exhibit E**.

17. Also on February 25, 2015, MERSCORP sent DBI a Notice of Rule Violation Confirmation notifying DBI that it had violated the Quality Assurance Policy section of the MERS® System Procedures Manual by failing to comply with a notice of biennial data review. *See* **Exhibit F.**

18. DBI was given an opportunity to cure its violation, which included multiple extensions of the applicable time periods running under Rule 7 of the MERS® System Rules of Membership.

19. MERSCORP informed DBI on April 1, 2015 that it was imposing a monetary penalty for failing to submit an Annual Report. A true and correct copy of the April 1, 2015 letter is annexed hereto as **Exhibit G.**

20. MERSCORP again informed DBI on April 10, 2015 that it was imposing a monetary penalty for failing to comply with the January 9, 2015 notice that DBI had failed to schedule a biennial data review. A true and correct copy of the April 10, 2015 letter is annexed hereto as **Exhibit H.**

21. MERSCORP informed DBI on May 7, 2015 that DBI had failed to remediate its violation of failing to submit its Annual Report and that DBI had failed to pay the previously imposed monetary penalty for this violation. A true and correct copy of the May 7, 2015 letter is annexed hereto as **Exhibit I.** The letter advised DBI that failing to remediate the violation and pay the monetary penalty could result in termination of its MERS® System Membership. (*Id.*).

22. On November 24, 2015, MERSCORP again notified DBI it was in breach of its MERS® System Membership obligations because officers or agents of DBI executed numerous documents (i.e. lien releases and assignments) without following the requirements for signing authority under the Governing Documents. A true and correct copy of the November 24, 2015 letter is annexed hereto as **Exhibit J.** DBI had 30 days from the date of the letter to respond in writing to the notice. (*Id.*).

23. DBI failed to respond to the November 24, 2015 letter.

24. Further, on July 7, 2016, MERSCORP emailed DBI informing DBI that it had found multiple data quality violations, which underscored DBI's continual failure to properly enter and reconcile the required MERS® System data.[1] Specifically, MERSCORP advised as follows:

> 1. All mismatches are summarized on the "1006079 Compliance Summary Report" and detailed in the referenced text files. Please refer to the "Compliance Results KEY" which describes the content of your results. All of your results data has been delivered to your SFTP "tmp" folder.
>
> 2. We have also provided a Master MIN List that reflects all unique MINs identified on your data files and the MERS® System. This MIN list should be used for your Final Review detailed below.
>
> 3. The data review revealed **124 MINs** that were in your data file of active MINs but name a resigning member as servicer on the MERS® System. These MINs can be identified on the Member Only file with "resigned" or "resignation in process" in the "MC Status" column)
>    a. Please immediately submit an online Certificate of Ownership to claim the MINs.
>    b. These MINs will be monitored for appropriate action to be taken.
>    c. If MERS has not already authorized a user in your organization to submit online certificates, please email certificates@mersinc.org to request authorization.

---

[1] A true and correct copy of the July 7, 2016 email is annexed hereto as **Exhibit K.**

> 4. As reflected on the Member Only file, your data files contained a high volume of inactive MINs. As noted on the Appendix F document, you should only provide active serviced MINs for review.
>
> 5. As indicated on the Summary report, the following Data Fields contained 20% or greater error ratio: Member Only MIN Count, MERS Only MIN Count, Investor ORG ID, MOM Indicator, Borrower Name, and Note Date. Your organization is responsible for ensuring the information reflected on the MERS® System is synchronized with the MERS data on your servicing system.
>
> NOTE: if any data fields reflect 50% or greater error ratio and/or if your Servicer/Overall error ratio exceeds 10% on your upcoming Final Review results, your organization will be required to re-process that review which requires $175.00 work order to re-process.

25.     MERSCORP demanded that these quality issues be rectified. DBI had until September 7, 2016 to correct the deficiencies with the review. *Id*.

26.     MERSCORP sent emails to DBI on August 15, 2016, August 26, 2016 and September 2, 2016 reminding it of its Data Review due date. *See* **Exhibit L.**

27.     DBI failed to submit the requested information by the September 7, 2016 due date.

28.     DBI failed to respond and on September 8, 2016, MERSCORP sent another email to DBI asking "when the files will be delivered." *See* **Exhibit M.** DBI did not respond to MERSCORP's September 8, 2016 email.[2]

29.     DBI failed to cure its violations.

30.     By letter dated September 28, 2016, MERSCORP notified DBI that its MERS® System Membership was terminated immediately. A true and correct copy of the September 28, 2016 letter is annexed hereto as **Exhibit N.**

---

[2] As set forth below, the Rules provide that if a Member does not cure/remediate a violation and pay an assess monetary penalty, it may be terminated from MERS® System Membership.

31.     Once DBI's membership was terminated, DBI no longer was able to access the MERS® System and all signing authority granted by MERS to DBI or any third-parties acting on its behalf was revoked. (*Id.*).

**The Governing Documents Permit MERSCORP to Impose Penalties Upon DBI and Seek Fees and Costs Arising from DBI's Breach of the Governing Documents**

32.     The Governing Documents provide that notwithstanding a member's termination, the member "shall remain liable and obligated for (a) any invoices due and outstanding at the time of the Termination … and (b) the costs incurred by [MERSCORP] in completing the activities for Termination described in Rule 1, Section 5 and Rule 7, Section 1(e), … including costs and fees incurred by [MERSCORP] to record assignments of Security Instruments from MERS in the applicable land records and fees for the Deactivation of MERS Loans in accordance with the applicable Termination … requirements." Ex. B, Rule 5, Section 5.

33.     The Governing Documents further permit MERSCORP to impose a monetary penalty or otherwise sanction a MERS® System Member for each violation of the provisions of the Governing Documents or for errors, delays or other conduct materially detrimental to the operation of MERSCORP. *See* Ex. B, Rule 7, Section 1. The imposition of monetary penalties or other sanctions is subject to notice, an opportunity to provide a written response and an opportunity for the MERS® System Member to cure and/or remedy the violation. *Id.*

34.     If the MERS® System Member does not cure the violation, the MERS® System Member will receive notice of the imposition of any sanctions or monetary penalty, as well as notice of the potential for termination of membership. *Id.*, Rule 7, Section 1(c). The MERS® System Member has 30 days to cure/remediate the violation and pay any assessed monetary penalty. *Id.*

35. If the MERS® System Member fails to cure/remediate the violation and pay the assessed monetary penalty within the applicable time, MERSCORP may terminate the MERS® System membership. *Id.*, Rule 7, Section 1(e).

36. The Governing Documents also provide that a Member is obligated to indemnify MERSCORP "with respect to any liability which may arise as a result of the failure of such Member to (i) take, cause or be taken, appropriate action to extinguish the lien corresponding to a mortgage loan in accordance with Rule 2, Section 6 … ." Ex. B, Rule 13. DBI's indemnification obligations continued after its membership was terminated. *Id.* at Section 3.

### DBI Continues to Owe Penalties and Other Costs to MERSCORP In Connection with Its Breaches of the Governing Documents

37. After notifying DBI of its violation of the Governing Documents on November 24, 2015, DBI failed to cure this violation and was assessed a $25,000 penalty (capped at this amount due to the number of violations), pursuant to MERS Rule 7 and the MERS® System Penalty Schedule for its breach of these obligations. A true and correct copy of the April 11, 2016 Invoice is annexed hereto as **Exhibit O**. The $25,000 in monetary penalties due to MERSCORP remains outstanding.

38. Further, MERSCORP expended at least $9,013.05 in legal fees to defend MERS in litigation related to mortgages shown on the MERS® System as either being serviced by DBI or DBI being the last known MERS® System Member connected to the mortgage loans. *See* **Exhibit P**.

39. MERSCORP has also expended at least $2,516.50 related to local land records research for loans which DBI is named as the servicer or investor on the MERS® System. *See* **Exhibit Q** .

40. As of today, DBI owes MERSCORP the sum of $36,529.55, inclusive of penalties, legal fees and other charges in connection with DBI's breach of the Governing Documents and termination from MERS® System Membership, plus $19,558 in attorneys' fees and $427.60 in costs in defense of this litigation.

**MERS Continues to Hold Liens That Were Serviced or Owned by DBI**

41. Because MERS does not hold liens which are owned or serviced by terminated Members, prior to termination of its MERS® System Membership, DBI was to ensure that all liens which MERS held on DBI's behalf were deactivated on the MERS® System and assigned out of MERS.

42. Pursuant to the Governing Documents, when circumstances warrant that a lien should be released or assigned out, *i.e.*, upon the loan being paid off, the loan is sold to a non-MERS® System Member or a Member's MERS® System Membership is terminated, the Member is responsible for ensuring that a the security instrument is released or assigned out of MERS.

43. If, upon Notice by MERSCORP, the Member or investor fails to take such action, MERS has the right to release or assign such liens which MERS holds on the terminated member's behalf. *See* Ex. B, Rule 2, Section 6.

44. Pursuant to the Governing Documents, MERSCORP notified DBI that releases or assignments had not been executed for liens which MERS continues to hold on DBI's behalf, in compliance with the Rules, and provided DBI with notice to cure.

45. In May 2018, DBI reached out to MERSCORP requesting assistance with the assignments of mortgages held by MERS. In response, on May 18, 2018, MERSCORP sent DBI a letter outlining several issues related to the termination of DBI's membership. *See* **Exhibit Q**. The May 18, 2018 letter set forth the total invoices due at termination, the amount due by DBI to

151013.01203/126374116v.1

indemnify MERSCORP in connection with litigation related to mortgage loans serviced by DBI or DBI being the last known MERS® System Member, and costs and activities associated with DBI's termination.

46. DBI did not respond to MERSCORP's questions and requests for additional information on the liens for which DBI required assistance. Further, DBI failed to pay the amount due to MERSCORP as outlined in the May 18, 2018 letter.

47. DBI did not communicate with MERSCORP until February 2019 when MERSCORP made a demand for the requested information on a single mortgage lien, for which MERS was able to execute an assignment.

48. On June 18, 2019, MERSCORP, through its counsel, placed DBI on notice of the amount due to MERSCORP to be paid within 7 business days of delivery of the letter and requested (1) a list of all loans which DBI is servicing or owns for which MERS is presently the lien holder of and (A) a current title report and (B) copy of the promissory note for such loan; (2) for all loans which DBI has sold the investing or servicing rights and MERS was the lien holder of record at the time of the transfer, the identity and address of the transferee of each loan that DBI no longer services or owns, and the date of transfer; and (3) a draft assignment (for execution by MERS) to either DBI or its transferee of the security instrument related to each loan for recordation. *See* **Exhibit R**.

49. DBI failed to pay the amount due or otherwise respond to the June 18, 2019 letter.

50. Moreover, DBI failed to respond to follow up requests from MERSCORP.

51. Further, in July 2019 DBI provided additional information requested, however, it was for only a very small number of liens.

52. MERS executed assignments on all liens for which DBI has provided all of the requested information and for which MERS still held mortgage liens. However, DBI has failed to provide MERSCORP with the requested information needed to release or assign *all* liens which MERS may be holding on DBI's behalf (regardless of whether these loans are registered to DBI in the MERS® System).

53. Throughout the course of this action, the parties have attempted to resolve this matter. Specifically, on December 5, 2019 MERSCORP through its counsel, provided DBI with a list of (1) 393 loans which MERSCORP then showed DBI as the investor or servicer in the MERS® System currently, and (2) 6,709 loans which DBI deactivated on the MERS® System since they became a Member in order to assist DBI in coming up with a list of how many assignments it would need from MERS. A true and correct copy of the list of active and deactivated loans provided by DBI is annexed hereto as Exhibits S & T.[3] Despite numerous follow ups, DBI never provided the list or any additional information needed by MERSCORP to issue the assignments.

54. The records reflect that as of the date of this Declaration, in addition to the 6,709 loan DBI loans deactivated from the MERS® System, there remain 390 loans which are active in the MERS® System for which DBI reported via the MERS® System that it is the investor or servicer, in violation of the Governing Documents.

---

[3] The information provided to DBI contains personal information of non-party consumers and thus, has been redacted to protect their information. MERSCORP, through its counsel, can make the non-redacted list available for an *in camera* inspection at the Court's request.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: July 15, 2021

By: *Joseph J. Patry*
Name: Joseph J. Patry
Title: Senior Counsel