UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREAMBUILDER INVESTMENTS, LLC,

                Plaintiff,

       – *against* –

MERSCORP HOLDINGS, INC.,

                Defendant.

**OPINION & ORDER**

19 Civ. 8937 (ER)

RAMOS, D.J.:

     Dreambuilder Investments, LLC filed this action on August 26, 2019 against MERSCORP Holdings, Inc. in the Supreme Court of the State of New York, New York County. Doc. 1-4.  The case was removed from state court on September 26, 2019.  Doc. 1. Dreambuilder alleges that MERSCORP tortiously interfered with its business by terminating its membership on MERSCORP's national electronic registry system that tracks rights and interests in mortgage loans.  Doc. 4-4.  MERSCORP filed a counterclaim asking that Dreambuilder indemnify it for legal fees and costs related to Dreambuilder's noncompliance with membership rules.  Doc. 7.

     Dreambuilder filed this action with the assistance of counsel.  Dreambuilder's counsel was relieved on April 23, 2021 due to irreconcilable differences and failure to pay legal expenses and fees.  Doc. 13.  The Court gave Dreambuilder time to retain new counsel.  *Id.*  On June 1, 2021, MERSCORP submitted a letter informing the Court of its intention to file a motion for summary judgment.  Doc. 14.  The Court held a pre-motion conference on June 25, 2021. Counsel for Dreambuilder did not appear, nor did anyone appear on its behalf, and MERSCORP was granted leave to file its motion, which it filed on July 15, 2021.  Doc. 17.  Dreambuilder

notified the Court that it was still attempting to obtain local counsel on August 9, 2021 and requested an extension of time to respond to the motion.  Doc. 24.  The Court granted Dreambuilder an extension until September 9, 2021 to obtain counsel and file its opposition to MERSCORP's motion.  Doc. 26.  After Dreambuilder failed to obtain counsel or file its opposition, the Court warned Dreambuilder on January 18, 2022 that if it did not submit a response by February 18, 2022, the motion would be deemed unopposed.  Doc. 28.  As Dreambuilder has failed to respond to this date, the motion is deemed unopposed.

For the reasons set forth below, the motion for summary judgment is GRANTED.

## I.     BACKGROUND

Dreambuilder is an LLC with its principal place of business in New York.  Doc. 4-4 ¶ 2. MERSCORP is a corporation with its principal place of business in Virginia.  *Id.* ¶ 3. MERSCORP owns and operates a national electronic registry of servicing rights and beneficial ownership interests in mortgage loans called the MERS® System.  *Id.* ¶ 5.  Dreambuilder was a member of the MERS® System and used it to track thousands of its loans.  *Id.* ¶¶ 7–8.

MERSCORP terminated Dreambuilder's membership on September 28, 2016 without giving it an opportunity to transfer its loans from the system.  *Id.* ¶ 9; Doc. 7 ¶ 17.  MERSCORP now insists that Dreambuilder pay a $50 fee per loan to transfer the loans from its system.  Doc. 4-4 ¶ 11.  In a June 18, 2019 letter to Dreambuilder, MERSCORP threatened to obtain a court order regarding the MERS® System membership rules to confirm that it has the power to execute "a lien release of the security instrument related to any loan that is owned or served by [Dreambuilder] where MERS[CORP] is the lien holder of record . . . ."  *Id.* ¶ 16.  MERSCORP also imposed a $25,000 fine against Dreambuilder for a "signing officer violation" from an invoice dated April 11, 2016.  *Id.* ¶¶ 18–19.  MERSCORP says the fine is related to a November

24, 2015 letter that generally references a violation of the MERS® System membership rules.

*Id.* ¶ 20.  Dreambuilder alleges that there is no basis in the rules, which are effective July 3,

2017, nearly two years after the letter noting a violation, for imposing such a fine.  *Id.* ¶¶ 21–23.

Dreambuilder alleges tortious interference with economic advantage, *id.* ¶¶ 25–31, unjust

enrichment, *id.* ¶¶ 32–39, and breach of contract, *id.* ¶¶ 40–44, and seeks a declaratory judgment

that MERSCORP is not entitled to obtain a lien release of its security interests and that it is

permitted to transfer the loans from the MERS® System, *id.* ¶¶ 50–51.

After it removed the case to this Court, MERSCORP answered the complaint and

asserted counterclaims on October 3, 2019, providing further detail regarding Dreambuilder's

allegations.  Doc. 7.  MERSCORP alleges that when Dreambuilder applied to become a MERS®

System member in 2007, it agreed to be bound by its membership rules and procedures manual.

*Id.* ¶¶ 3–4.

The procedures manual requires members to abide by MERS® quality assurance

standards, which include:

> (1) ensuring that MERS is accurately recorded in the public land records as Mortgagee
> after loan origination or Assignment to MERS; (2) the loan information is accurately
> registered on the MERS® System after origination; (3) the MERS® System Member
> causes assignments from MERS to be recorded when a non-MERS® System Member
> becomes the investor or servicer of loan registered on the MERS® System and the
> MERS® System is updated accordingly, (4) loans which are paid off are released of
> record, and (5) security instruments held by MERS and any documents executed by
> MERS (including assignments, lien releases, etc.) meet the MERS® System Procedures
> Manual Document Requirements . . . .

*Id.* ¶ 6.  The procedures manual also requires compliance with the MERSCORP quality

assurance plan; annual reporting regarding controls for system-to-system reconciliation, reject

and warning processing, and adherence to the MERS® System quality assurance requirements;

reconciliation of MERS® System fields with its System of Record; and compliance with

MERSCORP quality assurance compliance monitoring.  *Id.* ¶ 7.  Dreambuilder was also required

to indemnify MERSCORP in the event that MERSCORP was named in a legal action related to a

Dreambuilder loan, a provision that survived termination of the membership.  *Id.* ¶ 8; Doc. 7-1 at

56–60.  Lastly, Dreambuilder was required to comply with procedures related to the execution of

documents by MERS[CORP] Signing Officers.  Doc. 7 ¶ 8.  The membership terms are

governed by Virginia law.  Doc. 7-1 at 48.

The rules and procedures further allow for monetary penalties and other sanctions for

each violation and for errors, delays, or other conduct materially detrimental to MERSCORP's

operations.  Doc. 7 ¶ 9; Doc. 7-1 at 29.  However, the rules require notice, an opportunity to

provide a written response, and an opportunity to remedy the violation before monetary penalties

and sanctions can be imposed.  *Id.*  If the violation is not cured, MERSCORP is required to send

notice of the imposition of sanctions or monetary penalties and notice of the potential for

membership termination.  Doc. 7 ¶ 10; Doc. 7-1 at 32–33.  The member is given 30 days to cure

the violation and pay any penalty.  *Id.*  Failure to cure or pay within the 30 days may result in

membership termination.  Doc. 7 ¶ 10; Doc. 7-1 at 32–33.

MERSCORP alleges that Dreambuilder repeatedly failed to comply with its membership

obligations, including the requirement to submit annual quality assurance plans and biannual

data reviews.  Doc. 7 ¶ 12.  MERSCORP sent Dreambuilder a notice on February 25, 2015

notifying Dreambuilder that it had violated the quality assurance policies by failing to comply

with a biennial data review.  *Id.* ¶ 13.  Dreambuilder was given multiple extensions of time to

cure its violations and failed to do so.  *Id.* ¶ 14.  MERSCORP sent an additional notice of

violation on November 24, 2015 to notify Dreambuilder that it had executed multiple documents

without following the signing authority requirements.  *Id.* ¶ 15.  After failing to cure this

4

violation, MERSCORP assessed a $25,000 penalty pursuant to its rules and the penalty schedule. *Id.* ¶ 15.  Lastly, on July 7, 2016, MERSCORP informed Dreambuilder that it found multiple data quality violations due to Dreambuilder's continued failure to properly enter and reconcile data.  *Id.* ¶ 16.  MERSCORP demanded that Dreambuilder cure these issues and followed up multiple times, but Dreambuilder never did so.  *Id.*  MERSCORP thus terminated Dreambuilder's membership on September 28, 2016.  *Id.* ¶ 17.

The membership rules and procedures also state that MERSCORP cannot hold liens owned or serviced by terminated members.  *Id.* ¶ 36.  The terminated member is responsible for executing a release of the security instrument upon termination.  *Id.* ¶ 40.  MERSCORP is required to provide notice to the terminated member regarding their release responsibilities, and if the terminated member fails to take proper action, MERSCORP has the right to release the liens that MERSCORP is holding on their behalf.  *Id.* ¶ 41; Doc. 7-1 at 14–15.  After Dreambuilder's termination, MERSCORP was not able to identify all of the liens MERSCORP might be holding on Dreambuilder's behalf due to Dreambuilder's failure to properly update the system.  Doc. 7 ¶ 37.

MERSCORP notified Dreambuilder of the difficulty it was having in identifying its liens and requested:  (1) a list of all loans, including a title report and a copy of the promissory note, that Dreambuilder services or owns that MERSCORP was holding; (2) the identity and address of the transferee and date of transfer of any loan that Dreambuilder sold for which MERSCORP was holding the lien at the time of transfer; and (3) a proposed assignment to be signed by MERSCORP to transfer the security instruments.  *Id.* ¶ 42.  Dreambuilder largely did not comply with these requests.  *Id.* ¶ 43.  Instead, in May 2018, Dreambuilder reached out to MERSCORP for assistance but then ceased responding to MERSCORP's questions.  *Id.* ¶ 44.  Then in

February 2019, MERSCORP made a demand for information with respect to a single mortgage lien, which Dreambuilder provided.  *Id.* ¶ 46.  In addition, in July 2019, Dreambuilder sent the information for a small number of the liens at issue.  *Id.* ¶¶ 47–48.

MERSCORP also alleges that it has incurred various expenditures that Dreambuilder is contractually obligated to reimburse.  Specifically, MERSCORP expended $9,013.05 in legal fees defending MERS in litigation related to Dreambuilder's mortgages.  *Id.* ¶ 18.  MERSCORP also expended $2,516.50 related to local land records research on Dreambuilder loans.  *Id.* ¶ 20.  MERSCORP also incurred time and costs related to reviewing eleven improperly coded loan assignments for third parties.  *Id.* ¶¶ 20-21.  Lastly, Dreambuilder has not paid its outstanding invoices and costs since MERSCORP terminated its membership.  *Id.* ¶ 32.

MERSCORP thus alleges breach of contract, *id.* ¶¶ 25–34, and requests judgment releasing the liens that it is holding on behalf of Dreambuilders, *id.* ¶ 49.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the suit under the governing law."  *Id.* (internal quotation marks and citation omitted).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where, like here, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

Even if a motion for summary judgment is unopposed, the Court is required to "review the motion . . .  and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).   The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

## III.   DISCUSSION

### A.  Dreambuilder's Claim of Tortious Interference with Prospective Economic Advantage

Dreambuilder brings a claim alleging tortious interference with prospective economic advantage. Doc. 4-4 ¶¶ 25–31.  Specifically, it alleges that MERSCORP interfered with its business relationships with third parties by preventing the assignment of loans on the MERS® System to third parties after the termination of its membership, *id.* ¶ 29, and by threatening to release all of Dreambuilder's security instruments, *id.* ¶ 30.  MERSCORP moves for summary judgment on this claim.

Under Virginia law, to state a claim for tortious interference with prospective economic advantage, a plaintiff must allege the following:

> (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff.

*Com. Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997) (internal quotation marks and citation omitted).  Additionally, the tort "always involves a competitive relationship and allegations of direct contact with the source of the expectancy . . . [because this] provide[s] prima facie evidence of a motive to interfere and indicate[s] that the interference actually took place." *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005).  To satisfy the first element, a plaintiff must point towards "some specific contract or relationship. Failure to allege any specific, existing economic interest is fatal to the claim." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

MERSCORP correctly argues that Dreambuilder has not alleged any specific actual or prospective business opportunity with which MERSCORP interfered.  As Dreambuilder has not opposed this motion and has not identified a specific business opportunity in the complaint, there is no material dispute as to these facts, and the lack of specificity regarding a missed business opportunity is fatal to the claim.  *See Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705–06 (E.D. Va. 2004) (dismissing a tortious interference claim because plaintiff's allegations were "too broad and conclusory to plead a specific, existing contract or expectancy with a specific party").  Therefore, MERSCORP's motion for summary judgment dismissing the claim is granted.

### B. Dreambuilder's Claim for Unjust Enrichment

Dreambuilder also brings a claim alleging unjust enrichment.  Doc. 4-4 ¶¶ 32–39.
Specifically, it alleges that MERSCORP has been unjustly enriched by charging a $50 per loan
processing fee for assignment of its MERS® System loans and by imposing a $25,000 fine
against Dreambuilder.  *Id.* ¶¶ 33–34.

Under Virginia Law, to state a claim for unjust enrichment, the plaintiff must show that:
(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and
should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained
the benefit without paying for its value.  *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d
642, 650 (Va. 2020).  However, a claim for unjust enrichment can only be asserted where there is
no valid express contract between the parties.  *Butts v. Weltman, Weinberg & Reis Co., LPA*, No.
13 Civ. 1026 (JCC) (IDD), 2013 WL 6039040, at *3 (E.D. Va. Nov. 14, 2013).

MERSCORP argues that the membership rules and procedures are an express contract
between the parties.  Doc. 7 ¶ 4; Doc. 7-1; Doc. 7-2.  As there is no material dispute as to these
facts, the existence of a contract is fatal to the unjust enrichment claim.  *See Cortez-Melton v.
Cap. One Fin. Corp.*, No. 3:19 Civ. 127, 2021 WL 771754, at *11 (E.D. Va. Feb. 26, 2021)
(dismissing an unjust enrichment claim because an express contract exists).  Therefore,
MERSCORP's motion for summary judgment is granted.

### C. Breach of Contract

Dreambuilder also brings a claim alleging breach of contract.  Doc. 4-4 ¶¶ 40–44.
MERSCORP moves for summary judgment on this claim and on its counterclaim that
Dreambuilder is in breach of its contract.  Doc. 18 at 21–25.

Under Virginia law, to state a claim for breach of contract, the plaintiff must allege:  "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

Dreambuilder summarily alleges that "[Dreambuilder] and MERSCORP entered in to one or more agreements.  MERSCORP breached the contract.  [Dreambuilder] fulfilled its contractual obligations.  As a result of MERSCORP's breaches, Plaintiff has suffered damages . . . ."  Doc. 4-4 ¶¶ 41–44.  MERSCORP argues that there is no evidence to support this claim. Therefore, in the absence of Dreambuilder pointing to evidence to create a material issue of fact, MERSCORP's motion for summary judgment on this claim is granted.

As for MERSCORP's counterclaim for breach of contract, it argues that Dreambuilder's failure to abide by the rules and procedures it agreed to when it became a member of the MERS® System, Doc. 20 ¶ 6; Doc. 7-1; Doc. 7-2, demonstrate Dreambuilder's breach. Specifically, it argues that Dreambuilder failed to comply with membership obligations including adherence to quality assurance plans and data reviews and by failing to follow document execution requirements.  Doc. 18 at 24; Doc. 19 ¶¶ 12–14; Doc. 20 ¶¶ 11–12.  MERSCORP gave Dreambuilder opportunities to cure its violations, and Dreambuilder failed to do so, resulting in imposition of a penalty and termination of its membership as per the rules and procedures.  Doc. 18 at 24; Doc. 19 ¶¶ 16–42; Doc. 20 ¶¶ 15–30.  In support of these allegations, MERSCORP has submitted the notices of rule violations that it sent to Dreambuilder, Docs. 20-4; 20-5; 20-6; 20-7; 20-10; 20-11, the notices of monetary penalties, Docs. 20-7; 20-8, the notice of potential termination, Doc. 20-9, follow-up emails regarding the data review violations, Docs. 20-12; 20-13, and the notice of membership termination, Doc. 20-14.

MERSCORP alleges damages in the form of an outstanding invoice, legal fees expended in defending MERS in litigation related to Dreambuilder mortgages, local land research expenses related to Dreambuilder loans, and its costs and legal fees in this litigation.  Doc. 19 at 25; Doc. 20 ¶¶ 37–40.  In support of its damages, MERSCORP submits the outstanding $25,000 invoice, Doc. 20-15, legal invoices it paid, Doc. 20-16, its letter to Dreambuilder claiming land research costs, Doc. 20-17, and a declaration stating its attorneys' fees in the instant case.  Doc. 20 ¶ 40.

MERSCORP has thus established each of the elements of a breach of contract claim, and there is no material dispute as to the facts.  Therefore, its motion for summary judgment on the counterclaim is granted.

### D.  Dreambuilder's Request for Declaratory Judgment

MERSCORP argues that Dreambuilder's remaining declaratory judgment cause of action should be dismissed.  Doc. 18 at 25.

The Second Circuit has instructed that a court "may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  It is well settled that a request for declaratory and/or injunctive relief is not an independent cause of action.  *See KM Enterprises, Inc. v. McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) (collecting cases).  "[W]here a plaintiff's substantive claims are dismissed, a claim for a declaratory judgment—asserted as a separate cause of action—is properly dismissed as well."  *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19 Civ. 7840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020), *appeal dismissed* (June 17, 2021), *motion for relief from judgment denied*, No. 19 Civ. 7840 (RA), 2021 WL 1978545 (S.D.N.Y. May 18, 2021).

Since the Court has dismissed Dreambuilder's substantive claims, the remaining declaratory judgment cause of action should also be dismissed. *See Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015) (dismissing declaratory judgment claim where all substantive claims were dismissed and "the declaratory relief sought rests on those claims"). MERSCORP's motion for summary judgment is granted.

### E.  MERSCORP's Request for Judgment

MERSCORP moves for summary judgment on its claim seeking authorization to release all the liens it is holding on behalf of Dreambuilder plus costs and expenses, as well as judgment in the amount of $56,515.15 inclusive of $25,000 in outstanding monetary penalties, Doc. 20-15, $9,013.05 in legal fees, $2,516.50 for records research related to Dreambuilder's mortgages, Doc. 20-16; Doc. 20-17, and $19,558 in attorneys' fees for this action, Doc. 21 at 2–3.  Doc. 18 at 28; Doc. 20 ¶¶ 37–40.

Since the Court has granted summary judgment on MERSCORP's breach of contract claim and there is no material dispute of fact as to the judgment request, MERSCORP's motion for judgment is granted.

IV.     CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted.  MERSCORP

has judgment against Dreambuilder in the amount of $56,515.15 and is authorized to release all

liens it is holding on Dreambuilder's behalf.  The Clerk of Court is respectfully directed to

terminate the motion, Doc. 17, and close the case.

It is SO ORDERED.


Dated:     February 28, 2022
           New York, New York

                                        _____

                                              Edgardo Ramos, U.S.D.J.